1  Mark E. Merin (State Bar No. 043849)
   Paul H. Masuhara (State Bar No. 289805)
2  LAW OFFICE OF MARK E. MERIN
   1010 F Street, Suite 300
3  Sacramento, California 95814
   Telephone:    (916) 443-6911
4  Facsimile:    (916) 447-8336
   E-Mail:        mark@markmerin.com
5                 paul@markmerin.com
6
7  Attorneys for Plaintiffs
   ESTATE OF SHERRANO STINGLEY,
8  DYMIN STINGLEY, S.S.,
   and ANNETTE HILBURN
9

10               UNITED STATES DISTRICT COURT

11               EASTERN DISTRICT OF CALIFORNIA

12                    SACRAMENTO DIVISION

13 | ESTATE OF SHERRANO STINGLEY, DYMIN | Case No. 2:23-cv-00255-TLN-AC
   | STINGLEY, S.S., and ANNETTE HILBURN, |
14 |                                      | **PLAINTIFFS' MEMORANDUM**
   |                   Plaintiffs,        | **IN OPPOSITION TO DEFENDANTS'**
15 | vs.                                  | **MOTION TO DISMISS COMPLAINT**
16 | COUNTY OF SACRAMENTO, SACRAMENTO     |
   | COUNTY SHERIFF'S DEPARTMENT, SCOTT   | Date:       May 4, 2023
17 | JONES, and DOE 1 to 10,              | Time:       2:00 p.m.
   |                                      | Location:   Robert T. Matsui U.S. Courthouse
18 |                   Defendants.        |             501 I Street
   |                                      |             Sacramento, CA 95814
19 |                                      |
20 |                                      | Courtroom:  2 (15th Floor)
   |                                      | District
21 |                                      | Judge:      Hon. Troy L. Nunley

22

23

24

25

26

27

28

---

# **TABLE OF CONTENTS**

I.   INTRODUCTION ..................................................................................................1

II.  STATEMENT OF RELEVANT FACTS AND PROCEEDINGS .........................1

III. MOTION TO DISMISS .......................................................................................1

  A.  EXCESSIVE FORCE (U.S. CONST. AMEND. IV; 42 U.S.C. § 1983) ........................1

    1.  County & SCSD (*Monell* Liability) ..........................................................1

    2.  Jones (Supervisory Liability) ....................................................................6

  B.  REHABILITATION ACT (29 U.S.C. § 701) & ADA (42 U.S.C. § 12101).................7

    1.  Vicarious Liability (Officers) ...................................................................8

    2.  Direct Liability .........................................................................................9

  C.  FAMILIAL ASSOCIATION (U.S. CONST. AMEND. I, XIV; 42 U.S.C. § 1983).........9

  D.  EXCESSIVE FORCE & DENIAL OF MEDICAL CARE (CAL. CONST. ART. I § 13) ........10

    1.  *Katzberg* Analysis ...................................................................................10

      a.  *Katzberg* Step One .........................................................................10

      b.  *Katzberg* Step Two .........................................................................12

    2.  County & SCSD (Vicarious & Direct Liability)........................................15

    3.  Jones (Supervisory Liability) ..................................................................15

  E.  TOM BANE CIVIL RIGHTS ACT (CAL. CIV. CODE § 52.1) ...............................15

    1.  County & SCSD (Vicarious & Direct Liability)........................................15

    2.  Jones (Supervisory Liability) ..................................................................16

  F.  NEGLIGENCE ......................................................................................................16

  G.  WRONGFUL DEATH (CAL. CODE CIV. PROC. § 377.60).....................................18

    1.  County & SCSD (Vicarious & Direct Liability)........................................18

    2.  Jones (Supervisory Liability) ..................................................................18

IV. MOTION TO STRIKE .......................................................................................18

  A.  INTRODUCTORY PARAGRAPH ..............................................................................18

  B.  PARAGRAPHS 163, 167 & 168–170 .................................................................19

V.  CONCLUSION...................................................................................................20

i

**TABLE OF AUTHORITIES**

*A.M. v. San Bernardino Superintendent*, 2020 U.S. Dist. LEXIS 73853 (C.D. Cal. Feb. 26, 2020) .........15

*Abshire v. Boudreaux*, 2018 U.S. Dist. LEXIS 184237 (W.D. La. Oct. 26, 2018) ...................................20

*Adams v. City of Redding*, 2022 U.S. Dist. LEXIS 208077 (E.D. Cal. Nov. 15, 2022) ..........................2, 4

*Aguilar v. City of South Gate*, 2013 U.S. Dist. LEXIS 10611 (C.D. Cal. Jan. 25, 2013)..........................16

*Am. Acad. of Pediatrics v. Lungren*, 16 Cal. 4th 307 (Cal. 1997) ............................................................13

*Amex Life Assurance Co. v. Superior Court*, 14 Cal. 4th 1231 (Cal. 1997) .............................................11

*Anderson v. County of Alameda*, 2022 U.S. Dist. LEXIS 116090 (N.D. Cal. June 30, 2022) ..................16

*Avalanche Funding v. Five Dot Cattle Co.*, 2017 U.S. Dist. LEXIS 201103 (E.D. Cal. Dec. 5, 2017).....16

*Avila v. State of California*, 2015 U.S. Dist. LEXIS 140014 (E.D. Cal. Oct. 14, 2015) ...........................16

*Bagos v. City of Vallejo*, 2020 U.S. Dist. LEXIS 189528 (E.D. Cal. Oct. 13, 2020) .................................3

*Bates v. Chesterfield County*, 216 F.3d 367 (4th Cir. 2000).......................................................................8

*Bivens v. Six Unknown Fed. Narcotics Agents*, 403 U.S. 388 (1971) ......................................................12

*Black Lives Matter-Stockton v. San Joaquin Cty. Sheriff's Office*, 398 F. Supp. 3d 660 (E.D. Cal. 2019)16

*Blankenhorn v. City of Orange*, 485 F.3d 463 (9th Cir. 2007) .................................................................14

*Boarman v. County of Sacramento*, 2013 U.S. Dist. LEXIS 46326 (E.D. Cal. Mar. 29, 2013)..................4

*Brewster v. City of Los Angeles*, 2020 U.S. Dist. LEXIS 188688 (C.D. Cal. July 14, 2020)....................12

*Briones v. City of Ontario*, 2018 U.S. Dist. LEXIS 227680 (C.D. Cal. May 21, 2018).........................2, 3

*Brown v. State of New York*, 89 N.Y.2d 172 (N.Y. 1996) .........................................................................10

*Brown v. USA Taekwondo*, 11 Cal. 5th 204 (Cal. 2021) ...........................................................................17

*Budd v. Edgar County Sheriff's Office*, 2013 U.S. Dist. LEXIS 125823 (C.D. Ill. Sep. 4, 2013)..............20

*Burke v. Lakin Law Firm PC*, 2007 U.S. Dist. LEXIS 21100 (S.D. Ill. Mar. 26, 2007) ...........................19

*Burrell v. City of Vallejo*, 2020 U.S. Dist. LEXIS 56442 (E.D. Cal. Mar. 30, 2020)..........................19, 20

*Camarillo v. City of Maywood*, 2008 U.S. Dist. LEXIS 85386 (C.D. Cal. Aug. 27, 2008) ......................11

*Carlson v. Green*, 446 U.S. 14 (1980) ......................................................................................................12

*Case v. City of New York*, 408 F. Supp. 3d 313 (S.D.N.Y. 2019) ...............................................................4

*Chew v. Gates*, 27 F.3d 1432 (9th Cir. 1994) .........................................................................................2, 6

*Cleveland v. County of Sacramento*, No. 34-2019-00255376,

ii

**PLAINTIFFS' MEMORANDUM IN OPPOSITION TO DEFENDANTS' MOTION TO DISMISS COMPLAINT**
*Estate of Stingley v. County of Sacramento*, United States District Court, Eastern District of California, Case No. 2:23-cv-00255-TLN-AC

2019 Cal. Super. LEXIS 64253 (Sacramento Cnty. Super. Ct. Oct. 18, 2019) ....................................11

*Cotta v. County of Kings*, 686 F. App'x 467 (9th Cir. 2017)....................................................................17

*Dahlin v. Frieborn*, 2022 U.S. Dist. LEXIS 188878 (E.D. Cal. Oct. 15, 2022)..........................................17

*Daniel v. City of Antioch*, 2013 U.S. Dist. LEXIS 138895 (N.D. Cal. Sep. 25, 2013)..............................11

*Deloney v. County of Fresno*, 2019 U.S. Dist. LEXIS 71089 (E.D. Cal. Apr. 26, 2019) .........................18

*Dorame v. County of Los Angeles*, 2006 U.S. Dist. LEXIS 103160 (C.D. Cal. July 27, 2006) .................11

*Dorger v. City of Napa*, 2012 U.S. Dist. LEXIS 124551 (N.D. Cal. Aug. 31, 2012)................................16

*Douglas v. City of Springfield*, 2016 U.S. Dist. LEXIS 181749 (D. Mass. Oct. 14, 2016)........................4

*Escalante v. Villanueva*, 2023 U.S. Dist. LEXIS 27575 (C.D. Cal. Feb. 16, 2023)...................................19

*Estate of Adkins v. County of San Diego*, 2018 U.S. Dist. LEXIS 71715 (S.D. Cal. Apr. 25, 2018).........16

*Estate of Chivrell v. City of Arcata*, 2022 U.S. Dist. LEXIS 153466 (N.D. Cal. Aug. 25, 2022)............3, 8

*Estate of Garcia v. County of San Diego*, 2006 U.S. Dist. LEXIS 94341 (S.D. Cal. Dec. 27, 2006) ........20

*Estate of Jackson v. City of Modesto*, 2021 U.S. Dist. LEXIS 199638 (E.D. Cal. Oct. 14, 2021)...........8, 9

*Estate of Jackson v. City of Modesto*, 2022 U.S. Dist. LEXIS 137906 (E.D. Cal. Aug. 3, 2022).........7, 10

*Estate of Manzo v. County of San Diego*, 2006 U.S. Dist. LEXIS 82942 (S.D. Cal. Nov. 10, 2006) ........20

*Estate of Mendez v. City of Ceres*, 390 F. Supp. 3d 1189 (E.D. Cal. 2019) ...................................13, 14, 15

*Estate of Neil v. County of Colusa*, 2022 U.S. Dist. LEXIS 167659 (E.D. Cal. Sep. 14, 2022) ............1, 17

*Estate of Osuna v. County of Stanislaus*, 392 F. Supp. 3d 1162 (E.D. Cal. 2019) .2, 4, 5, 10, 13, 14, 15, 16

*Estate of Verdugo v. City of El Centro*, 2022 U.S. Dist. LEXIS 199050 (S.D. Cal. Nov. 1, 2022) .............2

*Fitzpatrick v. City of Los Angeles*, 2022 U.S. Dist. LEXIS 178427 (C.D. Cal. Sep. 16, 2022) ...........10, 12

*Franklin v. City of Chicago*, 2020 U.S. Dist. LEXIS 11097 (N.D. Ill. Jan. 23, 2020)................................20

*Garafola v. Lackawanna County*, 2009 U.S. Dist. LEXIS 48124 (M.D. Pa. June 9, 2009).......................20

*Garcia v. County of Riverside*, 2017 U.S. Dist. LEXIS 236331 (C.D. Cal. Apr. 28, 2017) .....................11

*Garcia v. Yuba County Sheriff's Dep't*, 559 F. Supp. 3d 1122 (E.D. Cal. 2021) .......................................3

*Green v. Baca*, 226 F.R.D. 624 (C.D. Cal. 2005).......................................................................................4

*Green v. Bd. of Regents of the Univ. of Cal.*, 2021 U.S. Dist. LEXIS 252311 (C.D. Cal. Oct. 22, 2021) .17

*Greer v. County of San Diego*, 2019 U.S. Dist. LEXIS 185092 (S.D. Cal. Oct. 24, 2019)........................20

*Guillory v. County of Orange*, 731 F.2d 1379 (9th Cir. 1984) ...................................................................6

iii

*Hayes v. County of San Diego*, 57 Cal. 4th 622 (Cal. 2013) ..................................................17

*Hofer v. Emley*, 2019 U.S. Dist. LEXIS 161377 (N.D. Cal. Sep. 20, 2019) ............................17

*In re William G.*, 40 Cal. 3d 550 (Cal. 1985)........................................................................14

*Jacob B. v. County of Shasta*, 40 Cal. 4th 948 (Cal. 2007)...................................................13

*Johnson v. Baca*, 2014 U.S. Dist. LEXIS 196976 (C.D. Cal. Mar. 3, 2014)............................16

*Johnson v. Duffy*, 588 F.2d 740 (9th Cir. 1978) .....................................................................7

*Johnson v. Shasta County*, 83 F. Supp. 3d 918 (E.D. Cal. 2015) .......................................2, 5

*Jones v. City of Los Angeles*, 2023 U.S. Dist. LEXIS 46875 (C.D. Cal. Jan. 24, 2023) ..........15

*Katzberg v. Regents of Univ. of Cal.*, 29 Cal. 4th 300 (Cal. 2002)........................10, 11, 12, 14

*Kaur v. City of Lodi*, 263 F. Supp. 3d 947 (E.D. Cal. 2017) ....................................................3

*Laney v. City of St. Louis*, 2019 U.S. Dist. LEXIS 97510 (E.D. Mo. June 10, 2019) ..............20

*Larez v. City of Los Angeles*, 946 F.2d 630 (9th Cir. 1991) ....................................................7

*Lemus v. County of Merced*, 2016 U.S. Dist. LEXIS 66294 (E.D. Cal. May 19, 2016) ............2

*Lesher v. City of Anderson*, 2021 U.S. Dist. LEXIS 122796 (E.D. Cal. June 30, 2021).......13, 14, 15

*Libby v. City of Gridley*, 2021 U.S. Dist. LEXIS 222460 (E.D. Cal. Nov. 16, 2021) .................9

*Lobaton v. City of San Diego*, 2015 U.S. Dist. LEXIS 162475 (S.D. Cal. Dec. 2, 2015) ..........19

*Lopez v. Smith*, 203 F.3d 1122 (9th Cir. 2000) ....................................................................20

*Mann v. City of Sacramento*, 521 F. Supp. 3d 917 (E.D. Cal. 2021)......................................10

*Maric v. Alvarado*, 2020 U.S. Dist. LEXIS 33848 (E.D. Cal. Feb. 27, 2020) .........................11

*Mateos-Sandoval v. County of Sonoma*, 942 F. Supp. 2d 890 (N.D. Cal. 2013)......................2

*McClellan v. City of Sacramento*, 2021 U.S. Dist. LEXIS 58522 (E.D. Cal. Mar. 25, 2021).........4, 18, 20

*McCoy v. City of Vallejo*, 2020 U.S. Dist. LEXIS 11800 (E.D. Cal. Jan. 22, 2020).....................5

*Millender v. County of Los Angeles*, 2007 U.S. Dist. LEXIS 102252 (C.D. Cal. Mar. 15, 2007) .............11

*Moore v. City of Berkeley*, 2018 U.S. Dist. LEXIS 48611 (N.D. Cal. Mar. 23, 2018)...............8

*Moresi v. State of Louisiana*, 567 So. 2d 1081 (La. 1990) ....................................................11

*Mullins v. County of Fresno*, 2021 U.S. Dist. LEXIS 220432 (E.D. Cal. Nov. 15, 2021) ..........1

*Murchison v. County of Tehama*, 69 Cal. App. 5th 867 (Cal. Ct. App. 2021) .........................14

*Nehad v. Browder*, 929 F.3d 1125 (9th Cir. 2019) .................................................................6

*Neuroth v. Mendocino County*, 2016 U.S. Dist. LEXIS 11109 (N.D. Cal. Jan. 28, 2016)..........................16

*Ochoa v. City of San Jose*, 2021 U.S. Dist. LEXIS 226380 (N.D. Cal. Nov. 17, 2021) .....................3, 4, 5

*Ordonez v. Stanley*, 495 F. Supp. 3d 855 (C.D. Cal. 2020) ......................................................................11

*OSJ Pep Tenn. LLC v. Harris*, 2014 U.S. Dist. LEXIS 142822 (C.D. Cal. Oct. 7, 2014) ........................11

*Park v. Thompson*, 851 F.3d 910 (9th Cir. 2017) ....................................................................................2

*People v. Cahan*, 44 Cal. 2d 434 (Cal. 1955) ........................................................................................14

*Perkins v. City of Modesto*, 2022 U.S. Dist. LEXIS 18466 (E.D. Cal. Jan. 31, 2022)..................13, 14, 15

*Porter v. Osborn*, 546 F.3d 1131 (9th Cir. 2008) ...................................................................................10

*Quinto-Collins v. City of Antioch*, 2022 U.S. Dist. LEXIS 471 (N.D. Cal. Jan. 3, 2022) ......................1, 5

*Reaza v. County of Riverside*, 2022 U.S. Dist. LEXIS 198653 (C.D. Cal. Oct. 26, 2022) ........................3

*Regents of Univ. of Cal. v. Superior Court*, 4 Cal. 5th 607 (Cal. 2018) ................................................17

*Richards v. Remington*, 2023 U.S. Dist. LEXIS 42804 (D. Ariz. Mar. 14, 2023)......................................8

*Rios v. County of Sacramento*, 562 F. Supp. 3d 999 (E.D. Cal. 2021) ...............................12, 13, 14, 15

*Rodriguez v. City of New York*, 2016 U.S. Dist. LEXIS 76882 (E.D.N.Y. June 13, 2016)......................20

*Rodriguez v. County of Los Angeles*, 891 F.3d 776 (9th Cir. 2018) ..........................................6, 7, 16, 17

*Sanchez v. City of Fresno*, 914 F. Supp. 2d 1079 (E.D. Cal. 2012) ........................................................16

*Sanchez v. County of Sacramento*, 2021 U.S. Dist. LEXIS 105549 (E.D. Cal. June 3, 2021)....................5

*Sandoval v. County of Sonoma*, 912 F.3d 509 (9th Cir. 2018) ...............................................................13

*Schwab v. Crosby*, 451 F.3d 1308 (11th Cir. 2006)................................................................................11

*Scott v. Smith*, 2023 U.S. Dist. LEXIS 42452 (D. Nev. Mar. 14, 2023)...................................................3

*Seever v. City of Modesto*, 2022 U.S. Dist. LEXIS 218447 (E.D. Cal. Dec. 2, 2022) ..............................5

*Sheehan v. City & County of San Francisco*, 743 F.3d 1211 (9th Cir. 2014) ......................................8, 9

*Shirazi v. Oweis*, 2022 U.S. Dist. LEXIS 26503 (N.D. Cal. Feb. 14, 2022) ...........................................16

*Silva v. San Pablo Police Dep't*, 319 F. Supp. 3d 1198 (N.D. Cal. 2018) .............................................11

*Silva v. San Pablo Police Dep't*, 805 F. App'x 482 (9th Cir. 2020)..........................................................7

*Sinclair v. City of Seattle*, 61 F.4th 674 (9th Cir. 2023) .........................................................................9

*Smith v. City of Hemet*, 394 F.3d 689 (9th Cir. 2005) ............................................................................8

*Smith v. County of Riverside*, 2006 U.S. Dist. LEXIS 98213 (C.D. Cal. May 15, 2006)..........................11

v

*Starr v. Baca*, 652 F.3d 1202 (9th Cir. 2011) ...............................................................7

*Tabares v. City of Huntington Beach*, 988 F.3d 1119 (9th Cir. 2021)...................................14, 17

*Tandel v. County of Sacramento*, 2012 U.S. Dist. LEXIS 23959 (E.D. Cal. Feb. 22, 2012) ......................5

*Turano v. County of Alameda*, 2018 U.S. Dist. LEXIS 185909 (N.D. Cal. Oct. 30, 2018) ......................20

*V.R. v. County of San Bernardino*, 2019 U.S. Dist. LEXIS 229103 (C.D. Cal. Dec. 6, 2019) ........4, 19, 20

*Valle v. Morgado*, 2021 U.S. Dist. LEXIS 226877 (N.D. Cal. Nov. 24, 2021) .........................................17

*Velasquez v. County of San Bernardino*, 2018 U.S. Dist. LEXIS 225839 (C.D. Cal. Mar. 1, 2018).........11

*Vos v. City of Newport Beach*, 892 F.3d 1024 (9th Cir. 2018) ................................................................8, 9

*Widgeon v. E. Shore Hosp. Ctr.*, 479 A.2d 921 (Md. 1984)......................................................................10

*Young v. County of Los Angeles*, 655 F.3d 1156 (9th Cir. 2011) ..............................................................17

*Young v. County of San Diego*, 2021 U.S. Dist. LEXIS 53564 (S.D. Cal. Mar. 22, 2021) ......................17

*Yount v. City of Sacramento*, 43 Cal. 4th 885 (Cal. 2008).........................................................................14

*Zullo v. State of Vermont*, 205 A.3d 466 (Vt. 2019)...................................................................................11

# I.   **INTRODUCTION**

This case arises the death of Sherrano Stingley, a mentally-ill Black man who was suffocated and rendered braindead within minutes of being contacted and pinned to the ground by three Sacramento County Sheriff's Department deputies. Defendants moved to dismiss certain claims and to strike certain allegations from the Complaint. ECF No. 12. Now, Plaintiffs oppose the motions.

# II.   **STATEMENT OF RELEVANT FACTS AND PROCEEDINGS**

Generally, this action arises from the officer-involved death of Sherrano Stingley, who died following an encounter with Sacramento County Sheriff's Department deputies on December 6, 2022.

On February 9, 2023, Plaintiffs Estate of Sherrano Stingley, Dymin Stingley, S.S., and Annette Hilburn (collectively, "Plaintiffs") initiated this action by filing the Complaint against Defendants County of Sacramento ("County"), Sacramento County Sheriff's Department ("SCSD"), Scott Jones, and currently-unknown "Doe" officers (collectively, "Defendants"). ECF No. 1 ("Compl.").

On March 28, 2023, Defendants filed the instant motions. ECF No. 12-1 ("Motion").[1]

# III.   **MOTION TO DISMISS**

The standard applicable to a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6) is well-known to the Court and, thus, is not restated here. *See*, *e.g.*, *Estate of Neil v. County of Colusa*, 2022 U.S. Dist. LEXIS 167659, at *4–7 (E.D. Cal. Sep. 14, 2022).

## A.   **EXCESSIVE FORCE (U.S. CONST. AMEND. IV; 42 U.S.C. § 1983)**

Plaintiffs allege that Defendants are liable under § 1983 for violations of the Fourth Amendment. Compl. ¶ 175–180 (First Claim).

### 1.   **County & SCSD (*Monell* Liability)**

Plaintiffs allege that the County and SCSD are subject to *Monell* liability. Compl. ¶ 178. Plaintiffs allege *Monell* liability under several theories, *see id*. ¶¶ 153–174, but need only allege one viable theory, where "piecemeal" dismissal of claims alleging *Monell* liability is not proper. *See*, *e.g.*, *Mullins v. County of Fresno*, 2021 U.S. Dist. LEXIS 220432, at *18 (E.D. Cal. Nov. 15, 2021); *Quinto-Collins v. City of Antioch*, 2022 U.S. Dist. LEXIS 471, at *4–5 (N.D. Cal. Jan. 3, 2022); *Estate of Verdugo v. City of El*

---

[1] All references to pagination of cited documents pertain to those provided at the top of the document via the CM/ECF court docketing system, as opposed to the page number at the bottom of the document.

*Centro*, 2022 U.S. Dist. LEXIS 199050, at *15 (S.D. Cal. Nov. 1, 2022) ("a cause of action should not be dismissed if it states a claim under any legal theory, even if there are other theories alleged").

   Official Policy: Defendants argue that Plaintiffs "do[] not identify an obviously deficient policy or custom that caused harm to [Sherrano]." Motion at 14. But Plaintiffs allege that the County and SCSD's "policies and training relating to 'Arrest and Control (PSP)' authorize use of a 'Confined Space Control Hold Technique,' including instructing 'Officer moves into a kneeling prone position on the suspect's back' while the subject 'lie[s] in a prone position,'" Compl. ¶ 161, "was a moving force behind and contributed to the use of unreasonable and excessive force against [Sherrano]," *id*. ¶ 174. *See*, *e.g.*, *Briones v. City of Ontario*, 2018 U.S. Dist. LEXIS 227680, at *33–34 (C.D. Cal. May 21, 2018) ("policies allow detainees to be placed chest and face down for a prolonged time" and "to secure handcuffs on detainees before turning the detainee around or checking on his ability to breathe"). Accordingly, Plaintiffs sufficiently allege that Sherrano's injuries were "inflicted pursuant to [municipal] policy, regulation, custom, or usage." *See Chew v. Gates*, 27 F.3d 1432, 1444 (9th Cir. 1994).

   Inadequate Policies / Training: Defendants argue that Plaintiffs "do not identify the training, hiring, supervisory, and disciplinary practices at issue, how those practices were deficient, and how those practices caused [Sherrano]'s harm." Motion at 15. But Defendants cannot demonstrate such specificity is required, where "the policy or custom itself need not be specifically alleged, or may be alleged only in a general fashion," because "[i]t is a rare plaintiff who will have access to the precise contours of a policy or custom prior to having engaged in discovery…" *Estate of Osuna v. County of Stanislaus*, 392 F. Supp. 3d 1162, 1174–75 (E.D. Cal. 2019) (collecting cases); *see also Park v. Thompson*, 851 F.3d 910, 928–29 (9th Cir. 2017) (dismissal inappropriate where "many of the relevant facts here are known only to the defendant"). Nonetheless, Plaintiffs *do* allege policies, customs, and practices, *see* Compl. ¶ 162 (positional asphyxia); *id*. ¶¶ 164–165 (mental health); *id*. ¶ 166 (use-of-force), "which gave rise to Plaintiffs' constitutional injuries." *See*, *e.g.*, *Mateos-Sandoval v. County of Sonoma*, 942 F. Supp. 2d 890, 899–900 (N.D. Cal. 2013); *Johnson v. Shasta County*, 83 F. Supp. 3d 918, 931 (E.D. Cal. 2015); *Lemus v. County of Merced*, 2016 U.S. Dist. LEXIS 66294, at *11–13 (E.D. Cal. May 19, 2016); *Adams v. City of Redding*, 2022 U.S. Dist. LEXIS 208077, at *8–9 (E.D. Cal. Nov. 15, 2022).

   Defendants argue further that Plaintiffs "fail[] to identify any challenged policies or customs that

2

are so widespread and permanent as to have the force of law." Motion at 15. But, again, Defendants cannot demonstrate that such "widespread and permanent" allegations are required. For example, under the "single-incident" theory, "the failure to train is so patently obvious that a single constitutional violation suffices to give rise to municipal liability under § 1983." *Kaur v. City of Lodi*, 263 F. Supp. 3d 947, 983 (E.D. Cal. 2017) (citation omitted). The single-incident theory applies in a "narrow range of circumstances" where officials are "making life-threatening decisions." *Estate of Chivrell v. City of Arcata*, 2022 U.S. Dist. LEXIS 153466, at *10–11 (N.D. Cal. Aug. 25, 2022) (citation omitted). Specifically, "[s]erious injuries and death are the obvious and highly predictable consequences of sending untrained and armed officers to respond to mental health crises," and the application of "bodyweight along with the handcuffs" where "[p]olice are likely to encounter some suspects with health conditions…" *See*, *e.g.*, *Garcia v. Yuba County Sheriff's Dep't*, 559 F. Supp. 3d 1122, 1131–32 (E.D. Cal. 2021); *Reaza v. County of Riverside*, 2022 U.S. Dist. LEXIS 198653, at *54–56 (C.D. Cal. Oct. 26, 2022); *Briones*, 2018 U.S. Dist. LEXIS 227680, at *31 (department "trains its officers to handcuff a subject before removing him from a prone position" and "did not train him about the dangers of applying pressure to a detainee's back while he or she is in a prone position").

Even if the single-incident theory did not apply, Plaintiffs identify another incident where the County and SCSD's officers used a prone restraint and tased a mentally-ill, handcuffed subject, causing loss of consciousness—like Sherrano. Compl. ¶ 163; *see*, *e.g.*, *Scott v. Smith*, 2023 U.S. Dist. LEXIS 42452, at *43–44 (D. Nev. Mar. 14, 2023) (*Monell* liability available where officers "used the same prone restraint in subduing [another subject]"). Defendants do not acknowledge this similar incident. *See* Motion at 13–17. Instead, Defendants generally argue that "lawsuits, settlements, news articles, and jury verdicts … do not show similar circumstances or a pattern or practice … of sufficient duration, frequency, and consistency…" Motion at 15–17. But, again, Defendants cite no authority in support. "Prior incidents involving lawsuits alone, even those which do not result in a finding or admission of wrongdoing, can be sufficient for *Monell* liability purposes in the face of a motion to dismiss." *See*, *e.g.*, *Bagos v. City of Vallejo*, 2020 U.S. Dist. LEXIS 189528, at *14 (E.D. Cal. Oct. 13, 2020); *Ochoa v. City of San Jose*, 2021 U.S. Dist. LEXIS 226380, at *19 (N.D. Cal. Nov. 17, 2021) (collecting cases).

Defendants argue further that the incidents identified do not involve "similar facts" to those at

3

**PLAINTIFFS' MEMORANDUM IN OPPOSITION TO DEFENDANTS' MOTION TO DISMISS COMPLAINT**
*Estate of Stingley v. County of Sacramento*, United States District Court, Eastern District of California, Case No. 2:23-cv-00255-TLN-AC

issue in this case. Motion at 16. But "the factual similarity requirement is not as rigorous as Defendant[s] argue[]." *See*, *e.g.*, *Adams*, 2022 U.S. Dist. LEXIS 208077, at *11; *Boarman v. County of Sacramento*, 2013 U.S. Dist. LEXIS 46326, at *14 (E.D. Cal. Mar. 29, 2013); *Ochoa*, 2021 U.S. Dist. LEXIS 226380, at *17–18 ( "too granular"). Plaintiffs' allegations of prior incidents, *see* Compl. ¶¶ 163, 167–170, "concern instances of alleged excessive force." *See*, *e.g.*, *Adams*, 2022 U.S. Dist. LEXIS 208077, at *11; *Estate of Osuna*, 392 F. Supp. 3d at 1173 (in prone restraint death case, "previous incidents involving excessive use of force" were sufficient to state *Monell* liability, including incidents involving "tasers and pepper spray against a mentally-ill detainee," "tasers against an individual suffering from a seizure," and "false arrests and [] excessive force against two individuals").[2] Further, Plaintiffs allege that, following these use-of-force incidents, *see* Compl. ¶¶ 172, "no officer was disciplined or retrained as a result of their actions in the prior incidents." *Adams*, 2022 U.S. Dist. LEXIS 208077, at *12. Accordingly, "[w]hether these previous cases are all manifestations of the same policy or custom, and whether that policy or custom was the moving force behind the injury to decedent in this case, are factual issues to be determined following the discovery phase of this litigation." *Estate of Osuna*, 392 F. Supp. 3d at 1173.

Defendants argue further that some of Plaintiffs' allegations are drawn from improper sources. Motion at 15. But, again, Defendants' argument is unsupported. *See id*. First, Defendants argue that "[s]ettlements … mean nothing." *Id*. Wrong. *See*, *e.g.*, *Green v. Baca*, 226 F.R.D. 624, 641–42 (C.D. Cal. 2005); *Douglas v. City of Springfield*, 2016 U.S. Dist. LEXIS 181749, at *25 (D. Mass. Oct. 14, 2016); *McClellan*, 2021 U.S. Dist. LEXIS 58522, at *7–8 (collecting cases). Second, Defendants argue that "[a] verdict [] does not plausibly suggest an entitlement to relief unless the verdict specifically finds a problem with policy or practices." Motion at 15. Wrong. *See*, *e.g.*, *Estate of Osuna*, 392 F. Supp. 3d at 1173–74; *Case v. City of New York*, 408 F. Supp. 3d 313, 328 (S.D.N.Y. 2019); *V.R. v. County of San Bernardino*, 2019 U.S. Dist. LEXIS 229103, at *7–8 (C.D. Cal. Dec. 6, 2019) ("successful claims for

---

[2] Defendants have not yet disclosed the identities of the three officers responsible for Sherrano's death, precluding Plaintiffs from identifying them in the Complaint. *See* Compl. ¶ 13. Accordingly, it is possible that the currently-unknown officers have been involved in other incidents which will be alleged in an amended pleading, once the officers' identities are ascertained. *See*, *e.g.*, *Adams*, 2022 U.S. Dist. LEXIS 208077, at *13–14; *McClellan v. City of Sacramento*, 2021 U.S. Dist. LEXIS 58522, at *5 (E.D. Cal. Mar. 25, 2021) ("prior incident … is relevant to Plaintiff's *Monell* claim because it involves the same officer and a similar allegation of excessive force").

4

excessive force against individuals" sufficient to support "a pattern of excessive force," and "[w]hether the municipal liability claims were successful in those [other] cases is irrelevant"). Third, Defendants argue that "pending claims have no bearing on anything." Motion at 15. Wrong. *See, e.g.*, *Tandel v. County of Sacramento*, 2012 U.S. Dist. LEXIS 23959, at *57–58 (E.D. Cal. Feb. 22, 2012); *McCoy v. City of Vallejo*, 2020 U.S. Dist. LEXIS 11800, at *10 (E.D. Cal. Jan. 22, 2020); *Seever v. City of Modesto*, 2022 U.S. Dist. LEXIS 218447, at *17 (E.D. Cal. Dec. 2, 2022) ("ongoing litigation").

Defendants argue finally that identified incidents do not reflect a "standard operating procedure" but, instead, only "sporadic events." Motion at 16–17.[3] "Although it is difficult to discern from the caselaw the quantum of allegations needed to survive a motion to dismiss a pattern and practice claim, where more than a few incidents are alleged, the determination appears to require a fully-developed factual record." *Estate of Osuna*, 392 F. Supp. 3d at 1173 (internal alteration & citations omitted). Indisputably, Plaintiffs allege "more than a few incidents," where *numerous* incidents involving alleged excessive use-of-force are provided, including against mentally-ill persons. *See* Compl. ¶¶ 163, 167–170.

Ratification / Cover-Up: "Ratification[,] and thus the existence of a *de facto* policy or custom, can be shown by a municipality's post-event conduct, including its conduct in an investigation of the incident." *Johnson*, 83 F. Supp. 3d at 933 (internal citation omitted). For example, a claim may be stated where the department allegedly "intentionally covered up the actions of the individual officers by misrepresenting what happened," *Quinto-Collins*, 2022 U.S. Dist. LEXIS 471, at *2–3, or provided a briefing which "attempt[ed] to negatively portray [the police abuse victim] publicly and to imply that [the officers' use-of-force] was justified," *Ochoa*, 2021 U.S. Dist. LEXIS 226380, at *20.

Plaintiffs allege that the County and SCSD "required their personnel to create a press release and narrative of the officer-involved death incident which portrayed [Sherrano] negatively and involved personnel favorably, and which suggested that the unjustified use of deadly force was justified." Compl.

---

[3] Defendants also observe "[s]ome of the listed lawsuits [resulting in verdicts] date back to 2006, long before Scott Jones had been elected Sheriff in December 2010." Motion at 16 (citing Compl. ¶ 167(d)). But this "tend[s] to support Plaintiff[s'] position—older excessive force incidents support the existence of a longstanding culture…" *See, e.g.*, *Ochoa*, 2021 U.S. Dist. LEXIS 226380, at *18; *Sanchez v. County of Sacramento*, 2021 U.S. Dist. LEXIS 105549, at *14 (E.D. Cal. June 3, 2021) ("The argument that these prior cases are stale is no more persuasive than the argument that cases dating so far back show that the County has been on notice of repeated claims of misconduct … for nearly twenty years.").

1   ¶ 153. Specifically, on December 8, 2022, only two days after Sherrano's killing, the County and SCSD

2   "published a press release and video related to the incident" which contained video footage "unrelated to

3   the underlying officer-involved assault"; body-worn camera footage which was "incomplete and limited

4   to one perspective, … despite the presence of multiple other deputies activating their body-worn cameras

5   during the incident"; and "false, incomplete, and irrelevant information," including falsely describing

6   Sherrano as "attempt[ing] to bring [an officer] to the ground," "fight[ing]," and "forcefully and actively

7   resist[ing]"; omitting captions of Sherrano's pleas for help, including "I'm not resisting!" and "Dymin!";

8   and Sherrano's irrelevant prior criminal history and substances found in Sherrano's blood, which were

9   unknown to the officers. *Id.* ¶¶ 154–157. The County and SCSD "knew that information contained in the

10  video and press release was false, incomplete, and irrelevant, based on the information available at the

11  time of the press release on December 8, 2022." *Id.* ¶ 158. Defendants simply ignore these allegations

12  regarding these post-event occurrences. *See* Motion at 8–10.

13          **2.       Jones (Supervisory Liability)**

14          Plaintiffs allege that Jones is subject to supervisory liability. Compl. ¶ 178. "[A] supervisor may

15  be liable in his individual capacity for his own culpable action or inaction in the training, supervision, or

16  control of his subordinates; for his acquiescence in the constitutional deprivation; or for conduct that

17  showed a reckless or callous indifference to the rights of others." *Rodriguez v. County of Los Angeles*,

18  891 F.3d 776, 798 (9th Cir. 2018) (internal citation omitted); *see also* 9th Cir. Model Jury Inst. 9.4.

19          Defendants argue that Plaintiffs "allege[] 'official capacity' *Monell*-type claims against Jones

20  based on his alleged position as a 'final policy-making authority.'" Motion at 12. But "*Monell* does not

21  concern liability of individuals…" *Guillory v. County of Orange*, 731 F.2d 1379, 1382 (9th Cir. 1984).

22  Rather, Plaintiffs *only* allege claims against Jones in his "individual capacity." Compl. ¶ 12. Defendants

23  apparently seek to avoid this distinction by arguing that Jones' liability predicated on his "policy-making

24  authority" transforms an "individual capacity" claim into an "official capacity" claim. *See* Motion at 11–

25  12. But, again, Defendants' argument is unsupported. *See id.* Jones was "responsible for the operations of

26  the department as a whole," *see Chew*, 27 F.3d at 1446, and, as a result, supervisory liability "overlaps"

27  with *Monell* liability. *See, e.g.*, *Larez v. City of Los Angeles*, 946 F.2d 630, 645 (9th Cir. 1991); *Nehad v.*

28  *Browder*, 929 F.3d 1125, 1141–42 (9th Cir. 2019); *Estate of Jackson v. City of Modesto*, 2022 U.S. Dist.

6

LEXIS 137906, at *27 (E.D. Cal. Aug. 3, 2022) ("the supervisory claims against [the police chief] are essentially the same as the *Monell* claims against the City," including for "policy," "failure to train officers," and "ratification"). Neither a supervisor's "direct personal participation in the deprivation," *Johnson v. Duffy*, 588 F.2d 740, 743–44 (9th Cir. 1978), nor "physical[] presen[ce] when the injury occurred," *Starr v. Baca*, 652 F.3d 1202, 1205 (9th Cir. 2011), is necessary to impose *individual* liability because "[a] supervisor will rarely be directly and personally involved in the same way as are the individual officers who are on the scene inflicting constitutional injury…" *Larez*, 946 F.2d at 645.

Defendants argue further that Plaintiffs' allegations related to Jones' supervisory liability are "wholly conclusory." Motion at 13. But, again, Defendants' argument is unsupported. *See id*. For example, Plaintiffs allege that Jones personally "participated in, acquiesced to, and/or w[as] deliberately indifferent to" "inaction and poor training" related to "positional asphyxia," *see* Compl. ¶ 162; persons suffering from "mental disability or substance impairment," *id*. ¶ 165; and "personnel's use of unreasonable and excessive force," *id*. ¶ 166. Plaintiffs allege further Jones' involvement in several incidents involving retaliation and failure-to-discipline in connection with personnel's use-of-force. *Id*. ¶ 167–173. Additionally, Plaintiffs allege Jones' involvement in the false post-event narrative regarding Sherrano's death. *Id*. ¶¶ 153–158. *See*, *e.g.*, *Silva v. San Pablo Police Dep't*, 805 F. App'x 482, 485 (9th Cir. 2020) ("after-the-fact approval of a subordinate's conduct"). Accordingly, Plaintiffs' allegations give rise to a plausible inference that Jones participated in "a culture of impunity for officers' use of unconstitutionally excessive force," including by "disabling or failing to follow procedures used to identify uses of excessive force," "ensuring that violators escaped punishment," or "creat[ing] an environment where the mechanisms for supervision and control over the use of force operated ineffectively and sometimes not at all." *See Rodriguez*, 891 F.3d at 798–99.

**B.     REHABILITATION ACT (29 U.S.C. § 701) & ADA (42 U.S.C. § 12101)**

Plaintiffs allege that the County and SCSD are liable under for violation of Rehabilitation Act ("RA") and Americans with Disabilities Act ("ADA"). Compl. ¶¶ 186–191 (Third Claim); *id*. ¶¶ 192–197 (Fourth Claim).  Specifically, Plaintiffs allege vicarious liability for the conduct of Jones and the officers, *id*. ¶¶ 189–190; *id*. ¶¶ 195–196, and direct liability for the public entities' own conduct, *id*. ¶¶ 190; *id*. ¶ 196. *See Estate of Jackson v. City of Modesto*, 2021 U.S. Dist. LEXIS 199638, at *31–34 (E.D.

7

Cal. Oct. 14, 2021) ("Under the RA and Title II of the ADA, a public entity may be held vicariously liable for the acts of its employees" *and* "[f]or a failure to train claim …utiliz[ing] the *Monell* framework for § 1983 claims.").

### 1.     Vicarious Liability (Officers)

Defendants argue that Plaintiffs do not allege "[Sherrano]'s mental illness played *any* role in his death" and, thus, no discrimination occurred. Motion at 19. But Plaintiffs have specifically alleged that "[the officers] knew of should have known that [Sherrano] was disabled or experiencing a mental health crisis, and required a reasonable accommodation for disability." Compl. ¶ 61. "Discrimination includes a failure to reasonably accommodate a person's disability." *Sheehan v. City & County of San Francisco*, 743 F.3d 1211, 1231 (9th Cir. 2014). The "same fact questions" governing the Fourth Amendment "reasonableness determination [also] inform an accommodation analysis." *See*, *e.g.*, *Vos v. City of Newport Beach*, 892 F.3d 1024, 1037 (9th Cir. 2018); *Sheehan*, 743 F.3d at 1233; *Bates v. Chesterfield County*, 216 F.3d 367, 371 (4th Cir. 2000). In other words, "employing unreasonable force is tantamount to a failure to reasonably accommodate." *Moore v. City of Berkeley*, 2018 U.S. Dist. LEXIS 48611, at *39–43 (N.D. Cal. Mar. 23, 2018); *Richards v. Remington*, 2023 U.S. Dist. LEXIS 42804, at *11 (D. Ariz. Mar. 14, 2023). Accordingly, where the "reasonableness of force used is ordinarily a question of fact," *Smith v. City of Hemet*, 394 F.3d 689, 701 (9th Cir. 2005), similarly, "the reasonableness of an accommodation is ordinarily a question of fact." *Sheehan*, 743 F.3d at 1233; *Vos*, 892 F.3d at 1037. Thus, "drawing all reasonable inferences in Plaintiffs' favor, as the Court must at this stage," it must "conclude[] that Plaintiffs plausibly allege that the officers acted against [Sherrano] 'solely by reason' of his disability." *See Estate of Chivrell*, 2022 U.S. Dist. LEXIS 153466, at *17.

Defendants argue further that "there are no allegations suggesting the involved deputies knew or should have known of [Sherrano]'s claimed mental health issues during the … encounter …" Motion at 19. But Plaintiffs allege that "[the officers] knew of should have known that [Sherrano] was disabled or experiencing a mental health crisis, and required a reasonable accommodation for disability." Compl. ¶ 61. "[K]nowledge and other condition of mind may be averred generally." *Estate of Chivrell*, 2022 U.S. Dist. LEXIS 153466, at *16 (citing Fed. R. Civ. P. 9(b)). Further, Plaintiffs' allege Sherrano's behavior during the encounter demonstrated his mental impairment, including Sherrano's partially-clothed state

8

with his pants around his ankles, *id.* ¶ 35, and missing shoes, *id.* ¶ 20; Sherrano's fearfully holding onto an officer's leg after the officer blinded Sherrano by pulling his sweater over his face, *id.* ¶¶ 43–48; and Sherrano's crying out the name of his daughter, *id.* ¶ 114. Thus, "it should have been apparent to the officers that the subject of the force used was mentally disturbed." *See Vos*, 892 F.3d at 1033–34.

Defendants argue finally that "Plaintiffs fail to show that the deputies had the time and opportunity to assess the situation and potentially employ any accommodations to [Sherrano]." Motion at 19. But Plaintiffs allege that a "reasonabl[e] accommodat[ion]" was available, including, among other actions, by approaching [Sherrano] in a non-confrontational manner, without displaying or threatening the use of force; by speaking to [Sherrano] in a non-confrontational manner, with an appropriate tone of voice and without threatening the use of force; by interacting with [Sherrano] in a non-confrontational manner, including appropriate body language, deescalation, and spacing techniques; and/or by not using unreasonable and excessive force against [Sherrano]…" Compl. ¶¶ 189, 195. Again, "the reasonableness of an accommodation is ordinarily a question of fact." *Sheehan*, 743 F.3d at 1233; *Vos*, 892 F.3d at 1037. Defendants' attempt to dispute Plaintiffs' alleged facts by suggesting that a reasonable accommodation was *not* available is not appropriate "at this early stage of the case." *See Libby v. City of Gridley*, 2021 U.S. Dist. LEXIS 222460, at *9 (E.D. Cal. Nov. 16, 2021).

### 2. Direct Liability

Defendants do not specifically move to dismiss Plaintiffs' alleged direct liability claims. *See* Motion at 17–19; *but see id.* at 13 (citing Compl. ¶¶ 190, 196). But even if Defendants had properly moved for dismissal, the motion would fail for the same reasons discussed above with respect to *Monell* liability. *See Estate of Jackson*, 2021 U.S. Dist. LEXIS 199638, at *34 (applying "*Monell* framework").

## C. FAMILIAL ASSOCIATION (U.S. CONST. AMEND. I, XIV; 42 U.S.C. § 1983)

Plaintiffs allege Defendants are liable under § 1983 for violations of the First and Fourteenth Amendments. Compl. ¶¶ 198–203 (Fifth Claim); *id.* ¶¶ 204–209 (Sixth Claim).

Defendants do not specifically move to dismiss Plaintiffs' familial association claims. *See* Motion at 17–19; *but see id.* at 13 (citing Compl. ¶¶ 190, 196). But even if Defendants had properly moved for dismissal, the motion would fail for the same reasons discussed above. *See, e.g.*, *Sinclair v. City of Seattle*, 61 F.4th 674, ___ (9th Cir. 2023) (familial association right is "derivative of [the decedent]'s

9

underlying right"); *Porter v. Osborn*, 546 F.3d 1131, 1141 (9th Cir. 2008) ("analogous jurisprudence"); *see also Mann v. City of Sacramento*, 521 F. Supp. 3d 917, 929 (E.D. Cal. 2021) ("proper focus" is "rights of the <u>decedent</u>"); *Estate of Jackson*, 2022 U.S. Dist. LEXIS 137906, at *26–27 ("integrally predicated on and entwined with the Fourth Amendment claim").

**D.    EXCESSIVE FORCE & DENIAL OF MEDICAL CARE (CAL. CONST. ART. I § 13)**

Plaintiffs allege Defendants are liable under § 13. Compl. ¶¶ 210–216 (Seventh Claim); *id.* ¶¶ 217–222 (Eighth Claim).

### 1.    *Katzberg* Analysis

Defendants argue that "there is no private action for damages" under § 13. Motion at 19–20. But "[t]he California Supreme Court has ... not decided whether there is a private cause of action for damages under [§] 13…" *Estate of Osuna*, 392 F. Supp. 3d at 1178 (citation omitted). Accordingly, "[w]hether a provision of the California Constitution provides for a private right of action [for damages] is governed by the analysis set forth" in *Katzberg v. Regents of Univ. of Cal.*, 29 Cal. 4th 300, 317 (Cal. 2002), which "employs a two-step approach." *Id.* at 1179.

#### a.    **Katzberg** *Step One*

At step one, a court "inquire[s] whether there is evidence from which [it] may find or infer, within the constitutional provision at issue, an affirmative intent either to authorize or to withhold a damages action to remedy a violation," including "consider[ing] the language and history of the constitutional provision at issue, including whether it contains guidelines, mechanisms, or procedures implying a monetary remedy, as well as any pertinent common law history." *Katzberg*, 29 Cal. 4th at 317.

Defendants argue that "*Katzberg* does not address [§] 13…" Motion at 20. But, "in *Katzberg*, the California Supreme Court suggested there should be a damages remedy for violations of [§] 13" and "recognized the history of [§] 13 supported a damages action…" *Fitzpatrick v. City of Los Angeles*, 2022 U.S. Dist. LEXIS 178427, at *27–28 (C.D. Cal. Sep. 16, 2022). Specifically, *Katzberg* expressly highlighted § 13 as an example of how a court could infer a damages remedy from a constitutional provision's common law history, even though *Katzberg* itself concerned a different constitutional provision, Cal. Const. Art. I § 7. *Katzberg*, 29 Cal. 4th at 322–23 (citing *Brown v. State of New York*, 89 N.Y.2d 172, 188–89 (N.Y. 1996); *Widgeon v. E. Shore Hosp. Ctr.*, 479 A.2d 921, 924–25 (Md. 1984);

10

and *Moresi v. State of Louisiana*, 567 So. 2d 1081, 1092 (La. 1990)); *see also Zullo v. State of Vermont*, 205 A.3d 466, 483–84 (Vt. 2019) (collecting cases from other jurisdictions recognizing a direct constitutional damage remedy). Thus, *Katzberg*'s discussion of § 13 is directly on-point. *See, e.g.*, *Schwab v. Crosby*, 451 F.3d 1308, 1325 (11th Cir. 2006) ("there is *dicta* and then . . . there is Supreme Court *dicta*"); *Amex Life Assurance Co. v. Superior Court*, 14 Cal. 4th 1231, 1241 (Cal. 1997) ("although *dicta*," discussion "is particularly significant here").

Similarly, numerous California courts have reached the same conclusion, citing *Katzberg*:

The California Constitution … appears to have been drafted against a background expectation that common law remedies would continue to be available. Indeed, shortly after the adoption of the Constitution, California affirmed by statute that "[t]he Common Law of England, so far as it is not repugnant to or inconsistent with the Constitution of the United States, or the Constitution or laws of the State of California, shall be the rule of decision in all the Courts of this State." Cal. Stats. 1850, ch. 95 [currently codified, with small changes, at Cal. Civ. Code § 22.2]. And as the *Katzberg* court noted, the English common law, by longstanding practice, provided a damages remedy for unlawful searches and seizures. [29 Cal. 4th at 322.] Thus it seems quite likely that the framers of the California Constitution expected and intended that violations of § 13 would have had a common law tort remedy.

*OSJ Pep Tenn. LLC v. Harris*, 2014 U.S. Dist. LEXIS 142822, at *20 (C.D. Cal. Oct. 7, 2014); *see, e.g.*, *Ordonez v. Stanley*, 495 F. Supp. 3d 855, 866–67 (C.D. Cal. 2020); *Silva v. San Pablo Police Dep't*, 319 F. Supp. 3d 1198, 1202–03 (N.D. Cal. 2018); *Velasquez v. County of San Bernardino*, 2018 U.S. Dist. LEXIS 225839, at *5–6 (C.D. Cal. Mar. 1, 2018); *Garcia v. County of Riverside*, 2017 U.S. Dist. LEXIS 236331, at *7–15 (C.D. Cal. Apr. 28, 2017); *Daniel v. City of Antioch*, 2013 U.S. Dist. LEXIS 138895, at *6 (N.D. Cal. Sep. 25, 2013); *Camarillo v. City of Maywood*, 2008 U.S. Dist. LEXIS 85386, at *20 (C.D. Cal. Aug. 27, 2008); *Millender v. County of Los Angeles*, 2007 U.S. Dist. LEXIS 102252, at *115–16 (C.D. Cal. Mar. 15, 2007); *Dorame v. County of Los Angeles*, 2006 U.S. Dist. LEXIS 103160, at *19 (C.D. Cal. July 27, 2006); *Smith v. County of Riverside*, 2006 U.S. Dist. LEXIS 98213, at *21 (C.D. Cal. May 15, 2006); *Cleveland v. County of Sacramento*, No. 34-2019-00255376, 2019 Cal. Super. LEXIS 64253 (Sacramento Cnty. Super. Ct. Oct. 18, 2019), *pet. denied*, No. C091065 (Cal. Ct. App. Jan. 2, 2020); *see also Maric v. Alvarado*, 2020 U.S. Dist. LEXIS 33848, at *14–15 (E.D. Cal. Feb. 27, 2020).

Defendants do not address any of these relevant authorities and the pertinent common law history. Instead, Defendants ignore *Katzberg*'s discussion of § 13 and erroneously argue that "*Katzberg* discussed

11

no relevant California history from which to infer an affirmative intent to authorize or withhold a damages remedy for violations of [§] 13." Motion at 20. But that is not true, as recognized by the numerous authorities cited above. *See, e.g., Fitzpatrick*, 2022 U.S. Dist. LEXIS 178427, at *27 ("The California Supreme Court in *Katzberg* recognized the history of [§] 13 supported a damages action, as the Magna Carta 'provided a damage remedy for the victims of unlawful searches at common law.'" (quoting *Katzberg*, 29 Cal. 4th at 323–24)).

### b. Katzberg *Step Two*

"Because the common law history of [§] 13 implies an affirmative intent to authorize damages, the Court need not undertake the constitutional tort analysis provided for [at step two] in *Katzberg*." *See, e.g., Fitzpatrick*, 2022 U.S. Dist. LEXIS 178427, at *27–28; *Brewster v. City of Los Angeles*, 2020 U.S. Dist. LEXIS 188688, at *43 (C.D. Cal. July 14, 2020); *Katzberg*, 29 Cal. 4th at 317 (if step one is satisfied, then step two of the analysis unnecessary). Nonetheless, Plaintiffs will also address step two of the *Katzberg* analysis, for the sake of completeness. At step two, a court "shall undertake the 'constitutional tort' analysis adopted by [*Bivens v. Six Unknown Fed. Narcotics Agents*, 403 U.S. 388 (1971),] and its progeny," including consideration of "relevant factors" such as "whether an adequate remedy exists, the extent to which a constitutional tort action would change established tort law, and the nature and significance of the constitutional provision." *Katzberg*, 29 Cal. 4th at 317.

Adequacy of Existing Remedies: Defendants argue that there are "numerous alternative remedies," including under federal and state law. Motion at 20–21. But an *alternative* remedy is not necessarily an *adequate* remedy. Under "*Bivens* and its progeny," *Katzberg*, 29 Cal. 4th at 317, an adequate remedy must "be a *substitute* for recovery" and "viewed as equally effective." *See Carlson v. Green*, 446 U.S. 14, 18–19 (1980). First, it is not clear whether "the availability of a federal law remedy (for example, under 42 U.S.C., § 1983)" factors into "the determination whether a state action for damages should be recognized for violation of a state constitutional provision." *Katzberg*, 29 Cal. 4th at 327 n.29. But even if federal law remedies were considered, they are not an adequate substitute, where "the California Supreme Court has recognized that [§] 13 imposes independent and more exacting standards than the U.S. Constitution." *See, e.g., Rios v. County of Sacramento*, 562 F. Supp. 3d 999, 1023 (E.D. Cal. 2021) (internal citation omitted); *Perkins v. City of Modesto*, 2022 U.S. Dist. LEXIS 18466, at

12

*61 (E.D. Cal. Jan. 31, 2022) ("The California constitution provides greater protection against excessive force than the federal constitution does." (internal citation omitted)). "The limits on federal claims under § 1983 only amplify this difference. For example, § 1983 claims against individual defendants are subject to a court-created qualified immunity defense, and claims against municipal defendants are subject to the additional requirements the Supreme Court defined in *Monell*." *Rios*, 562 F. Supp. 3d at 1023. "So it is far from obvious that damages claims under § 1983 offer an adequate alternative in all cases." *Id*.

Second, state law remedies are not an adequate substitute. For example, the Tom Bane Civil Rights Act, Cal. Civ. Code § 52.1, requires *more* than a constitutional violation—it *also* "requires specific intent to violate protected rights…" *See Sandoval v. County of Sonoma*, 912 F.3d 509, 520 (9th Cir. 2018). Additionally, state law remedies may be subject to comparative/contributory fault principles, *see* Cal. Civ. Code § 1431.2(a), and state law affords public entities and employees a plethora of immunities to both common law and statutory liability. *See* Cal. Gov. Code § 815 *et seq.* (public entity immunities); Cal. Gov. Code § 820 *et seq*. (public employee immunities). But a damages remedy under the California Constitution would not be subject to these pervasive restrictions because, "if [a state law statutory immunity] conflict[s] with [the] California Constitution['s provisions], the statute would have to yield to the Constitution." *See Jacob B. v. County of Shasta*, 40 Cal. 4th 948, 961 (Cal. 2007).

<u>Change to Established Tort Law</u>: Defendants fail to address this factor in their moving papers. *See* Motion at 20–21. On that basis alone, the motion should be denied. *See, e.g.*, *Estate of Mendez v. City of Ceres*, 390 F. Supp. 3d 1189, 1217 (E.D. Cal. 2019); *Estate of Osuna*, 392 F. Supp. 3d at 1179; *Rios*, 562 F. Supp. 3d at 1024; *Lesher v. City of Anderson*, 2021 U.S. Dist. LEXIS 122796, at *15–16 (E.D. Cal. June 30, 2021) (inadequate briefing of *Katzberg* factors requires denial of motion to dismiss).

"[T]he California Constitution is, and always has been, a document of independent force, and [] the rights embodied in and protected by the state Constitution are not invariably identical to the rights contained in the federal Constitution." *Am. Acad. of Pediatrics v. Lungren*, 16 Cal. 4th 307, 325 (Cal. 1997) (internal citations omitted). "The U.S. Constitution and California common law are thus two distinct legal frameworks. Individual States may surely construe their own laws as imposing more stringent constraints on police conduct than does the Federal Constitution. But when a State chooses to protect beyond the level that the Fourth Amendment requires, these additional protections exclusively are

13

matters of state law." *Tabares v. City of Huntington Beach*, 988 F.3d 1119, 1122 (9th Cir. 2021) (internal citations & alterations omitted). Accordingly, an interpretation of the California Constitution which affords anything *less than* that which is afforded by the U.S. Constitution would be inconsistent with state law. *See*, *e.g.*, *id.*; *Rios*, 562 F. Supp. 3d at 1023; *Perkins*, 2022 U.S. Dist. LEXIS 18466, at *61. Therefore, because Plaintiffs' claims are cognizable as violations of the U.S. Constitution, where the California Constitution affords equal or greater protection, *see id.*, "inferring a damages remedy [does not] seem to work much of a change in established tort law" and "would parallel rather than conflict with the common law of torts." *Rios*, 562 F. Supp. 3d at 1023–24 (internal citation omitted). For example, California law permits compensation to those who can prove they suffered damages caused by a state actor who employs excessive force. *See*, *e.g.*, *Murchison v. County of Tehama*, 69 Cal. App. 5th 867, 897 (Cal. Ct. App. 2021) (Bane Act); *Yount v. City of Sacramento*, 43 Cal. 4th 885, 902 (Cal. 2008) (battery); *Blankenhorn v. City of Orange*, 485 F.3d 463, 487 n.17 (9th Cir. 2007) (intentional infliction of emotional distress); *Tabares*, 988 F.3d at 1128 (negligence). Accordingly, § 13 should provided no less.

<u>Nature and Significance of Right</u>: Defendants again fail to address this factor. *See* Motion at 20–21. On that basis alone, the motion should be denied. *See*, *e.g.*, *Estate of Mendez*, 390 F. Supp. 3d at 1217; *Estate of Osuna*, 392 F. Supp. 3d at 1179; *Rios*, 562 F. Supp. 3d at 1024; *Lesher*, 2021 U.S. Dist. LEXIS 122796, at *15–16 (inadequate briefing of *Katzberg* factors).

There can be no dispute that the rights protected by § 13 are "vitally important," *In re William G.*, 40 Cal. 3d 550, 563 (Cal. 1985), and that, even as "important as efficient law enforcement may be, it is more important" that the rights guaranteed by Section 13 "be respected," *People v. Cahan*, 44 Cal. 2d 434, 438 (Cal. 1955) (addressing former Cal. Const. Art. I § 19—current Cal. Const. Art. I § 13). *See also Rios*, 562 F. Supp. 3d at 1024 ("No one here suggests the right to be free from unreasonable government searches and seizures is an insignificant one.").

<u>Special Factors</u>: "If [the court] find[s] that [the factors discussed above] favor recognizing a constitutional tort, [the court] also shall consider the existence of any special factors counseling hesitation in recognizing a damages action, including deference to legislative judgment, avoidance of adverse policy consequences, considerations of government fiscal policy, practical issues of proof, and the competence of courts to assess particular types of damages." *Katzberg*, 29 Cal. 4th at 317.

14

Defendants again fail to address this factor. *See* Motion at 20–21. On that basis alone, the motion should be denied. *See*, *e.g.*, *Estate of Mendez*, 390 F. Supp. 3d at 1217; *Estate of Osuna*, 392 F. Supp. 3d at 1179; *Rios*, 562 F. Supp. 3d at 1024; *Lesher*, 2021 U.S. Dist. LEXIS 122796, at *15–16 (inadequate briefing of *Katzberg* factors). It is undisputed that none of the special factors "counsel hesitation," for similar reasons discussed above with respect to § 13's common law history and other relevant factors.

### 2. County & SCSD (Vicarious & Direct Liability)

Plaintiffs allege vicarious liability for the conduct of Jones and the officers, *id*. ¶¶ 212–214; *id*. ¶¶ 219–220, and direct liability for the public entities' own conduct, *id*. ¶¶ 213. Defendants do not specifically move to dismiss Plaintiffs' claims. *See* Motion at 19–21; *but see id*. at 13 (citing Compl. ¶ 213). But even if Defendants had properly moved for dismissal, the motion would fail for the same reasons discussed above. *See*, *e.g.*, *Perkins*, 2022 U.S. Dist. LEXIS 18466, at *61; *Jones v. City of Los Angeles*, 2023 U.S. Dist. LEXIS 46875, at *55 (C.D. Cal. Jan. 24, 2023) (successful Fourth Amendment claim necessarily results in successful § 13 claim).

### 3. Jones (Supervisory Liability)

Plaintiffs allege that Jones is subject to supervisory liability. Compl. ¶ 213. Defendants do not specifically move to dismiss Plaintiffs' claims. *See* Motion at 19–21; *but see id*. at 13 (citing Compl. ¶ 213). But even if Defendants had properly moved for dismissal, the motion would fail for the same reasons discussed above. *See*, *e.g.*, *Perkins*, 2022 U.S. Dist. LEXIS 18466, at *61; *Jones*, 2023 U.S. Dist. LEXIS 46875, at *55 (successful Fourth Amendment claim necessarily results in successful § 13 claim).

### E. TOM BANE CIVIL RIGHTS ACT (CAL. CIV. CODE § 52.1)

Plaintiffs allege Defendants are liable under the Bane Act. Compl. ¶¶ 223–232 (Ninth Claim).

### 1. County & SCSD (Vicarious & Direct Liability)

Plaintiffs allege vicarious liability for the conduct of Jones and the officers, *id*. ¶¶ 225–230, and direct liability for the public entities' own conduct, *id*. ¶¶ 226, 229. Defendants do not specifically move to dismiss Plaintiffs' claims. *See* Motion at 13–17; *but see id*. at 13 (citing Compl. ¶ 226). But even if Defendants had properly moved for dismissal, the motion would fail for the same reasons discussed above. *See*, *e.g.*, *A.M. v. San Bernardino Cty. Superintendent of Schs.*, 2020 U.S. Dist. LEXIS 73853, at *9–11 (C.D. Cal. Feb. 26, 2020); *Estate of Adkins v. County of San Diego*, 2018 U.S. Dist. LEXIS

15

71715, at *16–18 (S.D. Cal. Apr. 25, 2018); *Avila v. State of California*, 2015 U.S. Dist. LEXIS 140014, at *9–10 (E.D. Cal. Oct. 14, 2015); *Aguilar v. City of South Gate*, 2013 U.S. Dist. LEXIS 10611, at *13– 20 (C.D. Cal. Jan. 25, 2013); *Dorger v. City of Napa*, 2012 U.S. Dist. LEXIS 124551, at *18–19 (N.D. Cal. Aug. 31, 2012); *Sanchez v. City of Fresno*, 914 F. Supp. 2d 1079, 1117 (E.D. Cal. 2012) (direct liability against public entities available under the Bane Act).

### 2.    Jones (Supervisory Liability)

Plaintiffs allege that Jones is subject to supervisory liability. Compl. ¶ 226. Defendants do not specifically move to dismiss Plaintiffs' claims. *See* Motion at 11–13; *but see id*. at 13 (citing Compl. ¶¶ 226, 229). But even if Defendants had properly moved for dismissal, the motion would fail for the same reasons discussed above. *See, e.g.*, *Neuroth v. Mendocino County*, 2016 U.S. Dist. LEXIS 11109, at *22 (N.D. Cal. Jan. 28, 2016); *Johnson v. Baca*, 2014 U.S. Dist. LEXIS 196976, at *43 (C.D. Cal. Mar. 3, 2014); *Black Lives Matter-Stockton Chapter v. San Joaquin Cty. Sheriff's Office*, 398 F. Supp. 3d 660, 679 (E.D. Cal. 2019); *Shirazi v. Oweis*, 2022 U.S. Dist. LEXIS 26503, at *21 (N.D. Cal. Feb. 14, 2022); *Anderson v. County of Alameda*, 2022 U.S. Dist. LEXIS 116090, at *9 (N.D. Cal. June 30, 2022); *see also Rodriguez*, 891 F.3d at 799 (supervisory liability available under the Bane Act).

### F.    NEGLIGENCE

Plaintiffs allege Defendants are liable for negligence. Compl. ¶¶ 245–252 (Twelfth Claim).

### 1.    Jones (Supervisory Liability)

Plaintiffs allege that Jones is subject to supervisory liability. Compl. ¶ 249. Specifically, Plaintiffs allege "[Jones] had a special relationship with [the officers], and owed [Sherrano] a duty of care and breached that duty including, among other actions, by maintaining policies or customs of action and inaction which resulted in harm to [Sherrano]." *Id*.

Defendants argue that "Plaintiffs' allegations that there was a 'special relationship' between Jones and unnamed [officers] is nonsensical and not related to any recognized legal theory." Motion at 13. But, again, Defendants cite no authority in support. *See id*. On that basis alone, the motion should be denied. *See, e.g.*, *Estate of Osuna*, 392 F. Supp. 3d at 1179; *Avalanche Funding, LLC v. Five Dot Cattle Co.*, 2017 U.S. Dist. LEXIS 201103, at *8 (E.D. Cal. Dec. 5, 2017) ("In the context of a motion to dismiss, the burden is on the defendant to prove that the plaintiff failed to state a claim.").

16

"[A] duty to control may arise if the defendant has a special relationship with the foreseeably dangerous person that entails an ability to control that person's conduct." *Regents of Univ. of Cal. v. Superior Court*, 4 Cal. 5th 607, 619 (Cal. 2018). A "[r]elationship[] between … employers and employees," for example, "give[s] rise to an affirmative duty to protect." *Brown v. USA Taekwondo*, 11 Cal. 5th 204, 216 (Cal. 2021). Accordingly, Plaintiffs allege the existence of a special relationship, Compl. ¶ 249, where the officers were foreseeably dangerous persons based on the Jones' inadequate policies related to positional asphyxia, mental health contacts, and use-of-force, including based on inadequate training and supervision, *id*. ¶¶ 153–174. *See, e.g.*, *Valle v. Morgado*, 2021 U.S. Dist. LEXIS 226877, at *32–33 (N.D. Cal. Nov. 24, 2021) (supervisory officials have a special relationship with subordinate officers which "gives rise to their ability and duty to control the [subordinates]").

Additionally, under California negligence law, both federal and state constitutional violations can establish breach of a duty of care. *See, e.g.*, *Young v. County of Los Angeles*, 655 F.3d 1156, 1170 (9th Cir. 2011); *Green v. Bd. of Regents of the Univ. of Cal.*, 2021 U.S. Dist. LEXIS 252311, at *15–16 (C.D. Cal. Oct. 22, 2021); *Dahlin v. Frieborn*, 2022 U.S. Dist. LEXIS 188878, at *16–17 (E.D. Cal. Oct. 15, 2022); *see also Hofer v. Emley*, 2019 U.S. Dist. LEXIS 161377, at *51 (N.D. Cal. Sep. 20, 2019) ("if conduct is unreasonable under federal law, it is unreasonable under state law"). Accordingly, dismissal is not warranted for the same reasons discussed above. *See, e.g.*, *Rodriguez*, 891 F.3d at 798 (supervisory liability standard under federal law).

Finally, "the California Supreme Court has held that California negligence law 'is broader than federal Fourth Amendment law.'" *Tabares*, 988 F.3d at 1122 (quoting *Hayes v. County of San Diego*, 57 Cal. 4th 622, 639 (Cal. 2013)); *Young v. County of San Diego*, 2021 U.S. Dist. LEXIS 53564, at *7 n.1 (S.D. Cal. Mar. 22, 2021); *see also Estate of Neil*, 2022 U.S. Dist. LEXIS 167659, at *30 ("state law avenues for relief are substantially broader than those available under the federal constitution through § 1983" (citation omitted)). Thus, Jones' breach of duty, including each of the federal and state law duties discussed above *and* each of the claims alleged, *see* Compl. ¶¶ 178, 190, 196, 201, 207, 213, 226, 229, is independently cognizable as a negligence claim and subject to a "broader" and "low[er] threshold for liability." *See, e.g.*, *Tabares*, 988 F.3d at 1122; *Cotta v. County of Kings*, 686 F. App'x 467, 469 (9th Cir. 2017).

17

**G.    WRONGFUL DEATH (CAL. CODE CIV. PROC. § 377.60)**

Plaintiffs allege Defendants are liable for wrongful death. Compl. ¶¶ 253–260 (Thirteenth Claim).

**1.    County & SCSD (Vicarious & Direct Liability)**

Plaintiffs allege vicarious liability for the conduct of Jones and the officers, *id*. ¶¶ 256–258, and direct liability for the public entities' own conduct, *id*. ¶¶ 257. Defendants do not specifically move to dismiss Plaintiffs' claims. *See* Motion at 13–17; *but see id*. at 13 (citing Compl. ¶ 257). But even if Defendants had properly moved for dismissal, the motion would fail for the same reasons discussed above. *See, e.g., Deloney v. County of Fresno*, 2019 U.S. Dist. LEXIS 71089, at *28–29 (E.D. Cal. Apr. 26, 2019) (wrongful death claims may be predicated on violations of federal or state law rights, or "by merely establishing negligence").

**2.    Jones (Supervisory Liability)**

Plaintiffs allege that Jones is subject to supervisory liability. Compl. ¶ 257. Defendants do not specifically move to dismiss Plaintiffs' claims. *See* Motion at 11–13; *but see id*. at 13 (citing Compl. ¶ 257). But even if Defendants had properly moved for dismissal, the motion would fail for the same reasons discussed above. *See, e.g., Deloney*, 2019 U.S. Dist. LEXIS 71089, at *28–29.

## IV.    <u>MOTION TO STRIKE</u>

The standard applicable to a motion to strike under Federal Rule of Civil Procedure 12(f) is well-known to the Court and, thus, is not restated here. *See McClellan*, 2021 U.S. Dist. LEXIS 58522, at *2–4.

**A.    INTRODUCTORY PARAGRAPH**

Defendants move to strike the "Introduction" in Plaintiffs' Complaint, which provides:

United States law enforcement killed at least 1,176 people in 2022, making it the deadliest year on record for police violence since 2013 when experts first started tracking the killings nationwide. Sam Levin, <u>The Guardian</u>, *'It never stops': killings by US police reach record high in 2022* (Jan. 6, 2023), available at: <https://www.theguardian.com/us-news/2023/jan/06/us-police-killings-record-number-2022>. This case arises from one of those numerous killings, involving the death of SHERRANO STINGLEY, a mentally-ill man who was suffocated and rendered braindead within minutes of being contacted and pinned to the ground by three Sheriff's Deputies employed by the COUNTY OF SACRAMENTO, SACRAMENTO COUNTY SHERIFF'S DEPARTMENT, and Sheriff SCOTT JONES. Despite the recent high-profile murder of George Floyd in a similar manner, inexplicably, the three deputies choked and smothered the life from SHERRANO STINGLEY, an obviously-distressed, compliant, and non-threatening Black man, as he gasped for air with the three deputies on top of him. SHERRANO STINGLEY's final

18

moments of consciousness consisted of crying out for his daughter, DYMIN STINGLEY, before entering a coma from which he did not awake. SHERRANO STINGLEY's death—like the hundreds of unreasonable and unnecessary law enforcement-involved deaths occurring every year—is devastating for his family and community and another warning of the threat presented by the undisciplined, untrained, and unaccountable law enforcement utilized in this Country.

ECF No. 1 at 1–2. Defendants argue that "the paragraph is immaterial, inflammatory, and prejudicial" because "Plaintiffs have not shown how anything described in the referenced news article or the George Floyd incident bear sufficient resemblance to the fact pattern at issue here to be pertinent, nor show an essential or important relationship between the two bearing on the subject matter of the litigation." Motion at 22. But Plaintiffs are "the master of [their] complaint and the Defendant[s] cannot simply re-write the complaint via motion to strike." *See Burke v. Lakin Law Firm PC*, 2007 U.S. Dist. LEXIS 21100, at *5 (S.D. Ill. Mar. 26, 2007). Under Rule 12(f), the burden is on *Defendants* to show why material must be stricken; not *Plaintiffs* to show why is cannot be stricken. "A plaintiff is entitled to make relevant allegations, even where those allegations in and of themselves are insufficient to allege a separate cause of action. And the allegations regarding policies promoting the types of constitutional violations Plaintiffs allege occurred are plainly relevant to Plaintiffs' other claims—they provide context, suggest a motive, and may help establish intent." *V.R.*, 2019 U.S. Dist. LEXIS 229103, at *12–13. For example, one of Plaintiffs' claims is "obvious" deficiencies in the County and SCSD's prone restrain policies and training, *see* Compl. ¶¶ 162, 171, contextualized by the introduction's reference to a record-breaking number of officer-involved deaths and the "recent high-profile murder of George Floyd in a similar manner," which should have put every law enforcement agency in the Country on notice. *See*, *e.g.*, *Escalante v. Villanueva*, 2023 U.S. Dist. LEXIS 27575, at *29–30 (C.D. Cal. Feb. 16, 2023) (refusing to strike "references in the [complaint] to Derek Chauvin and George Floyd"). Defendants are not entitled to "rewrite the complaint" to make "cosmetic alterations" based on comparisons that they find embarrassing. *See Burrell v. City of Vallejo*, 2020 U.S. Dist. LEXIS 56442, at *4 (E.D. Cal. Mar. 30, 2020); *see also Lobaton v. City of San Diego*, 2015 U.S. Dist. LEXIS 162475, at *5–9 (S.D. Cal. Dec. 2, 2015) (refusing to strike a complaint's alleged "anti-San Diego Police Department tirade").

## B.   PARAGRAPHS 163, 167 & 168–170

Defendants move to strike certain "policy and customs" allegations in Plaintiffs' Complaint.

19

Motion at 22–23 (citing Compl. ¶¶ 163, 167, 168–170). Defendants fail to demonstrate why the allegations are subject to being stricken, beyond overly-generalized argument that identified incidents are "dissimilar to the underlying facts of this case" and "wholly irrelevant matters." Motion at 23. Generally, the allegations at issue describe that SCSD officers used a prone restraint on, piled on top of, and applied a taser to a mentally ill man, causing him to lose consciousness—like Sherrano; and that the County, SCSD, and Jones' have a policy or custom of excessive force, shown by reference to specific incidents involving retaliation; concealment; failure to discipline and supervise; jury verdicts; settlements; violations of state law records disclosure laws; and administrative delays in misconduct investigations. *See* Compl. ¶¶ 163, 167, 168–170. Accordingly, these allegations support Plaintiffs' claims for *Monell* and supervisory liability, where "they provide context, suggest a motive, and may help establish intent." *See, e.g., V.R.*, 2019 U.S. Dist. LEXIS 229103, at *12–13; *Rodriguez v. City of New York*, 2016 U.S. Dist. LEXIS 76882, at *8–9 (E.D.N.Y. June 13, 2016); *Budd v. Edgar County Sheriff's Office*, 2013 U.S. Dist. LEXIS 125823, at *4–6 (C.D. Ill. Sep. 4, 2013); *Franklin v. City of Chicago*, 2020 U.S. Dist. LEXIS 11097, at *15–16 (N.D. Ill. Jan. 23, 2020); *Turano v. County of Alameda*, 2018 U.S. Dist. LEXIS 185909, at *25–27 (N.D. Cal. Oct. 30, 2018); *Abshire v. Boudreaux*, 2018 U.S. Dist. LEXIS 184237, at *21–23 (W.D. La. Oct. 26, 2018); *Estate of Manzo v. County of San Diego*, 2006 U.S. Dist. LEXIS 82942, at *7–9 (S.D. Cal. Nov. 10, 2006); *Greer v. County of San Diego*, 2019 U.S. Dist. LEXIS 185092, at *42 (S.D. Cal. Oct. 24, 2019); *Estate of Garcia-Vasquez v. County of San Diego*, 2006 U.S. Dist. LEXIS 94341, at *14 (S.D. Cal. Dec. 27, 2006); *Laney v. City of St. Louis*, 2019 U.S. Dist. LEXIS 97510, at *22–23 (E.D. Mo. June 10, 2019); *Garafola v. Lackawanna County*, 2009 U.S. Dist. LEXIS 48124, at *7 (M.D. Pa. June 9, 2009) (denying motions to strike). Further, Defendants fail to establish prejudice resulting from Plaintiffs' allegations. *See, e.g., McClellan*, 2021 U.S. Dist. LEXIS 58522, at *9; *Burrell*, 2020 U.S. Dist. LEXIS 56442, at *5. Thus, "[a]ny doubt concerning the import of the allegations to be stricken weighs in favor of denying the motion to strike." *Id.* at *6 (citation omitted).

## V.        <u>CONCLUSION</u>

For the reasons stated, the motions should be denied. To the extent the motions are granted in any respect, the Court "should grant leave to amend …, unless it determines that the pleading could not possibly be cured by the allegation of other facts." *Lopez v. Smith*, 203 F.3d 1122, 1127 (9th Cir. 2000).

20

Dated: April 4, 2023

Respectfully Submitted,

By: _____
     Mark E. Merin
     Paul H. Masuhara
     LAW OFFICE OF MARK E. MERIN
     1010 F Street, Suite 300
     Sacramento, California 95814
     Telephone: (916) 443-6911
     Facsimile: (916) 447-8336

     Attorneys for Plaintiffs
     ESTATE OF SHERRANO STINGLEY,
     DYMIN STINGLEY, S.S.,
     and ANNETTE HILBURN

21