Mark E. Merin (State Bar No. 043849)
Paul H. Masuhara (State Bar No. 289805)
LAW OFFICE OF MARK E. MERIN
1010 F Street, Suite 300
Sacramento, California 95814
Telephone:     (916) 443-6911
Facsimile:     (916) 447-8336
E-Mail:     mark@markmerin.com
            paul@markmerin.com

Attorneys for Plaintiffs
ESTATE OF SHERRANO STINGLEY,
DYMIN STINGLEY, S.S.,
and ANNETTE HILBURN

UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

SACRAMENTO DIVISION

| | |
|---|---|
| ESTATE OF SHERRANO STINGLEY, DYMIN STINGLEY, S.S., and ANNETTE HILBURN, <br><br> Plaintiffs, <br><br> vs. <br><br> COUNTY OF SACRAMENTO, SACRAMENTO COUNTY SHERIFF'S DEPARTMENT, SCOTT JONES, and DOE 1 to 10, <br><br> Defendants. | Case No. 2:23-cv-00255-TLN-AC <br><br> **PLAINTIFFS' REQUEST FOR RECONSIDERATION BY THE DISTRICT COURT OF MAGISTRATE JUDGE'S RULING [RE: ECF NO. 42]** |

## TABLE OF CONTENTS

I.    INTRODUCTION ...........................................................................................................1

II.   STATEMENT OF RELEVANT FACTS AND PROCEEDINGS .................................1

III.  MAGISTRATE JUDGE'S RULING ..........................................................................2

IV.   DOCUMENTS AT ISSUE ..........................................................................................2

    A.   DEF 01805–DEF 01807: LINDE-MCELROY INCIDENT (2018PSD-273) ...................3

    B.   DEF 01808–DEF 01919: LINDE-RENDON INCIDENT (2019PSB-520) .....................3

    C.   DEF 01920–DEF 02338: MARTINEZ INCIDENT (2020PSB-0661)............................4

    D.   DEF 02339–DEF 02510: LINDE-SUNDERMEYER INCIDENT (2019PSD-0398)......................4

V.    ARGUMENT ................................................................................................................4

    A.   LEGAL STANDARD: THREE-STEP TEST FOR "GOOD CAUSE"............................5

    B.   STEP ONE: SPECIFIC PREJUDICE OR HARM ........................................................6

        1.   No Descriptions of the Protected Documents Were Provided ............................6

        2.   The Magistrate Issued An Improper "Blanket" Protective Order........................7

        3.   Documents Produced Without A Protective Order Are "Presumptively Public"........................8

        4.   At Least Some Of The Documents Are Subject To Disclosure Under State Law ......................9

        5.   No Specific Prejudice Or Harm Was Articulated Or Supported .................................10

    C.   STEP TWO: PUBLIC INTERESTS VS. PRIVATE INTERESTS.................................14

        1.   The Magistrate Judge Failed To Consider Step Two....................................14

        2.   The Interests Favor Disclosure ........................................................15

    D.   STEP THREE: FEASIBILITY OF REDACTION...........................................................18

        1.   The Magistrate Judge Failed To Consider Step Three...................................18

        2.   Redaction Has Already Occurred .....................................................18

VI.   CONCLUSION..............................................................................................................19

i

**PLAINTIFFS' REQUEST FOR RECONSIDERATION BY THE DISTRICT COURT OF MAGISTRATE JUDGE'S RULING [RE: ECF NO. 42]**
*Estate of Stingley v. County of Sacramento*, United States District Court, Eastern District of California, Case No. 2:23-cv-00255-TLN-AC

# **TABLE OF AUTHORITIES**

CASES

*Bangert v. County of Placer*, 2019 U.S. Dist. LEXIS 14287 (E.D. Cal. Jan. 25, 2019).............................7

*Beckman Indus. v. Int'l Ins. Co.*, 966 F.2d 470 (9th Cir. 1992)............................................5, 8

*Bland v. Rodriguez*, 2021 U.S. Dist. LEXIS 184422 (E.D. Cal. Sep. 25, 2021) ...............................14, 18

*Caldwell v. City of San Francisco*, 2020 U.S. Dist. LEXIS 242004 (N.D. Cal. Dec. 23, 2020)...............14

*Cipollone v. Liggett Grp., Inc.*, 785 F.2d 1108 (3d Cir. 1986) ..........................................5, 6, 7

*Elk Grove Unified Sch. Dist. v. Newdow*, 542 U.S. 1 (2004) .................................................15

*Estate of Neil v. County of Colusa*, 2020 U.S. Dist. LEXIS 168892 (E.D. Cal. Sep. 14, 2020) ......7, 15, 19

*First Amendment Coal. v. Superior Court*, No. A165888, 2023 Cal. App. LEXIS 999 (Cal. Ct. App. Dec. 28, 2023)9

*Foltz v. State Farm Mut. Auto. Ins. Co.*, 331 F.3d 1122 (9th Cir. 2003)...........................6, 7, 10

*Franklin v. City of Chicago*, 2020 U.S. Dist. LEXIS 11097 (N.D. Ill. Jan. 23, 2020)........................9, 16

*Gambale v. Deutsche Bank AG*, 377 F.3d 133 (2d Cir. 2004).................................................9

*Greer v. County of San Diego*, 2023 U.S. Dist. LEXIS 118943 (S.D. Cal. July 11, 2023)......................17

*Guerrero v. Wharton*, 2018 U.S. Dist. LEXIS 46319 (D. Nev. Mar. 21, 2018).........................................10

*Halcomb v. City of Sacramento*, 2015 U.S. Dist. LEXIS 80787 (E.D. Cal. June 19, 2015) .................8, 10

*Harmon v. City of Santa Clara*, 323 F.R.D. 617 (N.D. Cal. 2018) .............................................17

*Hayes v. Riley*, 525 F. Supp. 3d 1118 (N.D. Cal. 2020) ........................................................14

*Humboldt Baykeeper v. Union Pac. R.R.*, 244 F.R.D. 560 (N.D. Cal. 2007) ............................................17

*I.F. v. City of Vallejo*, 2021 U.S. Dist. LEXIS 28746 (E.D. Cal. Feb. 16, 2021)................................10, 19

*In re Roman Catholic Archbishop*, 661 F.3d 417 (9th Cir. 2011) .......................5, 6, 9, 10, 14, 16, 17, 18

*Kamakana v. City & County of Honolulu*, 447 F.3d 1172 (9th Cir. 2006).....................................12, 15

*Kaur v. City of Lodi*, 2014 U.S. Dist. LEXIS 110079 (E.D. Cal. Aug. 7, 2014).....................................17

*Kaur v. City of Lodi*, 2015 U.S. Dist. LEXIS 2739 (E.D. Cal. Jan. 9, 2015) .........................................7, 8

*Leap Sys. v. Moneytrax, Inc.*, 638 F.3d 216 (3d Cir. 2011).....................................................16, 17

*Lenard v. Sherwin-Williams Co.*, 2015 U.S. Dist. LEXIS 23582 (E.D. Cal. Feb. 25, 2015) .....................9

*Macias v. Cleaver*, 2016 U.S. Dist. LEXIS 85529 (E.D. Cal. June 30, 2016) .................11, 12, 13, 15, 16

*Mollica v. County of Sacramento*, 2022 U.S. Dist. LEXIS 19384 (E.D. Cal. Feb. 1, 2022).......................5

ii

*Overbey v. Mayor and City Council of Baltimore*, 930 F.3d 215 (4th Cir. 2019) ......................................17

*Pansy v. Borough of Stroudsburg*, 23 F.3d 772 (3d Cir. 1994) ....................................15, 16, 17

*Perez v. City of Fresno*, 482 F. Supp. 3d 1037 (E.D. Cal. 2020)..............................................10, 15, 16, 17

*Perry v. City of Pontiac*, 2011 U.S. Dist. LEXIS 105365 (E.D. Mich. Sep. 16, 2011)............................9

*Puckett v. County of Sacramento*, 2023 U.S. Dist. LEXIS 39761 (E.D. Cal. Mar. 8, 2023)....................14

*Ramirez v. Trans Union, LLC*, 2014 U.S. Dist. LEXIS 58752 (N.D. Cal. Apr. 28, 2014)......................10

*Reynolds v. Huddleston*, 2023 U.S. Dist. LEXIS 123058 (C.D. Cal. July 3, 2023) ..................................17

*San Jose Mercury News, Inc. v. United States Dist. Court*, 187 F.3d 1096 (9th Cir. 1999).......................8

*Sanchez v. City of San Jose*, 250 F.R.D. 468 (N.D. Cal. 2008) ......................................................15

*Sanchez v. County of Sacramento*, 2021 U.S. Dist. LEXIS 105549 (E.D. Cal. June 3, 2021)...................14

*Seattle Times Co. v. Rhinehart*, 467 U.S. 20 (1984) ......................................................................17

*Shelley v. County of San Joaquin*, 2015 U.S. Dist. LEXIS 58285 (E.D. Cal. May 1, 2015)....................19

*Skibo v. City of New York*, 109 F.R.D. 58 (E.D.N.Y. 1985) ..........................................................12

*Sneirson v. Chemical Bank*, 108 F.R.D. 159 (D. Del. 1985) ..........................................................15

*United States v. IBM Corp.*, 79 F.R.D. 412 (S.D.N.Y. 1978).........................................................9

*Unt v. Aerospace Corp.*, 765 F.2d 1440 (9th Cir. 1985)................................................................11

*Velazquez v. City of Long Beach*, 793 F.3d 1010 (9th Cir. 2015) ....................................................14

*Welsh v. City & County of San Francisco*, 887 F. Supp. 1293 (N.D. Cal. 1995)...........6, 10, 11, 12, 15, 16

*Wiggins v. Burge*, 173 F.R.D. 226 (N.D. Ill. 1997) ..............................................................16, 17

STATUTES

28 U.S.C. § 636(b)(1) ..................................................................................................................4

Cal. Pen. Code § 832.7(b)(1)(A)(ii)............................................................................................10

RULES

E.D. Cal. L.R. 303(f)....................................................................................................................5

Fed. R. Civ. P. 26(c)(1)................................................................................................................5

Fed. R. Civ. P. 72(a) ....................................................................................................................4

iii

## I.    INTRODUCTION

Pursuant to Local Rule 303(c), Plaintiffs request reconsideration by the District Court of the Magistrate Judge's ruling, ECF No. 42.

## II.    STATEMENT OF RELEVANT FACTS AND PROCEEDINGS

Generally, this action arises from the officer-involved death of Sherrano Stingley, a 48-year-old mentally ill Black man, caused when Sacramento County Sheriff's Department deputies Freddy Martinez, Rachell Villegas, and Brittany Linde piled on top of Sherrano, causing his death.

On February 9, 2023, Plaintiffs Estate of Sherrano Stingley ("Estate"), Dymin Stingley, S.S., and Annette Hilburn (collectively, "Plaintiffs") filed the Complaint initiating this action against Defendants County of Sacramento ("County"), Sacramento County Sheriff's Department ("SCSD"), Scott Jones, and "Doe" officers (collectively, "Defendants"). ECF No. 1.

On April 18, 2023, the Estate requested that the County produce discovery, including, *inter alia*, discipline documents of the three responsible deputies. ECF No. 40 ("Joint Statement") at 8.[1]

On August 14, 2023, the parties filed a stipulated protective order which protected specific personnel files, expressly "limited" to those documents Bates-labeled DEF 01667–DEF 01748, DEF 01749–DEF 01792, and DEF 01577–DEF 01666. ECF No. 18. On August 17, 2023, the Magistrate Judge approved and entered the parties' stipulated protective order. ECF No. 19.

On September 6, 2023, Defendants produced the protected personnel files. Joint Statement at 8. On October 6, 2023, after significant delay, the County produced the unprotected discipline documents of deputies Linde and Martinez, including documents Bates-labeled DEF 01805–DEF 02510. *Id.*

On October 23, 2023, Plaintiffs' counsel sent an email to Defendants' counsel requesting consent to file an amended pleading which included, *inter alia*, allegations involving incidents described in some of the discipline documents produced by the County on October 6, 2023. Joint Statement at 8–9.

On November 10, 2023, Defendants' counsel sent an email to Plaintiffs' counsel declining consent to file an amended pleading. Joint Statement at 9. Therein, Defendants' counsel falsely claimed that the discipline documents produced by the County on October 6, 2023, were protected by the parties'

---

[1] All references to filed documents include the page number provided at the top of the document via the CM/ECF court docketing system, rather than the page number provided at the bottom of the document.

stipulated protective order entered by the Court on August 17, 2023. ECF No. 41 at 66.

On November 15, 2023, Plaintiffs' counsel sent an email to Defendants' counsel stating that Plaintiffs would file a motion for leave to amend the pleading. Joint Statement at 9. Therein, Plaintiffs' counsel explained that the discipline documents produced by the County on October 6, 2023, were not covered by the parties' stipulated protective order entered on August 17, 2023. ECF No. 41 at 67.

On November 17, 2023, Defendants filed a motion to "amend/modify" the stipulated protective order. ECF No. 35.

On January 17, 2024, the Magistrate Judge issued an order granting Defendants' motion to modify the stipulated protective order. ECF No. 42.

Now, Plaintiffs request reconsideration by the District Court. *See* E.D. Cal. L.R. 303(c).

### III.     MAGISTRATE JUDGE'S RULING

The Magistrate Judge's ruling essentially contains two holdings. *See* ECF No. 42 ("Ruling").

*First*, the Magistrate Judge held that, "[b]y its own very clear terms, the existing stipulated protective order does not apply to documents that are Bates labeled DEF 01805–02510." Ruling at 3. Thus, "[D]efendants should not have presumed application of the existing narrow protective order" to the discipline documents that the County produced as Bates-labeled DEF 01805–DEF 02510. *Id*. at 4. Plaintiffs agree with the Magistrate Judge's ruling in this regard and do not challenge this holding.

*Second*, the Magistrate Judge held that "there is good cause to modify the existing protective order to include the documents at DEF 01805–02510" because "[t]hese discipline records clearly pertain to highly confidential personnel matters that are typically covered by protective orders" and "[P]laintiffs do not appear able to dispute [D]efendants' contention that these disciplinary records relate only to inflammatory information not clearly related to the fact pattern at issue in this case, and making these records public appears to serve no other purpose than to humiliate the deputies involved." Ruling at 4. Plaintiffs disagree with the Magistrate Judge's ruling in this regard and challenge this holding.

### IV.     DOCUMENTS AT ISSUE

Critically, Defendants and the Magistrate Judge never identified the contents of the documents to be subject to the protective order, beyond the vague description of "discipline records" and Bates-labels "DEF 01805–02510." *See* ECF No. 42. Accordingly, the character of the records is briefly summarized.

2

## A.   DEF 01805–DEF 01807: LINDE-MCELROY INCIDENT (2018PSD-273)

On May 20, 2018, Brittany Linde stalked and confronted Wendy McElroy in a coffee shop, told her that she was a deputy sheriff, and threatened to assault and kill her. Brittany Linde was engaged in an ongoing affair with Wendy McElroy's husband at the time of the assault and threats. Wendy McElroy filed a citizen complaint with the Sacramento County Sheriff's Department. (2018PSD-273.) Captain Matt Petersen recommended that Brittany Linde "receive a Documented Counseling to remain in her personnel file for a period of six (6) months." On November 7, 2018, a documented counseling was placed in Brittany Linde's file for six months.

## B.   DEF 01808–DEF 01919: LINDE-RENDON INCIDENT (2019PSB-520)

Beginning in May 2019, Brittany Linde repeatedly sent threatening and inappropriate emails to Rachael Rendon at her work-related email address, where she was employed as a parole officer by the California Department of Corrections and Rehabilitation ("CDCR"). Rachael Rendon was the girlfriend of Brittany Linde's ex-boyfriend, Chris. For example, Brittany Linde threatened Rachael Rendon that she would "contact your appropriate chain of command" (Brittany Linde previously worked for the CDCR) and that Brittany Linde had an ongoing relationship with Chris. Brittany Linde's harassing emails caused Rachael Rendon to fear for her safety and the safety of her children and family. Rachael Rendon made repeated and unsuccessful requests for Brittany Linde to cease contact. Brittany Linde also abused her access to the Sacramento County Sheriff's Department's Known Persons File ("KPF") information database to view confidential information about Rachael Rendon and her family members, for personal and non-legitimate reasons. Rachael Rendon obtained a civil restraining order against Brittany Linde which prohibited her ability to possess personal and department-issued firearms for one month. Rachael Rendon's petition for restraining order identified Brittany Linde's previous history of physical assault and stalking. (Superior Court of California, County of Sacramento, Case No. 34-2019-7006482.) Rachael Rendon also filed a police report with the Folsom Police Department. (Folsom Police Department, Report No. 19-093101148.) Rachael Rendon also filed a citizen complaint with the Sacramento County Sheriff's Department. (2019PSD-0520.) Captain James Barnes recommended that Brittany Linde "be suspended from [her] position as Deputy Sheriff for a period of forty-eight (48) hours." On February 26, 2020, Sheriff Scott Jones "deemed appropriate" the recommended discipline.

3

**C.      DEF 01920–DEF 02338: MARTINEZ INCIDENT (2020PSB-0661)**

From December 7, 2020, through January 12, 2021, Freddy Martinez improperly accessed the Sacramento County Sheriff's Department's Jail Person Files ("JPF") information database at least 22 times, and Known Persons File ("KPF") information database at least three times, for personal and non-legitimate reasons. (The investigation's search for instances of improper access was limited only to the period from November 1, 2020, to January 12, 2021, and did not determine whether other improper access occurred outside of that limited period.) Freddy Martinez conducted the unauthorized inquiries to learn more about a suspect in an alleged assault of a family member. An anonymous citizen complaint was filed with the Sacramento County Sheriff's Department. (2020PSD-0661.) Chief Deputy Leeannedra Marchese recommended that Defendant Freddy Martinez be suspended from his position as Deputy Sheriff for a period of 20 hours. On August 9, 2021, Sheriff Scott Jones "deemed appropriate" the recommended discipline.

**D.      DEF 02339–DEF 02510: LINDE-SUNDERMEYER INCIDENT (2019PSD-0398)**

On January 8, 2019, Brittany Linde and two other deputies escorted Yasmin Sundermeyer, an inmate at the Rio Cosumnes Correctional Center ("RCCC"), from the medical office to her cell. At the medical office, Yasmin Sundermeyer received treatments related to her trouble breathing. Yasmin Sundermeyer was handcuffed and non-threatening. Inside the cell, Brittany Linde and two fellow deputies tackled Yasmin Sundermeyer to the floor and applied body-weight on top of her body while she was handcuffed and lying in a prone position. Brittany Linde climbed on top of Yasmin Sundermeyer's "middle" or back, while the other two deputies were "immobilizing" her "lower body – legs" and "head and shoulders." Specifically, Brittany Linde "placed her knee across [Yasmin] Sundermeyer's abdomen area … while being restrained." Brittany Linde and two fellow deputies confined Yasmin Sundermeyer to a "Pro-Straint chair" for longer than one hour. Yasmin Sundermeyer filed a citizen complaint with the Sacramento County Sheriff's Department. (2019PSD-0398.) On May 26, 2020, Captain Todd Henry recommended that the deputies, including Brittany Linde, be "EXONERATED" of any misconduct.

## V.      ARGUMENT

"The district judge in the case must consider timely objections and modify or set aside any part of the order that is clearly erroneous or is contrary to law." Fed. R. Civ. P. 72(a); 28 U.S.C. § 636(b)(1);

4

E.D. Cal. L.R. 303(f). "These two standards—'clearly erroneous' and 'contrary to law'—apply to different aspects of the magistrate judge's order. The 'contrary to law' standard applies to legal determinations. Legal questions are considered *de novo*. The 'clearly erroneous' standard applies to the magistrate judge's factual determinations and discretionary decisions. A decision is 'clearly erroneous' if the district court is left with the definite and firm conviction that a mistake has been committed. The latter is a significantly differential standard of review." *Mollica v. County of Sacramento*, 2022 U.S. Dist. LEXIS 19384, at *6 (E.D. Cal. Feb. 1, 2022) (internal citations omitted).

## A.     LEGAL STANDARD: THREE-STEP TEST FOR "GOOD CAUSE"

"As a general rule, the public is permitted access to litigation documents and information produced during discovery." *In re Roman Catholic Archbishop*, 661 F.3d 417, 424 (9th Cir. 2011) (internal citation omitted). The exception to the general rule is that "[t]he court may, for good cause, issue an order to protect a party or person from annoyance, embarrassment, oppression, or undue burden or expense." Fed. R. Civ. P. 26(c)(1). "A court considering a motion for … protective order must proceed in two steps"—really, three steps. *Archbishop*, 661 F.3d at 424; *see also id*. at 428 (acknowledging "the third step in the good cause analysis"). "Rule 26(c) places the burden of persuasion on the party seeking the protective order." *Cipollone v. Liggett Grp., Inc.*, 785 F.2d 1108, 1121 (3d Cir. 1986).

"First, [the court] must determine whether particularized harm will result from disclosure of information to the public." *Archbishop*, 661 F.3d at 424 (internal citation omitted). "Broad allegations of harm, unsubstantiated by specific examples or articulated reasoning, do not satisfy the Rule 26(c) test." *Beckman Indus. v. Int'l Ins. Co.*, 966 F.2d 470, 476 (9th Cir. 1992) (citation omitted). "Rather, the person seeking protection from disclosure must allege specific prejudice or harm." *Archbishop*, 661 F.3d at 424 (internal citation omitted).

"Second, if the court concludes that such harm will result from disclosure of the discovery documents, then it must proceed to balance the public and private interests to decide whether [] a protective order is necessary." *Archbishop*, 661 F.3d at 424 (internal citation & alteration omitted). This balancing test requires consideration of several factors, including: "(1) whether disclosure will violate any privacy interests; (2) whether the information is being sought for a legitimate purpose or for an improper purpose; (3) whether disclosure of the information will cause a party embarrassment; (4)

5

whether confidentiality is being sought over information important to public health and safety; (5) whether the sharing of information among litigants will promote fairness and efficiency; (6) whether a party benefitting from the order of confidentiality is a public entity or official; and (7) whether the case involves issues important to the public." *Id*. at 424 & n.5 (citation omitted).

Third, "even when the factors in this two-part test weigh in favor of protecting the discovery material (i.e., where the court determines that disclosure of information may result in 'particularized harm,' and the private interest in protecting the discovery material outweighs the public interest in disclosure), a court must still consider whether redacting portions of the discovery material will nevertheless allow disclosure." *Archbishop*, 661 F.3d at 425; *see also id*. at 428 (a court "must still consider the third step in the good cause analysis, the question of redaction"). Under this standard, if the court's "review of the record" would permit it to "conclude[] that [a] limited number of … records could be redacted easily to protect third-party privacy interests while leaving other meaningful information," then redaction-and-disclosure is appropriate. *Id*.

**B.    STEP ONE: SPECIFIC PREJUDICE OR HARM**

"The party opposing disclosure has the burden of proving 'good cause,' which requires a showing that specific prejudice or harm will result if the protective order is not granted." *Archbishop*, 661 F.3d at 424 (internal citation omitted). Generally, this "requir[es] [the] party requesting a protective order to provide specific demonstrations of fact, supported where possible by affidavits and concrete examples, rather than broad, conclusory allegations of potential harm[.]" *See*, *e.g.*, *Foltz v. State Farm Mut. Auto. Ins. Co.*, 331 F.3d 1122, 1130–31 (9th Cir. 2003) (internal citation omitted); *Welsh v. City & County of San Francisco*, 887 F. Supp. 1293, 1297 (N.D. Cal. 1995) ("The moving party must present a factual showing of a particular and specific need for the protective order."). Defendants did not carry the burden to show that prejudice or harm will result if no protective order is granted. *See* Joint Statement at 10–12.

**1.    No Descriptions of the Protected Documents Were Provided**

"A party asserting good cause bears the burden, for each particular document it seeks to protect, of showing that specific prejudice or harm will result if no protective order is granted." *Foltz*, 331 F.3d at 1130; *Cipollone*, 785 F.2d at 1122 ("It is correct that the burden of justifying the confidentiality of each and every document sought to be covered by a protective order remains on the party seeking the

6

protective order; any other conclusion would turn Rule 26(c) on its head.").

Defendants failed to carry the burden to identify the particular documents they seek to protect. Instead, Defendants broadly characterized the contents of the documents as "discipline records … concerning (1) the contacting of another person over a romantic relationship and affair; (2) the alleged failure to complete taser training; and (3) the use of computer facilities to conduct personal business while on duty." Joint Statement at 11 (internal citation omitted).

As demonstrated by the summaries of the document at issue above, Defendants' misrepresented the character of the documents at issue to the Magistrate Judge. For example, Defendants failed to identify DEF 01808–DEF 01919, relating to the Linde-Rendon incident where Linde cyber-stalked a CDCR employee, was subject to a restraining order, and lost her privilege to carry her department-issued firearm (2019PSB-520); and DEF 02339–DEF 02510, relating to the Linde-Sundermeyer incident where Linde and several other deputies gang-tackled an inmate and applied bodyweight on top of the inmate's back (2019PSD-0398)—in a manner similar to how she later killed Sherrano Stingley in this case.

In any event, while Plaintiffs dispute the accuracy of these characterizations, *see supra*, nonetheless, mere descriptions of documents are not sufficient to identify the contents of a protected document or to justify why those contents are subject to protection. *See*, *e.g.*, *Kaur v. City of Lodi*, 2015 U.S. Dist. LEXIS 2739, at *21–22 (E.D. Cal. Jan. 9, 2015) ("Defendants fail to state what information is contained in each category of information, apparently relying instead on the descriptions in the document requests themselves."); *Bangert v. County of Placer*, 2019 U.S. Dist. LEXIS 14287, at *12 (E.D. Cal. Jan. 25, 2019) ("defendants do not discuss the separate [] concerns raised by the at-issue materials, *i.e.*, videos, photos and incidents reports."); *Estate of Neil v. County of Colusa*, 2020 U.S. Dist. LEXIS 168892, at *5 (E.D. Cal. Sep. 14, 2020) ("Defendants do not address specific contents of any particular document."). Accordingly, Defendants' characterizations of the documents, standing alone, were insufficient to show good cause for a protective order. *See id.* Thus, the Magistrate Judge's acceptance of Defendants' unsupported characterizations of the documents—sight unseen—is insufficient to satisfy the good cause standard. *See*, *e.g.*, *Foltz*, 331 F.3d at 1130; *Cipollone*, 785 F.2d at 1122.

### 2. The Magistrate Issued An Improper "Blanket" Protective Order

"Blanket" protective orders covering a multitude of documents are disfavored, especially where

7

the party resisting discovery has not demonstrated particularized harm resulting from covered documents. *See*, *e.g.*, *Beckman Indus.*, 966 F.2d at 476 ("Reliance will be less with a blanket order, because it is by nature overinclusive."); *San Jose Mercury News, Inc. v. United States Dist. Court*, 187 F.3d 1096, 1103 (9th Cir. 1999) ("blanket [protective] orders are inherently subject to challenge and modification, as the party resisting disclosure generally has not made a particularized showing of good cause with respect to any individual document"); *see also Kaur v. City of Lodi*, 2015 U.S. Dist. LEXIS 2739, at *19, *23 (E.D. Cal. Jan. 9, 2015) (recognizing that "blanket protective orders are disfavored," in the context of defendants' request for a protective order covering, *inter alia*, "all investigative documents," "all complaints," and "everything that fits into the officers' personnel files").

The Magistrate Judge issued an improper blanket protective order "apply[ing] to the following produced documents: DEF 01805–02510." Ruling at 4. But the Magistrate Judge did not consider *what* documents were covered by the 705 pages designated for protection. Apparently, the Magistrate Judge blindly accepted Defendants' argument—and ignored Plaintiffs' argument—whether "good cause" was present. But, as discussed above, Defendants have misrepresented the character and the contents of the documents to the Magistrate Judge. Some of the documents are clearly not subject to protection. For example, some of the documents covered by the protective order are simply blank pages. (DEF 01884, DEF 01886, DEF 01888, DEF 01889, DEF 01959, DEF 02307.) Some of the documents are simply cover sheets without any content. (DEF 01920–DEF 01921, DEF 02341.) Some of the documents are simply law enforcement policies and procedures which are otherwise publicly available. (DEF 02301– DEF 02302, DEF 02486–DEF 02490.) *See* <https://www.sacsheriff.com/pages/transparency.php>; *see also Halcomb v. City of Sacramento*, 2015 U.S. Dist. LEXIS 80787, at *6 (E.D. Cal. June 19, 2015) (publicly-available law enforcement policy was not subject to a protective order). Some of the documents are simply acknowledgement forms that law enforcement officers are required to comply with policies and laws which are otherwise publicly available. (DEF 01825–DEF 01826, DEF 01827, DEF 01828, DEF 02112.) Some of the documents are simply blank templates without any filled-in content. (DEF 02491–DEF 02492, DEF 02493.)

**3.      Documents Produced Without A Protective Order Are "Presumptively Public"**

"As a general rule, the public is permitted access to litigation documents and information

8

produced during discovery." *Archbishop*, 661 F.3d at 424 (internal citation omitted). Thus, "[i]t is well-established that the fruits of pretrial discovery are, in the absence of a court order to the contrary, presumptively public[.]" *Id*. (citation omitted). "Once it is public, [information] necessarily remains public. *Gambale v. Deutsche Bank AG*, 377 F.3d 133, 144 n.11 (2d Cir. 2004).

In this case, Defendants produced the discipline documents, DEF 01805–02510, without requesting, seeking, or obtaining a protective order. *See* Joint Statement at 8, 14–16. Thus, the documents are "presumptively public." *See Archbishop*, 661 F.3d at 424. If Defendants wanted a protective order covering the discipline documents, then it was their burden timely to seek and obtain one. *See*, *e.g.*, *Lenard v. Sherwin-Williams Co.*, 2015 U.S. Dist. LEXIS 23582, at *11 (E.D. Cal. Feb. 25, 2015) ("It is the responsibility of the party resisting discovery, not the party seeking discovery, to seek a protective order."); *Perry v. City of Pontiac*, 2011 U.S. Dist. LEXIS 105365, at *12 (E.D. Mich. Sep. 16, 2011) ("If the defendants believe that a protective order is necessary to protect the [withheld documents], it is up to them … to move the Court for the entry of a protective order if the parties cannot stipulate to one."); *see also United States v. IBM Corp.*, 79 F.R.D. 412, 414 (S.D.N.Y. 1978) ("[M]otions under Rule 26(c) must be served before the date set for production." (citation omitted)). Because Defendants failed to seek a protective order before producing the disciplinary documents, they necessary are—and will remain—presumptively public documents which cannot retroactively be covered by a protective order. *See*, *e.g.*, *Gambale*, 377 F.3d at 144 n.11 ("Once the cat is out of the bag, the ball game is over."); *Franklin v. City of Chicago*, 2020 U.S. Dist. LEXIS 11097, at *15–16 (N.D. Ill. Jan. 23, 2020) ("[T]he cat is already out of the bag. There is nothing especially scandalous about repeating material in the public domain.").

### 4. At Least Some Of The Documents Are Subject To Disclosure Under State Law

"In acknowledgment of the extraordinary authority vested in peace officers and custodial officers and the serious harms occasioned by misuses of that authority, the [California] Legislature enacted [California Penal Code §] 832.7, subdivision (b) … to promote transparency and public access to certain records in the possession of state and local agencies," including "records relating to officers who engage in specified types of harmful or unlawful conduct [which] are deemed nonconfidential and must be made available for public inspection pursuant to the California Public Records Act…" *First Amendment Coal. v. Superior Court*, No. A165888, 2023 Cal. App. LEXIS 999, at *1–2 (Cal. Ct. App. Dec. 28, 2023).

9

At least one of the incidents at issue, the Linde-Sundermeyer incident identified in Bates-labels DEF 02339–DEF 02510 (2019PSD-0398), relates to "[a]n incident involving the use of force against a person by a peace officer or custodial officer that resulted in … in great bodily injury" and, thus, is subject to "public inspection." *See* Cal. Pen. Code § 832.7(b)(1)(A)(ii). Specifically, on January 8, 2019, Linde and other deputies tackled jail inmate Yasmin Sundermeyer to the floor and applied body-weight on top of her body while she was handcuffed and lying in a prone position. Yasmin Sundermeyer's head was "repeatedly slammed into the floor" and "[t]he officers [] on top of her restrict[ed] her breathing," which caused, *inter alia*, "[h]ead injuries, face swelling, restrict[ed] oxygen," "bruising, abdominal cramping, vaginal bleeding and spotting, dislocation of intrauterine birth control…" (DEF 02375.) Defendants simply did not acknowledge this incident in their portion of the Joint Statement. *See* Joint Statement at 11.

It is well-established that documents subject to public disclosure cannot be subject to a protective order. *See, e.g.*, *I.F. v. City of Vallejo*, 2021 U.S. Dist. LEXIS 28746, at \*8 n.4 & \*65–70 (E.D. Cal. Feb. 16, 2021); *Ramirez v. Trans Union, LLC*, 2014 U.S. Dist. LEXIS 58752, at \*8–10 (N.D. Cal. Apr. 28, 2014); *Halcomb v. City of Sacramento*, 2015 U.S. Dist. LEXIS 80787, at \*6 (E.D. Cal. June 19, 2015); *see also Guerrero v. Wharton*, 2018 U.S. Dist. LEXIS 46319, at \*3 (D. Nev. Mar. 21, 2018); *Perez v. City of Fresno*, 482 F. Supp. 3d 1037, 1044 (E.D. Cal. 2020) (refusing to afford protection where "much of the information … defendants seek to keep confidential is already available to the public.").

### 5.   No Specific Prejudice Or Harm Was Articulated Or Supported

Defendants failed to carry the burden to show—and support—that specific prejudice or harm will result without a protective order. Instead, Defendants hyperbolically suggested that public disclosure of the "humiliating and disparaging information … will necessarily result in harm to the deputies' reputation and will likely also negatively impact their careers," including "cast[ing] a shadow on the deputies [for] their entire lives." Joint Statement at 11. But Defendants' argument is just that—argument, without any "factual showing," *Welsh*, 887 F. Supp. at 1297, of "specific prejudice or harm," *Archbishop*, 661 F.3d at 424, "supported where possible by affidavits and concrete examples, rather than broad, conclusory allegations of potential harm," *Foltz*, 331 F.3d at 1130–31. "Mere embarrassment by the release of information is insufficient to constitute serious harm." *Welsh*, 887 F. Supp. at 1297 ("A

10

claim that public disclosure of information will be harmful to a defendant's reputation is not 'good cause' for a protective order." (citation omitted)). In fact, Defendants' unsupported argument is disproven by the fact that the deputies in this case were not meaningfully disciplined but, instead, remain gainfully employed as law enforcement officers, even after the incidents giving rise to the discipline and, subsequently, when they killed Sherrano Stingley.

But the Magistrate Judge blindly accepted Defendants' hyperbole, finding that "[P]laintiffs do not appear able to dispute [D]efendants' contention that these disciplinary records relate only to inflammatory information not clearly related to the fact pattern at issue in this case, and making these records public appears to serve no other purpose than to humiliate the deputies involved." Ruling at 4. This is not sufficient because, when applying "the 'clearly erroneous' standard when reviewing factual findings, [a court] cannot affirm a [decision's] findings [which] are 'skeletal' or conclusory unless the record … clearly reflects the basis for the [decision]'s determinations." *Unt v. Aerospace Corp.*, 765 F.2d 1440, 1445 (9th Cir. 1985). Inexplicably, the Magistrate Judge's ruling ignored Plaintiffs' argument, *inter alia*, that "Defendants' embarrassment, incrimination, or exposure to further litigation is not sufficient." Joint Statement at 17 (internal citation omitted); *see also Welsh*, 887 F. Supp. at 1297 ("Mere embarrassment by the release of information is insufficient to constitute serious harm.").

For example, in *Macias v. Cleaver*, 2016 U.S. Dist. LEXIS 85529 (E.D. Cal. June 30, 2016), defendants sought to maintain a protective order covering "two Internal Affairs Investigations … which investigated allegations of work[-]related misconduct by Officer Cleaver." *Id*. at *2. "Defendants offer[ed] that several compelling reasons exist[ed] to keep the Internal Affairs Documents under seal," including that the "[p]laintiff's use of the unrelated Internal Affairs documents [wa]s for the [primary] purpose of attacking Officer Cleaver's character and turning him into a pariah"; that "unsealing the Internal Affairs investigations w[ould] only serve as a vehicle to promote public scandal and satisfy the private spite that [p]laintiff holds against [d]efendants"—*i.e.*, "making Officer Cleaver look bad"; and that "[p]laintiff's spite" was illegitimate cause for disclosure. *Id*. at *12–13 (internal citation omitted). The court rejected defendants' arguments:

> These documents were created as a result of official action by the City of Clovis to investigate the official conduct of one of its officers. None of the Internal Investigation Documents involve personal actions unrelated to official functions, decisions and duties of

11

the officers. …[I]t is hardly private spite, promotion of public scandal, or libelous, to contend that Defendant engaged in misconduct during the scope of his official duties, and to submit to the Court documented instances of alleged misconduct in support of that argument. The public's interest in the conduct of its officers cannot be undermined by calling it a desire for public spectacle, or a form of "private spite."

Based on the strong presumption of public access to judicial records and the public's strong interest in the conduct of officers, this Court must refuse requests to engage in damage control on behalf of the Defendants. Here, where the case involves allegations of police misconduct, the public has a vested interest "in assessing the truthfulness of allegations of official misconduct, and whether agencies that are responsible for investigating and adjudicating complaints of misconduct have acted properly and wisely." *See Welsh v. City & County of San Francisco*, 887 F. Supp. 1293, 1302 (N.D. Cal. 1995). "Misconduct by individual officers, incompetent internal investigations, or questionable supervisory practices must be exposed if they exist. *Id.* (quoting *Skibo v. City of New York*, 109 F.R.D. 58, 61 (E.D.N.Y. 1985) (ordering disclosure of files concerning complaints against police officers made to civilian complaint review board)).

The Court disagrees that Plaintiff's purported intent to "advertise or publicize [the] Internal Affairs Investigations ... in order to locate 'favorable witnesses'" qualifies as an "improper purpose" under Ninth Circuit precedent. The Ninth Circuit has explicitly stated that "exposure to further litigation" is not a compelling reason to overcome the presumption of public access to court records. [*Kamakana v. City & County of Honolulu*, 447 F.3d 1172, 1178 (9th Cir. 2006)]. Moreover, the publication of details surrounding Plaintiff's case, though arguably unflattering to Defendants, does not in and of itself serve to gratify a private spite. To the contrary, the documents here are not scandalous or tawdry but involve incidents that were, in large part, sustained by Defendants' own investigators. The Clovis Police Department conducted a thorough investigation and recommended disciplinary action based on its findings. Therefore, there is little concern that the documents are utterly meritless serving purely to circulate libelous or other baseless statements. *Kamakana*, 447 F.3d at 1179. The City did precisely what was required of it; conducted an extensive and thorough investigation and concluded disciplinary action was warranted for Officer Cleaver's conduct. "That the production of records may lead to a litigant's embarrassment or incrimination ... will not, without more, compel the court to seal its records." *Id.*

Defendants next accuse Plaintiff of "bootstrapping" information from "unrelated Internal Affairs investigation reports" in an effort to bolster his malicious prosecution claim. . . . Defendants see no correlation between the various internal affairs investigations that concluded that Officer Cleaver repeatedly made material misrepresentations in the course of his duties and Plaintiff's claim of malicious prosecution. Instead, Defendants argue that Officer Cleaver's previous behavior is more akin to an officer who allegedly lied about work that he never completed in order to make cases go away, not to facilitate prosecution of an individual. . . . [T]he conduct alleged here occurred in the scope of [Officer Cleaver]'s official duties while he was acting under the color of law. At issue here, and at issue in the internal affairs investigations, is how the officer conducted himself as an officer and how he performed specific duties, such as preparing police reports, and including whether he may have abused his authority. Official conduct and abuse of authority are central to Plaintiff's allegations in this case.

*Id.* at *13–18 (internal citation omitted).

12

Similarly, in this case, Defendants do not argue that the allegations of misconduct are not true. *See* Joint Statement at 11. Indeed, Defendants cannot do so because the County's own investigative efforts found that the deputies engaged in misconduct. *See Macias*, 2016 U.S. Dist. LEXIS 85529, at *15 ("the documents here are not scandalous or tawdry but involve incidents that were, in large part, sustained by Defendants' own investigators"). Instead, Defendants' argument is that the public should not have the ability to learn about the deputies' misconduct because it "does not advance any of Plaintiffs' claims asserted in this case." Joint Statement at 11. But, again, "the conduct alleged here occurred in the scope of [the deputies'] official duties while [they] w[ere] acting under the color of law" and "[o]fficial conduct and abuse of authority are central to Plaintiff[s'] allegations in this case." *See Macias*, 2016 U.S. Dist. LEXIS 85529, at *18. Indeed, one of the theories of Plaintiffs' case is that Defendants' failure meaningfully to supervise, re-train, and discipline personnel caused the officers to act with impunity, resulting in Sherrano's death. *See* ECF No. 1 ¶ 166(c), (d), (e) ("[Defendants] failed adequately to train officers under their command in critical areas, including … [e]mploying and retaining and inadequately supervising, training, controlling, assigning, and disciplining personnel with dangerous propensities for abusing authority"; "[m]aintaining inadequate procedures for reporting, supervising, investigating, reviewing, disciplining, and controlling misconduct by personnel"; and "[f]ailing adequately to discipline personnel, including imposing discipline that is disproportional to the magnitude of the misconduct and fails to discourage future misconduct or is tantamount to encouraging misconduct—*e.g.*, 'slaps on the wrist.'"). The discipline documents at issue directly support and validate these allegations.

In particular, the Magistrate Judge's finding that the documents at issue were "not clearly related to the fact pattern at issue in this case," Ruling at 4, was demonstrably wrong, at least with respect to the Linde-Sundermeyer incident identified in Bates-labels DEF 02339–DEF 02510 (2019PSD-0398). In that case, Linde and fellow deputies tackled, mounted, and applied pressure to Sundermeyer's back while she was handcuffed which "restrict[ed] her breathing" and "oxygen." (DEF 02375.) In this case, Linde and other deputies tackled, mounted, and applied pressure to Sherrano's back while he was handcuffed which restricted his breathing and oxygen and caused his death. *See* ECF No. 34-2 at 4–59. It is hard to image a fact pattern which is more "related."

13

In any event, prior incidents involving the same officers need not be "clearly related to the fact pattern at issue in this case," as the Magistrate Judge found. *See* Ruling at 4. Specifically, "[t]he officer's violations may be dissimilar." *See*, *e.g.*, *Puckett v. County of Sacramento*, 2023 U.S. Dist. LEXIS 39761, at *24 (E.D. Cal. Mar. 8, 2023); *Hayes v. Riley*, 525 F. Supp. 3d 1118, 1121 (N.D. Cal. 2020) ("it typically will not matter whether the prior acts of misconduct were similar or different"). This is "because when the same officer repeatedly violates the constitutional rights of a municipality's residents, and the municipality is on notice of these violations and fails to properly discipline the officer, by definition the municipality is deliberately indifferent to the likelihood that the officer will continue to commit constitutional violations in the future." *Sanchez v. County of Sacramento*, 2021 U.S. Dist. LEXIS 105549, at *13 (E.D. Cal. June 3, 2021) (internal citation & alterations omitted); *e.g.*, *Velazquez v. City of Long Beach*, 793 F.3d 1010, 1027–28 (9th Cir. 2015) (reversing exclusion of evidence providing the "evidentiary basis for a failure-to-discipline *Monell* theory," including "ten citizen complaints regarding [the officer's] conduct"); *Caldwell v. City of San Francisco*, 2020 U.S. Dist. LEXIS 242004, at *53–54 (N.D. Cal. Dec. 23, 2020) ("the number of complaints against [the officer] should have resulted in further review including intervention or counseling, but there is no evidence that there was any supervisory review of [the officer] concerning the number of citizen complaints against him or monitoring by any supervisors" (internal citation omitted)).

## C.    STEP TWO: PUBLIC INTERESTS VS. PRIVATE INTERESTS

"A court considering a motion for a … protective order <u>must</u> proceed in two steps." *Archbishop*, 661 F.3d at 424 (emphasis added). Specifically, "if the court concludes that [] harm will result from disclosure of the discovery documents, then it <u>must</u> proceed to balance the public and private interests to decide whether [] a protective order is necessary." *Id*. (emphasis added, internal citation & alteration omitted).

### 1.    The Magistrate Judge Failed To Consider Step Two

"A magistrate judge's decision is 'contrary to law' if it applies an incorrect legal standard, fails to consider an element of the applicable standard, or fails to apply or misapplies relevant statutes, case law, or rules of procedure." *Bland v. Rodriguez*, 2021 U.S. Dist. LEXIS 184422, at *4 (E.D. Cal. Sep. 25, 2021) (citation & alteration omitted).

14

The Magistrate Judge failed to comply with the Ninth Circuit's *mandatory* directive that a court "*must*" balance the public and private interests to decide whether a protective order is necessary. *See* Ruling at 4. Thus, the Magistrate Judge's ruling is contrary to law.

### 2.     The Interests Favor Disclosure

If the Magistrate Judge had considered the mandatory factors to be balanced, she would have concluded that Defendants failed to demonstrate any harm "outweigh[s] the public interest in access." *See Estate of Neil v. County of Colusa*, 2020 U.S. Dist. LEXIS 168892, at *7 (E.D. Cal. Sep. 14, 2020).

<u>Privacy Interests</u>: "[P]rivacy interests are diminished when the party seeking protection is a public person subject to legitimate public scrutiny." *Pansy v. Borough of Stroudsburg*, 23 F.3d 772, 787 (3d Cir. 1994). Specifically, "when documents are related to the officers' work with [a law enforcement] department, then the right to privacy does not apply." *Sanchez v. City of San Jose*, 250 F.R.D. 468, 470 (N.D. Cal. 2008).[2] Thus, this factor favors disclosure.

<u>Legitimate Purpose</u>: "The public's interest is particularly legitimate and important where, as in this case, at least one of the parties to the action is a public entity or official." *Pansy*, 23 F.3d at 786. "A desire to educate the public about issues involving public officers is a legitimate reason to disclose information produced in discovery." *Perez v. City of Fresno*, 482 F. Supp. 3d 1037, 1045 (E.D. Cal. 2020). "The public has a strong interest in assessing the truthfulness of allegations of official misconduct, and whether agencies that are responsible for investigating and adjudicating complaints of misconduct have acted properly and wisely." *Welsh v. City & County of San Francisco*, 887 F. Supp. 1293, 1302 (N.D. Cal. 1995). Thus, this factor favors disclosure.

<u>Embarrassment</u>: "The mere fact that the production of records may lead to a litigant's embarrassment … will not, without more, compel the court to seal its records." *Kamakana v. City & County of Honolulu*, 447 F.3d 1172, 1179 (9th Cir. 2006); *Welsh*, 887 F. Supp. at 1297; *Macias v. Cleaver*, 2016 U.S. Dist. LEXIS 85529, at *14 (E.D. Cal. June 30, 2016). "Additionally, [where] the

---

[2] The privacy interests of third parties and other non-defendant personnel are not implicated, where Defendants redacted the identifying and contact information of these persons pre-production. In any event, a party opposing disclosure cannot invoke privacy interests of third parties. *See, e.g.*, *Elk Grove Unified Sch. Dist. v. Newdow*, 542 U.S. 1, 12 (2004) (observing "'general prohibition on a litigant's raising another person's legal rights'"); *Sneirson v. Chemical Bank*, 108 F.R.D. 159, 161 n.5 (D. Del. 1985) (a party to litigation "has no standing to assert the privilege of another").

basic facts of the case are already public, and so is [the involved officer]'s name," "[t]hat preexisting

publicity reduces the strength of this factor." *Perez*, 482 F. Supp. 3d at 1046. In this case, the

circumstances of these incidents are "presumptively public" where Defendants disclosed the documents

without a protective order, *Archbishop*, 661 F.3d at 424, and summaries of the incidents have already

been made available in public filings. *See Estate of Stingley v. County of Sacramento*, No. 2:23-cv-

00255-TLN-AC, ECF No. 34-2 at 22–28 (E.D. Cal. Nov. 15, 2023); *Garcia v. County of Sacramento*,

No. 2:23-cv-00899-DAD-KJN, ECF No. 17 at 21–29 (E.D. Cal. Dec. 8, 2023); *Bencomo v. County of

Sacramento*, No. 2:23-cv-00440-DAD-JDP, ECF No. 22-2 at 22–30 (E.D. Cal. Dec. 27, 2023). "There is

nothing especially scandalous about repeating material in the public domain." *Franklin v. City of

Chicago*, 2020 U.S. Dist. LEXIS 11097, at *15–16 (N.D. Ill. Jan. 23, 2020). Thus, this factor favors

disclosure.

<u>Public Health and Safety</u>: "Circumstances weighing against confidentiality exist when

confidentiality is being sought over information important to public health and safety[.]" *Pansy*, 23 F.3d

at 787. "The general public's health and safety are at issue whenever there are serious allegations of

police [misconduct]. . . [T]here is an important public interest at stake—the health and welfare of the

general public and the integrity of the [law enforcement agency]. The public has a right to know how

matters concerning their daily protection are being investigated and handled. If it were not for this type of

public information, allegations of police [misconduct] might go unnoticed—seriously jeopardizing the

safety of the community at large." *See*, *e.g.*, *Wiggins v. Burge*, 173 F.R.D. 226, 229–30 (N.D. Ill. 1997);

*Welsh*, 887 F. Supp. at 1302 ("Misconduct by individual officers, incompetent internal investigations, or

questionable supervisory practices must be exposed if they exist."). Thus, this factor favors disclosure.

<u>Fairness and Efficiency</u>: Disclosure will promote fairness and efficiency because discipline

documents like these have been found to be subject to disclosure in several other cases, and deviation

from this course would be unfair and inefficient. *See*, *e.g.*, *Macias*, 2016 U.S. Dist. LEXIS 85529, at

*13–18. Thus, this factor favors disclosure.

<u>Public Entity or Official</u>: "[Courts] are more likely to require disclosure when a party benefitting

from the order of confidentiality is a public entity or official[.]" *Leap Sys. v. Moneytrax, Inc.*, 638 F.3d

216, 222 (3d Cir. 2011) (internal citation omitted). Thus, "[t]his weighs in favor of disclosure." *Perez*,

16

482 F. Supp. 3d at 1046–47.

Matter of Public Concern: "[Courts] … are more likely to require disclosure … when the judicial record involves matters of legitimate public concern." *Leap Sys.*, 638 F.3d at 222 (internal citation omitted). "The public has a right to know how matters concerning their daily protection are being investigated and handled." *Wiggins*, 173 F.R.D. at 229–30. "The public unquestionably holds a hefty interest in police force transparency, and especially so when fundamental rights are at stake." *Harmon v. City of Santa Clara*, 323 F.R.D. 617, 624 (N.D. Cal. 2018). "The public has a strong interest in transparency into the internal review process itself, including the ultimate findings, in order to assess whether existing procedures for overseeing law enforcement—in this case, [peace] officers—are fair and adequate." *Reynolds v. Huddleston*, 2023 U.S. Dist. LEXIS 123058, at *7 (C.D. Cal. July 3, 2023); *see also Greer v. County of San Diego*, 2023 U.S. Dist. LEXIS 118943, at *17–18 (S.D. Cal. July 11, 2023) ("Information about the County's possible mistreatment of [persons] is inherently a matter of significant public interest: County residents not only support these operations with their taxpayer dollars but may be subject to such treatment [themselves].")." Thus, this factor favors disclosure.

First Amendment Rights: "[*Seattle Times Co. v. Rhinehart*, 467 U.S. 20 (1984)] leaves no doubt that protective orders that restrict or prohibit dissemination of discovered information invade in some measure First Amendment rights…" *Humboldt Baykeeper v. Union Pac. R.R.*, 244 F.R.D. 560, 566 (N.D. Cal. 2007). "[A] trial court [] would err if it ignored this party interest [in the freedom to share discovered information] altogether." *Id.* (fn. omitted). The Magistrate Judge's ruling did, in fact, ignore this interest altogether. *See* Ruling at 4. As noted above, the circumstances of these incidents are "presumptively public" where Defendants disclosed the documents without a protective order. *See Archbishop*, 661 F.3d at 424. Restricting and prohibiting Plaintiffs and their counsels' ability to share discovered information imposes a "prior restraint on free speech" which violates the "First Amendment rights of the parties, counsel, the media, and the public." *See Kaur v. City of Lodi*, 2014 U.S. Dist. LEXIS 110079, at *5 (E.D. Cal. Aug. 7, 2014); *see also Overbey v. Mayor and City Council of Baltimore*, 930 F.3d 215, 224 (4th Cir. 2019) (holding that "[c]laims of police misconduct" and "the circumstances in which" a police department "litigates and settles such claims" are "public issues" on which individuals have a First Amendment right to engage in uninhibited debate). Thus, this factor favors disclosure.

**D.     STEP THREE: FEASIBILITY OF REDACTION**

"[E]ven when the factors in th[e] two-part test weigh in favor of protecting the discovery material (i.e., where the court determines that disclosure of information may result in 'particularized harm,' and the private interest in protecting the discovery material outweighs the public interest in disclosure), a court <u>must</u> still consider whether redacting portions of the discovery material will nevertheless allow disclosure." *Archbishop*, 661 F.3d at 425, 428 (emphasis added).

**1.      The Magistrate Judge Failed To Consider Step Three**

"A magistrate judge's decision is 'contrary to law' if it applies an incorrect legal standard, fails to consider an element of the applicable standard, or fails to apply or misapplies relevant statutes, case law, or rules of procedure." *Bland v. Rodriguez*, 2021 U.S. Dist. LEXIS 184422, at *4 (E.D. Cal. Sep. 25, 2021) (citation & alteration omitted).

The Magistrate Judge failed to comply with the Ninth Circuit's *mandatory* directive that a court "*must*" consider whether redacting portions of the discovery material will nevertheless allow disclosure. *See* Ruling at 4. Thus, the Magistrate Judge's ruling is contrary to law. Significantly, the magistrate judge *could not* conduct the redaction-feasibility inquiry, where the Magistrate Judge was not even aware of *what* documents would be covered by the protective order. *See* Ruling at 4 (vaguely identifying protected "documents at DEF 01805–02510"). Defendants' representations that the documents were subject to protection were accepted by the Magistrate Judge, without specifying the actual *contents* of the documents. *See id.*

**2.      Redaction Has Already Occurred**

If the Magistrate Judge had ordered Defendants to produce the documents allegedly subject to protection (or, considered Plaintiffs' portion of the Joint Statement), then it would have been clear that redacting portions of the discovery material would nevertheless allow disclosure—*because Defendants have already redacted the documents*. *See* Joint Statement at 19 ("In this case, the records are *already* redacted, reflecting Defendants' understanding that the documents are—and should be—subject to public disclosure, except for the redacted information.").

Further, Defendants' failure to address redaction of the discipline documents in their portion of the Joint Statement constituted waiver of the issue. *See, e.g.*, *Estate of Neil v. County of Colusa*, 2020

18

U.S. Dist. LEXIS 168892, at *7 n.2 (E.D. Cal. Sep. 14, 2020) ("Defendants do not argue in the alternative that the investigative reports should be filed with redactions, nor do they identify specific contents of the reports that would warrant redaction."); *I.F. v. City of Vallejo*, 2021 U.S. Dist. LEXIS 28746, at *67–68 (E.D. Cal. Feb. 16, 2021) ("The court will not take it upon itself to review and redact the 50-plus documents…"); *see also Shelley v. County of San Joaquin*, 2015 U.S. Dist. LEXIS 58285, at *18 (E.D. Cal. May 1, 2015) ("Because no specific document has been brought before the court for consideration, the undersigned cannot determine whether, for instance, redaction of the particular document would allow for its public disclosure.").

## VI.    <u>CONCLUSION</u>

For the reasons stated in Plaintiffs' portion of the Joint Statement, ECF No. 40, and in this briefing, the Court should grant Plaintiffs' request reconsideration and decline to accept the Magistrate Judge's ruling, ECF No. 42.

Dated: January 26, 2024                                      Respectfully Submitted,

By: _____
Mark E. Merin
Paul H. Masuhara
LAW OFFICE OF MARK E. MERIN
1010 F Street, Suite 300
Sacramento, California 95814
Telephone: (916) 443-6911
Facsimile: (916) 447-8336

Attorneys for Plaintiffs
ESTATE OF SHERRANO STINGLEY,
DYMIN STINGLEY, S.S.,
and ANNETTE HILBURN

19