1

**PORTER | SCOTT**

A PROFESSIONAL CORPORATION
Carl L. Fessenden, SBN 161494
cfessenden@porterscott.com
Suli A. Mastorakos, SBN 330383
smastorakos@porterscott.com
2180 Harvard Street, Suite 500
Sacramento, California 95815
TEL: 916.929.1481
FAX: 916.927.3706

Attorneys for Defendants
COUNTY OF SACRAMENTO, SACRAMENTO COUNTY SHERIFF'S DEPARTMENT, SCOTT JONES, FREDDY MARTINEZ, RACHELL VILLEGAS, BRITTANY LINDE and BRANDON SWAIM

*Exempt from Filing Fees Pursuant to Government Code § 6103*

## UNITED STATES DISTRICT COURT
### EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| ESTATE OF SHERRANO STINGLEY, DYMIN STINGELY, S.S., and ANNETTE HILBURN, | CASE NO. 2:23-cv-00255-TLN-AC |
| Plaintiffs, | **NOTICE OF REDACTED DOCUMENT** |
| v. | FAC: 04/10/24<br>Complaint Filed: 02/09/2023 |
| COUNTY OF SACRAMENTO, SACRAMENTO COUNTY SHERIFF'S DEPARTMENT, SCOTT JONES, FREDDY MARTINEZ, RACHELL VILLEGAS, BRITTANY LINDE, and BRANDON SWAIM, | |
| Defendants. | |

1

Pursuant to the Court's Order, ECF No. 60, attached hereto as **Exhibit E** to Defendants' Request to Seal Documents is a true and correct copy of the parties' Joint Statement regarding Discovery Disagreement, ECF 40, with the appropriate redactions applied.


Dated:  June 5, 2024                                  PORTER SCOTT
                                                      A PROFESSIONAL CORPORATION

                                                      By  _/s/Suli A. Mastorakos_____
                                                              Carl L. Fessenden
                                                              Suli A. Mastorakos
                                                              Attorneys for Defendants

**NOTICE OF REDACTED DOCUMENT**

# Exhibit E to Defendants' Request to Seal

**PORTER | SCOTT**
A PROFESSIONAL CORPORATION
Carl L. Fessenden, SBN 161494
cfessenden@porterscott.com
Suli A. Mastorakos, SBN 330383
smastorakos@porterscott.com
2180 Harvard Street, Suite 500
Sacramento, CA 95815
TEL: 916.929.1481
FAX: 916.927.3706

Attorneys for Defendants
   COUNTY OF SACRAMENTO,
   SACRAMENTO COUNTY SHERIFF'S
   DEPARTMENT, and SCOTT JONES

 Mark E. Merin (State Bar No. 043849)
 Paul H. Masuhara (State Bar No. 289805)
 LAW OFFICE OF MARK E. MERIN
 1010 F Street, Suite 300
 Sacramento, California 95814
 Telephone:      (916) 443-6911
 Facsimile:      (916) 447-8336
 E-Mail:         mark@markmerin.com
                 paul@markmerin.com

Attorneys for Plaintiffs
ESTATE OF SHERRANO STINGLEY,
DYMIN STINGLEY, S.S.,
and ANNETTE HILBURN

UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

SACRAMENTO DIVISION

| | |
|---|---|
| ESTATE OF SHERRANO STINGLEY, DYMIN STINGLEY, S.S., and ANNETTE HILBURN, | Case No. 2:23-cv-00255-TLN-AC |
| Plaintiffs, | **JOINT STATEMENT RE: DISCOVERY DISAGREEMENT (ECF No. 35)** |
| vs. | |
| COUNTY OF SACRAMENTO, SACRAMENTO COUNTY SHERIFF'S DEPARTMENT, SCOTT JONES, and DOE 1 to 10, | [Hearing Vacated; ECF No. 36] |
| Defendants. | |

Defendants County of Sacramento, Sacramento County Sheriff's Department, and Scott Jones (collectively, "Defendants") and Plaintiffs Estate of Sherrano Stingley, Dymin Stingley, S.S., and Annette Hilburn (collectively, "Plaintiffs") submit the following Joint Statement Re: Discovery Disagreement, related to the pending discovery dispute, ECF No. 35, pursuant to Local Rule 251(c).

## I.    STATEMENT OF THE ACTION AND RELEVANT DISPUTES

**Defendants' Position**: Generally, this action arises from the death of Sherrano Stingley, who lost consciousness during an officer-involved encounter on December 6, 2022, and later died on December 16, 2022.

On October 6, 2023, Defendant COUNTY OF SACRAMENTO (hereinafter, "County") produced personnel records reflecting discipline related to Sacramento County Sheriff's Deputies Brittany Linde and Freddy Martinez.  At the time, the County marked those records as confidential, subject to an existing Protective Order (ECF No. 19).  Then, on October 23, 2023, Plaintiffs' counsel sent an email to defense counsel requesting that Defendants stipulate to an amended complaint.  That proposed First Amended Complaint included information from the discipline records produced by the County.  The parties then met and conferred.  During that process, Defendants objected to the information related to the discipline being included in the proposed First Amended Complaint.  It is Defendants' position that the inclusion of that information violates the Protective Order.  Plaintiffs argue that the discipline records are not subject to the Protective Order.

By its motion, Defendants ask the Court to find that the discipline records at issue are subject to the existing Protective Order.  In the alternative, if the Court concludes that the existing Protective Order does not cover the discipline records at issue, Defendants request that the Court amend the Protective order to include the records.

This dispute concerns extremely prejudicial and confidential personnel records of deputies Brittany Linde (DEF 01805–01919, and 02339–02510) and Freddy Martinez (DEF 01920–02338) in the form of discipline records that Defendants produced to Plaintiffs under a confidential designation pursuant to the parties' Protective Order on file.  (*See* ECF No. 19.)  The Protective Order specifically covers the "***personnel files***" of Deputies Brittany Linde, Freddy Martinez, and Rachell Villegas, which the subject

1

**JOINT STATEMENT RE: DISCOVERY DISAGEEMENT (ECF No. 35)**
*Estate of Stingley v. County of Sacramento*, United States District Court, Eastern District of California, Case No. 2:23-cv-00255-TLN-AC

discipline records undoubtedly are[1]. (*See* ECF No. 18 at 3:5-11.) (Emphasis added.)

Specifically, in summary, the subject discipline records pertain to unrelated discipline concerning **(1)** the contacting of another person over a romantic relationship and affair (*see* ECF No. 34-2 at ¶ 2, Exhibit A [Proposed FAC] at ¶ 180(a)); **(2)** the alleged failure to complete taser training (*Id.* at ¶ 180(b)); and **(3)** the use of computer facilities to conduct personal business while on duty. (*Id.* at ¶¶ 180(d) and (g).) Making such information public does not advance Plaintiffs' claims, but is being used to publicly humiliate and disparage all involved.

Defendants contend that Plaintiffs have violated the parties' Protective Order by including the information from the discipline records in their proposed First Amended Complaint ("FAC") that is the subject of Plaintiffs' currently pending Motion to Amend Complaint, ECF No. 34, thereby necessitating this dispute[2]. (*See* ECF No. 34-2 at ¶ 2, Exhibit A [Proposed FAC] at ¶¶ 180(a), (b), (d), and (g).) Plaintiffs' counsel now tries to justify including that information by arguing that the Protective Order does not apply to the discipline records produced.  (*See* Declaration of Suli A. Mastorakos ("Mastorakos Decl.") at ¶ 12.)

The purpose and intent of the Protective Order is to limit the use of ***personnel files*** to this lawsuit. That is, to prevent the disclosure of such information to any person outside of this lawsuit.   Clearly, by including information from personnel files in the proposed FAC, that intent is defeated as anyone can access Plaintiffs' FAC and use the information however they wish, including in other matters/lawsuits. Plaintiffs try to sidestep this issue by claiming that the information does not need to be protected because it has been made public. However, Plaintiffs ignore that it is the result of their improper conduct – not Defendants – that has resulted in the information being made public, and by extension, the instant motion.

It is Defendants' position that the existing Protective Order applies to the discipline records produced, and therefore, that information should not be included in the proposed FAC.  However, to the extent the Court concludes that the Protective Order, as currently drafted, does not apply to the discipline

---

[1] For added context, Cal. Penal Code § 832.8(a)(4) defines "[p]ersonnel records" to include "records relating to…***discipline***." (Emphasis added.)

[2] It is necessary that the information be protected, as Plaintiffs are attempting to assert these same allegations in a proposed First Amended Complaint in another case involving the deployment of a police canine, *Bencomo v. County of Sacramento, et al.*, Case No. 2:23-cv-00440-DAD-JDP. Deputies Linde and Martinez were not involved in that event. (*See* Mastorakos Decl. at ¶ 14.)

records at issue, Defendants request that the Protective Order be amended/modified to include those records. The discipline records at issue are clearly confidential personnel records that are subject to protection.

**Plaintiffs' Position**: Generally, this action arises from the death of Sherrano Stingley, who fell into a coma during an officer-involved encounter on December 6, 2022, and died on December 16, 2022.

Early in discovery, Plaintiffs requested that Defendants produce "[a]ll personnel files of the three officers present when Sherrano Stingley was encountered, placed into prone position, and handcuffed on December 6, 2022…" Declaration of Mark E. Merin ("Merin Decl.") Exhibit ("Ex.") 1 at 6 (RFP No. 19).[3] Defendants requested, and Plaintiffs agreed to, a stipulated protective order ("SPO") covering the three officers' personnel files. *Id*. Ex. 3 at 7. Accordingly, the parties negotiated and crafted an SPO which *specifically identified* the "personnel files" to be protected by Bates numbers. *Id*. at 1–7. The parties filed their SPO, identifying the protected documents as follows: (1) "Personnel Files of Freddy Martinez (Bates DEF 01667 – DEF 01748)"; (2) "Personnel Files of Rachell Villegas (Bates DEF 01749 – DEF 01792)"; and (3) "Personnel Files of Brittany Linde (Bates DEF 01577 – DEF 01666)." ECF No. 18 at 3. This Court approved and entered the parties' SPO. ECF No. 19. Thereafter, Defendants produced the protected personnel files. Merin Decl. Ex. 4.

Separately, Plaintiffs also requested that Defendants produce "[a]ll instances of discipline against the three officers present when Sherrano Stingley was encountered, placed into prone position, and handcuffed on December 6, 2022…" Merin Decl. Ex. 1 at 7 (RFP No. 26). Defendants failed timely to produce responsive documents, causing extensive meet-and-confer efforts. Merin Decl. Ex. 5. During the conferences, Defendants' counsel suggested that "[t]he County may request that any such documents be produced pursuant to a [p]rotective [o]rder." *Id*. at 11. But Defendants never made any such request or motion. *See id*. Instead, Defendants eventually produced the documents, including: (1) Discipline Documents of Freddy Martinez (Bates DEF 01920–DEF 02338); and (2) Discipline Documents of Brittany Linde (Bates DEF 01805–DEF 01919, DEF 02339–DEF 02510). *Id*. Ex. 6.

On November 15, 2023, Plaintiffs filed a currently-pending motion for leave to file amended

---

[3] The identities of the relevant "three officers" were later discovered to be deputies Freddy Martinez, Rachell Villegas, and Brittany Linde. *See* ECF No. 34; *see also* ECF No. 34-2 at 4–59.

3

pleading. ECF No. 34. Therein, Plaintiffs seek leave to amend their pleading to allege, *inter alia*, the disciplinary histories of ███████████ and ███████████. ECF No. 34-2 at 22–28. Specifically, some of the disciplinary histories contained in the proposed allegations were summarized from some of the discipline documents produced by Defendants in response to RFP No. 26, including:

> On May 20, 2018, Defendant ███████████ stalked and confronted Wendy McElroy in a coffee shop, told her that she was a deputy sheriff, and threatened to assault and kill her. Defendant ███████████ was engaged in an ongoing sexual relationship with Wendy McElroy's husband at the time of the assault and threats. Wendy McElroy filed a citizen complaint with Defendant SACRAMENTO COUNTY SHERIFF'S DEPARTMENT. (Sacramento County Sheriff's Department, Professional Standards Division No. 2018PSD-273.) Captain Matt Petersen recommended that Defendant ███████████ "receive a Documented Counseling to remain in her personnel file for a period of six (6) months." On November 7, 2018, a Documented Counseling was placed in Defendant ███████████ file for six months.

> Defendant ███████████ failed to complete a required taser qualification training. On September 13, 2018, Defendant ███████████ receive a Documented Counseling in her personnel file.

> On January 8, 2019, Defendant ███████████ and two other deputies escorted Yasmin Sundermeyer, an inmate at the Rio Cosumnes Correctional Center ("RCCC"), from the medical office to her cell. At the medical office, Yasmin Sundermeyer received treatments related to her trouble to breathe. Yasmin Sundermeyer was handcuffed and non-threatening. Inside the cell, Defendant ███████████ and two fellow deputies tackled Yasmin Sundermeyer to the floor and applied body-weight on top of her body while she was handcuffed and lying in a prone position. Defendant ███████████ climbed on top of Yasmin Sundermeyer's "middle" or back, while the other two deputies were "immobilizing" her "lower body – legs" and "head and shoulders." Specifically, Defendant ███████████ "placed her knee across [Yasmin] Sundermeyer's abdomen area … while being restrained." Defendant ███████████ and two fellow deputies confined Yasmin Sundermeyer to a "Pro-Straint chair" for longer than one hour. Yasmin Sundermeyer filed a citizen complaint with Defendant SACRAMENTO COUNTY SHERIFF'S DEPARTMENT. (Sacramento County Sheriff's Department, Professional Standards Division No. 2019PSD-0398.) On May 26, 2020, Captain Todd Henry recommended that the deputies, including Defendant ███████████ ███████ be "EXONERATED" of any misconduct.

> Beginning in May 2019, Defendant ███████████ repeatedly sent threatening and inappropriate emails to Rachael Rendon at her work-related email address, where she was employed as a parole officer by the California Department of Corrections and Rehabilitation ("CDCR"). Rachael Rendon was the girlfriend of Defendant ███████████ ex-boyfriend, Chris. For example, Defendant ███████████ threatened Rachael Rendon that she would "contact your appropriate chain of command" (Defendant ███████████ ███████ previously worked for the CDCR) and that Defendant BRITTANY LINDE had an ongoing relationship with Chris. Defendant ███████████ harassing emails caused

4

**JOINT STATEMENT RE: DISCOVERY DISAGREEMENT (ECF No. 35)**
*Estate of Stingley v. County of Sacramento*, United States District Court, Eastern District of California, Case No. 2:23-cv-00255-TLN-AC

Rachael Rendon to fear for her safety and the safety of her children and family. Rachael Rendon made repeated and unsuccessful requests for Defendant ███████████ to cease her contacts. Defendant ███████████ also abused her access to Defendant SACRAMENTO COUNTY SHERIFF'S DEPARTMENT's Known Persons File ("KPF") information database to view confidential information about Rachael Rendon and her family members, for personal and non-legitimate reasons. Rachael Rendon obtained a civil restraining order against Defendant ███████████ which prohibited her ability to possess personal and department-issued firearms for one month. Rachael Rendon's petition for restraining order identified Defendant ███████████ previous history of physical assault and stalking. (Superior Court of California, County of Sacramento, Case No. 34-2019-7006482.) Rachael Rendon also filed a police report with the Folsom Police Department. (Folsom Police Department, Report No. 19-093101148.) Rachael Rendon also filed a citizen complaint with Defendant SACRAMENTO COUNTY SHERIFF'S DEPARTMENT. (Sacramento County Sheriff's Department, Professional Standards Division No. 2019PSD-0520.) Captain James Barnes recommended that Defendant ███████████ "be suspended from [her] position as Deputy Sheriff for a period of forty-eight (48) hours." On February 26, 2020, Defendant SCOTT JONES "deemed appropriate" the recommended discipline.

\*   \*   \*   \*

From December 7, 2020, through January 12, 2021, Defendant ███████████ improperly accessed Defendant SACRAMENTO COUNTY SHERIFF'S DEPARTMENT's Jail Person Files ("JPF") information database at least 22 times, and Known Persons File ("KPF") information database at least three times, for personal and non-legitimate reasons. (The search for improper access was limited to the period from November 1, 2020, to January 12, 2021.) Defendant ███████████ conducted the unauthorized inquiries to learn more about a suspect in the assault of a family member. An anonymous citizen complaint was filed with Defendant SACRAMENTO COUNTY SHERIFF'S DEPARTMENT. (Sacramento County Sheriff's Department, Professional Standards Division No. 2020PSD-0661.) Chief Deputy Leeannedra Marchese recommended that Defendant ███████████ be suspended from his position as Deputy Sheriff for a period of 20 hours. On August 9, 2021, Defendant SCOTT JONES "deemed appropriate" the recommended discipline.

ECF No. 34-2 at 22–28.

Now, based on these allegations, Defendants seek to "amend/modify" the parties' previously-entered SPO. ECF No. 35. But Defendants' motion fails for several reasons, including: (1) Defendants cannot "amend/modify" the parties' SPO because Plaintiffs do not agree to any proposed amendment or modification; (2) the later-produced discipline documents are not covered by the earlier-entered stipulated protective order; (3) Defendants produced the discipline documents without a protective order, which are now "presumptively public" and will necessarily remain so; and/or (4) Defendants cannot satisfy the "good cause" standard for pretrial discovery and the "compelling reasons" standard for pleadings. Therefore,

5

Defendants' motion must be denied.

## II. DETAILS OF THE PARTIES' CONFERENCES

### A. PERSONNEL FILES

On April 18, 2023, Plaintiff Estate of Sherrano Stingley ("Estate") propounded requests for production, set one, to Defendant County of Sacramento ("County") requesting, *inter alia*:

REQUEST FOR PRODUCTION NO. 19:
All personnel files of the three officers present when Sherrano Stingley was encountered, placed into prone position, and handcuffed on December 6, 2022—including: educational records, employee performance appraisals, training records, employment applications, letters of recommendation, letters of commendation, discipline records, employee orientation records, records of promotion, and memoranda regarding any changes in assignment.

Merin Decl. Ex. 1 at 6; Declaration of Suli A. Mastorakos ["Mastorakos Decl."] at ¶ 3, Exhibit ["Ex."] A.

On June 5, 2023, the County responded to the Estate's request, *inter alia*:

RESPONSE TO REQUEST FOR PRODUCTION NO. 19:
Objection. Defendant objects on the grounds that the request is vague and ambiguous, specifically with respect to "personnel files," "three officers present," "educational records," "discipline records," "employee orientation records," and "memoranda regarding any changes in assignment." As phrased, it calls for speculation as to the type of information Plaintiff is seeking with respect to the aforementioned terms. Defendant further objects on the grounds that the request is overbroad as to scope and not proportional to the needs of the case. Defendant further objects on the grounds that the request is overbroad as to time. Defendant further objects to the extent that the request calls for materials considered privileged and confidential. Defendant further objects on the grounds that the request seeks documents that are subject to the right of privacy, including, but not limited to, the rights guaranteed under the United States and California constitutions. Subject to and without waiving said objections, in accordance with Defendant's understanding of the fair meaning of this request, Defendant responds as follows:
Defendant will comply with this request and produce, pursuant to a protective order, the requested personnel files of Deputies Freddy Martinez, Brittany Linde, and Rachell Villegas. As to any portions of the personnel files that contain confidential and/or private information, Defendant will produce a detailed privilege log.

Merin Decl. Ex. 2 at 12–13.

On July 1, 2023, Defendants requested, and Plaintiffs agreed to, a stipulated protective order ("SPO") covering the three officers' personnel files. Merin Decl. Ex. 3 at 7. Thereafter, the parties negotiated and crafted an SPO which specifically identified the protected personnel files by Bates numbers. Merin Decl. Ex. 3 at 1–7.

6

On August 14, 2023, the parties filed their SPO, which specifically identified the protected documents as follows: (1) "Personnel Files of Freddy Martinez (Bates DEF 01667 – DEF 01748)"; (2) "Personnel Files of Rachell Villegas (Bates DEF 01749 – DEF 01792)"; and (3) "Personnel Files of Brittany Linde (Bates DEF 01577 – DEF 01666)." ECF No. 18 at 3.

On August 17, 2023, this Court approved and entered the parties' SPO. ECF No. 19.

On September 6, 2023, Defendants produced the protected personnel files, including: DEF 01667– DEF 01748, DEF 01749–DEF 01792, and DEF 01577–DEF 01666. Merin Decl. Ex. 4; Mastorakos Decl. at ¶ 7.

## B.    DISCIPLINE DOCUMENTS

On April 18, 2023, the Estate requested the County to produce, *inter alia*:

REQUEST FOR PRODUCTION NO. 26:
All instances of discipline against the three officers present when Sherrano Stingley was encountered, placed into prone position, and handcuffed on December 6, 2022—including: formal and informal complaints, interviews conducted, statements received, correspondence sent and received, reports and memos prepared.

Merin Decl. Ex. 1 at 7; Mastorakos Decl. at ¶ 3.

On June 5, 2023, the County responded to the Estate's request, *inter alia*:

RESPONSE TO REQUEST FOR PRODUCTION NO. 26:
Objection. Defendant objects on the grounds that the request is vague and ambiguous, specifically with respect to "all complaints," "three officers present," "formal and informal complaints." As phrased, it calls for speculation as to the type of information Plaintiff is seeking with respect to the aforementioned terms. Defendant further objects on the grounds that the request is not reasonably particularized to a category of documents relevant to the subject matter of this lawsuit and not proportional to the needs of the case. Defendant further objects on the grounds that the request is overbroad as to scope. Defendant further objects on the grounds that the request is overbroad as to time. The defects in this request preclude Defendant from responding.

Merin Decl. Ex. 2 at 16.

On July 14, 2023, Defendants agreed to "produce responsive documents…" Merin Decl. Ex. 5 at 11.

On October 6, 2023, Defendants produced the discipline documents, including DEF 01805–DEF 02510. Merin Decl. Ex. 6; Mastorakos Decl. at ¶ 8.

On October 23, 2023, Plaintiffs' counsel sent an email to Defendants' counsel requesting consent

7

to file a First Amended Complaint ("1AC") which included allegations derived from the discipline documents produced by Defendants on October 6, 2023. Merin Decl. Ex. 7 at 3–4; Mastorakos Decl. at ¶ 9, Ex. B.

On November 9, 2023, the parties met and conferred by telephone to discuss, *inter alia*, the proposed 1AC. Merin Decl. Ex. 7 at 1–3; Mastorakos Decl. at ¶ 10.

On November 10, 2023, Defendants' counsel sent an email to Plaintiffs' counsel declining consent to file the 1AC. Merin Decl. Ex. 7 at 3; Mastorakos Decl. at ¶ 11, Ex. C.

On November 15, 2023, Plaintiffs' counsel sent an email to Defendants' counsel stating that Plaintiffs would file a motion to amend. Merin Decl. Ex. 7 at 1–2; Mastorakos Decl. at ¶ 12, Ex. D.

Later, on November 15, 2023, Plaintiffs filed a motion for leave to file amended pleading. ECF No. 34.

On November 17, 2023, Defendants' filed the instant motion to amend/modify protective order. ECF No. 35.

## III.    PARTIES' CONTENTIONS

**A.    DEFENDANTS' POSITION**

### 1.    The Discipline Records Are Subject To The Protective Order (ECF No. 19)

Defendants respectfully request that the Court issue an order finding that the discipline records are subject to the parties' Protective Order on file.  It is undisputed the Protective Order is not a blanket Protective Order, but specifically covers ***personnel files***, which the discipline records of deputies Linde and Martinez plainly are. (For context, *see* Cal. Penal Code § 832.8(a)(4) [defining "[p]ersonnel records" to include "records relating to…discipline."]) As discipline records were identified by Defendants in the course of discovery, Defendants produced them to Plaintiffs under a confidential designation given their classification as "personnel files."  (Mastorakos Decl. at ¶ 8.)

The purpose and intent of the Protective Order is to limit the use of ***personnel files*** to this lawsuit. That is, to prevent the disclosure of such information to any person outside of this lawsuit.  Clearly, by including information from personnel files in the proposed FAC, that intent is defeated as anyone can access Plaintiffs' FAC and use the information however they wish, including in other matters/lawsuits. Plaintiffs have violated the Protective Order by including the information from the discipline records in

8

their proposed FAC that is the subject of Plaintiffs' currently pending Motion to Amend Complaint, ECF No. 34. (*See* ECF No. 34-2 at ¶ 2, Exhibit A [Proposed FAC] at ¶¶ 180(a), (b), (d), and (g).) It is Plaintiffs – not Defendants – who have made the information from the discipline records public. Defendants produced the documents under a confidential designation, evidencing their belief and intent that the documents were subject to the Protective Order on file. Defendants would not have designated the documents as confidential had they believed that they were not covered by the Protective Order. (Mastorakos Decl. at ¶ 15.)

### 2.    Good Cause Exists To Amend/Modify The Protective Order

In the alternative, should the Court conclude that the existing Protective Order does not cover the discipline records at issue, Defendants request that the Court amend/modify the Protective order to include the records. Defendants submit good cause exists to amend/modify the Protective Order to shield the subject discipline records of deputies Linde and Martinez from public disclosure.

"Rule 26(c) confers broad discretion on the trial court to decide when a protective order is appropriate and what degree of protection is required." *Seattle Times Co. v. Rhinehart*, 467 U.S. 20, 36 (1984). Rule 26 specifically permits a court to "limit[] the scope of disclosure or discovery to certain matters." *See* Fed. R. Civ. P. 26(c)(1)(D). Further, Rule 26(c) provides that "[u]pon motion by a party or by a person from whom discovery is sought . . . and for good cause shown, the court in which the action is pending . . . may make any order which justice requires to protect a party or person from annoyance, embarrassment, oppression, or undue burden or expense." *Phillips ex rel. Ests. of Byrd v. Gen. Motors Corp.*, 307 F.3d 1206, 1210-11 (9th Cir. 2002) (summarizing Fed. R. Civ. P. 26(c)(1) and holding "the law…gives district courts broad latitude to grant protective orders"; *see also James v. Hayward Police Dep't*, No. 13-cv-01092-SI, 2017 WL 2437346, at *1 (N.D. Cal. Feb. 27, 2017). (ordering production of various officer personnel records under protective order); *Shiflett by and through Davenport v. City of San Leandro*, No. 21-cv-7802-LB, 2023 WL 4551077, at *2 (N.D. Cal. July 13, 2023) (ordering production of various officer personnel records under protective order).

Federal courts generally recognize a right of confidentiality that can be raised in response to discovery requests. *Johnson by Johnson v. Thompson*, 971 F2d 1487, 1497 (10th Cir. 1992); *DeMasi v. Weiss*, 669 F2d 114, 119-20 (3rd Cir. 1982). The County has the burden of showing there is a need to

9

**JOINT STATEMENT RE: DISCOVERY DISAGREEMENT (ECF No. 35)**
*Estate of Stingley v. County of Sacramento*, United States District Court, Eastern District of California, Case No. 2:23-cv-00255-TLN-AC

maintain the documents as subject to the Protective Order.  *See Welsh v. City and County of San Francisco*, 887 F. Supp. 1293, 1297 (N.D. Cal. 1995) ("The moving party must present a factual showing of a particular and specific need for the protective order.")

As identified above, the discipline records pertain to highly confidential, immaterial, scurrilous, and inflammatory matters that do not involve facts bearing sufficient resemblance to the fact pattern at issue here to be pertinent, nor show an essential or important relationship between the two bearing on the subject matter of the litigation.  Specifically, in summary, the subject discipline records pertain to unrelated discipline concerning **(1)** the contacting of another person over a romantic relationship and affair (*see* ECF No. 34-2 at ¶ 2, Exhibit A [Proposed FAC] at ¶ 180(a)); **(2)** the alleged failure to complete taser training (*Id.* at ¶ 180(b)); and **(3)** the use of computer facilities to conduct personal business while on duty. (*Id.* at ¶¶ 180(d) and (g).)  Clearly, making such information public serves no purpose but to publicly humiliate and disparage all involved.  Such humiliating and disparaging information, by being made public, will necessarily result in harm to the deputies' reputation and will likely also negatively impact their careers, especially if they decide to seek alternative positions of employment. The discipline information, by being made public, would cast a shadow on the deputies their entire lives.  Thus, contrary to Plaintiffs' contention, good cause exists to shield the information from public disclosure.

Second, any purported public interest in disclosure of such information is outweighed by the above-mentioned private interests in shielding the information from public disclosure *See In re Roman Catholic Archbishop*, 661 F.3d 417, 424, n.5  (9th Cir. 2011).  The information does not advance any of Plaintiffs' claims asserted in this case.  There is no causal connection, nor can there be, between the information contained in the subject discipline records and any constitutional injury alleged by Plaintiffs here.  In other words, these instances of unrelated discipline cannot, as a matter of fact and law, be the moving force behind any alleged constitutional injury alleged by Plaintiffs.  Further, contrary to Plaintiffs' contention, none of the subject information includes a finding of a constitutional violation of any kind.

Shielding the discipline records under a protective order will, at a minimum, ensure that all individuals involved are protected from "annoyance, embarrassment, oppression, or undue burden or expense." *Phillips ex rel. Ests. of Byrd*, 307 F.3d at 1210-11 (9th Cir. 2002) (summarizing Fed. R. Civ. P. 26(c)(1).)  Plaintiffs have the full ability to use the records in this litigation as they deem fit.  That Plaintiffs

filed the information contained in the discipline records with the Court – despite the Protective Order and the records' confidential designation – further necessitates that it be protected. Indeed, Plaintiffs' counsel are attempting to assert these same allegations in a proposed First Amended Complaint in another case involving the deployment of a police canine, *Bencomo v. County of Sacramento, et al.*, Case No. 2:23-cv-00440-DAD-JDP. (*See* Mastorakos Decl. at ¶ 15.) If the information is not protected, there is nothing to prevent Plaintiffs' counsel from using it in their other current and future cases involving the County of Sacramento and its Sheriff's Department.

Plaintiffs contend that the subject discipline information could be subject to redaction, but that ship sailed once Plaintiffs decided to make the information public. Plaintiffs' counsel did not make any efforts to redact/omit any of the information at issue prior to making it public. Contrary to Plaintiffs' contention, as evident by the filing of Plaintiffs' proposed FAC, none of the subject information has been redacted by Defendants.

Accordingly, for the aforementioned reasons, to the extent the Court concludes that the Protective Order, as currently drafted, does not apply to the discipline records at issue, Defendants respectfully request that the Protective Order be amended/modified to include those records as identified above. Specifically, discipline records of deputies Brittany Linde (DEF 01805–01919, and 02339–02510) and Freddy Martinez (DEF 01920–02338) Related, Defendants also respectfully request that the Court remove all related information from the CM/ECF Court docketing system contained in paragraphs 180(a), (b), (d), and (g) of Plaintiffs' proposed FAC (*see* ECF No. 34-2 at ¶ 2, Exhibit A [Proposed FAC] at ¶¶ 180(a), (b), (d), and (g)), as well as Plaintiffs' references to the allegations herein. The Court has the authority to strike an improper filing under its inherent power to control the docket. *See, e.g., Ready Transp., Inc. v. AAR Mfg., Inc.*, 627 F.3d 402, 404 (9th Cir. 2010); *Metzger v. Hussman*, 682 F. Supp. 1109, 1110-11 (D. Nev. 1988). "Courts may use their inherent power to strike from the record publicly-filed information that should have been filed under seal pursuant to the terms of a protective order." *See, e.g., SolarCity Corp. v. Doria*, Case No.: 16-cv-3085-JAH (RBB), 2018 WL 4204024, at *10-11 (S.D. Cal. Sept. 4, 2018).

### 3. Plaintiffs' Request for Expenses in Opposing Defendants' Motion Should Be Denied

Plaintiffs' counsel seeks sanctions against the County for expenses incurred in opposing Defendants' Motion. Plaintiffs' request should be denied because Defendants' position is substantially

11

justified.

Federal Rules of Civil Procedure, Rule 37(a)(5)(A) provides, in pertinent part, "the court must not order…payment [of the movant's reasonable expenses incurred in making the motion, including attorney's fees] if: (ii) the opposing party's nondisclosure, response, or objection was substantially justified; or (iii) other circumstances make an award of expenses unjust." Fed. R. Civ. P. 37(a)(5)(A). "The test for substantial justification is one of reasonableness." *United States v. First Nat'l Bank of Circle*, 732 F.2d 1444, 1447 (9th Cir. 1984). "A request for discovery is 'substantially justified' under Rule 37 if reasonable people could differ on the matter in dispute." *United States EEOC v. Caesars Entm't, Inc.*, 237 F.R.D. 428, 435 (D. Nev. 2006) (citing *Reygo Pacific Corp. v. Johnston Pump Co.*, 680 F.2d 647, 649 (9th Cir. 1982)).

Defendants' position with respect to the subject discipline information at issue is substantially justified. This is a good-faith dispute where the parties disagree over (1) whether the discipline records are covered under the Protective Order, and (2) if not covered by the Protective Order, whether there is good cause to amend/modify the Protective Order to include the subject discipline records. Defendants produced the subject discipline records to Plaintiffs under a confidential designation, evidencing their belief and intent that the documents be subject to the Protective Order covering **personnel files**, which the discipline records indisputably are. Thereafter, Plaintiffs made public information contained in the discipline records produced by Defendants under a confidential designation. As a result, Defendants had no other option but to file the instant motion, which is supported by good cause as argued above.

Accordingly, Defendants respectfully request that the Court deny Plaintiffs' request for expenses incurred in opposing Defendants' motion.

**B.    PLAINTIFFS' POSITION**

**1.    Defendants Cannot Unilaterally "Amend/Modify" A Stipulated Protective Order**

Defendants' instant motion is characterized as a motion to "amend/modify" the parties' earlier-entered stipulated protective order, ECF No. 18, 19. *See* ECF No. 35. But Defendants cannot unilaterally amend/modify the parties' prior stipulation without Plaintiffs' agreement. Otherwise, it would no longer be a "stipulation." *See* Black's Law Dictionary 1427 (7th Ed. 1999) ("Stipulation" defined as "a voluntary agreement between opposing parties concerning some relevant point"). And, in this case, Plaintiffs do <u>not</u> agree to Defendants' proposed amendment or modification.

12

JOINT STATEMENT RE: DISCOVERY DISAGEEMENT (ECF No. 35)
*Estate of Stingley v. County of Sacramento*, United States District Court, Eastern District of California, Case No. 2:23-cv-00255-TLN-AC

**2.**      **Later-Produced Documents Are Not Covered By Earlier-Entered Protective Order**

Defendants argue that the discipline documents produced by the County on October 6, 2023, *see* Merin Decl. Ex. 6, are covered by the protective order entered by the Court on August 17, 2023, *see* ECF No. 18, 19. Of course, that is not true and Defendants know it. As Defendants' counsel conceded, prior to filing this motion: "[It is] correct that the discipline records are not identified by Bates label[s] in the protective order currently on file." Merin Decl. Ex. 7 at 1. Indeed, Local Rules require, *inter alia*, that "[e]very proposed protective order shall contain … [a] description of the types of information eligible for protection under the order, with the description provided in general terms sufficient to reveal the nature of the information…" E.D. Cal. L.R. 141.1(c).[4] Based on this requirement, the parties mutually agreed ("stipulated") to insert the Bates numbers of the protected documents into the SPO. *See* Merin Decl. Ex. 3 at 5–6. A protective order is "akin to a contract for purposes of resolving a dispute over the interpretation of the order's provisions[.]" *Beebe v. Nutribullet L.L.C.*, 2019 U.S. Dist. LEXIS 164889, at *27 (C.D. Cal. July 3, 2019) (internal citation omitted). Accordingly, Defendants' motion fails where there is no ambiguity about which documents are covered by the SPO, and the discipline documents are expressly <u>not</u> covered. *Compare* ECF No. 18 at 3 *with* Merin Decl. Ex. 3 at 5–6; *see also*, *e.g.*, *Montgomery v. Etreppid Techs.*, 2023 U.S. Dist. LEXIS 137560, at *6 n.10 (D. Nev. Aug. 4, 2023) ("Because the plain language of the protective order is clear, the Court denies [the] request for an order stating that [non-party] is not subject to the protective order…"); *Harmston v. City & County of San Francisco*, 2007 U.S. Dist. LEXIS 87144, at *20 (N.D. Cal. Nov. 6, 2007) ("interpretation is in no way supported by the plain language of the protective order"). Defendants' attempt to transform the parties' carefully-negotiated SPO into a blanket order which permits their retroactive designation of documents as protected must be rejected.

Defendants also argue that the Court should disregard the plain language of the parties' SPO because California Penal Code § 832.8(a)(4)'s definition of "[p]ersonnel records" includes "records

---

[4] The Local Rule requirements are grounded in authority recognizing that "blanket" protective orders are "overinclusive" and "disfavored." *See*, *e.g.*, *Foltz v. State Farm Mut. Auto. Ins. Co.*, 331 F.3d 1122, 1133 (9th Cir. 2003); *Kaur v. City of Lodi*, 2015 U.S. Dist. LEXIS 2739, at *19 (E.D. Cal. Jan. 9, 2015); *see also Rodrique v. County of Sacramento*, No. 2:17-cv-02698-WBS-EFB, ECF No. 70 at 10 (E.D. Cal. Sep. 12, 2019) ("[M]aybe the lesson we all learn from this is that these [blanket] types of protective orders just simply shouldn't be approved and the parties should have to litigate the ['good cause'] question.").

relating to … discipline." But the parties' SPO does <u>not</u> cover "personnel records" as defined by § 832.8(a)(4). *See* ECF No. 18 at 3. Rather, the parties' SPO expressly covers those "personnel records" identified by specific Bates numbers. *Id.*; *see also* Merin Decl. Ex. 3 at 5–6 ("Attached is a further draft of the SPO with the Bates numbers inserted for the respective personnel files."). Further, Plaintiffs would never agree to a SPO which covers "personnel records" as defined by § 832.8(a)(4) on a blanket basis, where state law "discovery procedures do not apply in federal court…" *See, e.g., Kaur v. City of Lodi*, 2015 U.S. Dist. LEXIS 2739, at *14–15 (E.D. Cal. Jan. 9, 2015) ("No good reason exists why state actors in a federal question case should be accorded preferential treatment in asserting privileges, merely because the California legislature has chosen to enact a statute making it more difficult for plaintiffs to obtain police personnel files in state cases." (citation omitted)).

Defendants argue finally that "Defendants produced the documents under a ['confidential['] designation, evidencing their belief and intent that the documents were subject to the [SPO] on file." But "[t]he label 'confidential … ' does not confer talismanic protection allowing the sealing of any documents to which a party affixes the label." *United States v. Rite Aid Corp.*, 2020 U.S. Dist. LEXIS 151374, at *4–5 (E.D. Cal. Aug. 19, 2020). Defendants' alleged ignorance of how the parties' SPO operated, including their alleged unreasonable belief that unilaterally labeling a document "Confidential" automatically conferred protection, is inconsistent with Rule 26(c) and the express terms of the SPO—terms to which Defendants agreed to be bound. *See* ECF No. 18. Accordingly, Defendants cannot unilaterally change the terms of the parties' SPO based on their erroneous understanding of its terms; rather, the SPO's plain language controls.

### 3. Defendants' Production Of The Discipline Documents As Pretrial Discovery Without A Protective Order Renders The Documents "Presumptively Public," And The Documents Will Necessarily Remain Public

"As a general rule, the public is permitted access to litigation documents and information produced during discovery." *In re Roman Catholic Archbishop*, 661 F.3d 417, 424 (9th Cir. 2011) (internal citation omitted). Thus, "[i]t is well-established that the fruits of pretrial discovery are, in the absence of a court order to the contrary, presumptively public[.]" *Id.* (citation omitted). In this case, Defendants produced the discipline documents, without requesting, seeking, or obtaining a protective order. *See* Merin Decl. Ex. 5;

14

*id.* Ex. 6. Thus, the documents are "presumptively public." *See Archbishop*, 661 F.3d at 424. "Once it is public, [information] necessarily remains public." *Gambale v. Deutsche Bank AG*, 377 F.3d 133, 144 n.11 (2d Cir. 2004).

If Defendants wanted a protective order covering the discipline documents, then it was their burden timely to seek and obtain one. *See, e.g.*, *Lenard v. Sherwin-Williams Co.*, 2015 U.S. Dist. LEXIS 23582, at *11 (E.D. Cal. Feb. 25, 2015) ("It is the responsibility of the party resisting discovery, not the party seeking discovery, to seek a protective order."); *Perry v. City of Pontiac*, 2011 U.S. Dist. LEXIS 105365, at *12 (E.D. Mich. Sep. 16, 2011) ("If the defendants believe that a protective order is necessary to protect the [withheld documents], it is up to them … to move the Court for the entry of a protective order if the parties cannot stipulate to one."); *see also United States v. IBM Corp.*, 79 F.R.D. 412, 414 (S.D.N.Y. 1978) ("[M]otions under Rule 26(c) must be served before the date set for production." (citation omitted)). But Defendants failed to do so. *See* Merin Decl. Ex. 5; *id.* Ex. 6.

### 4.   Defendants Cannot Satisfy The Standards For Protective And Sealing Orders

Even if the Court were willing to entertain Defendants' request for retroactive protective and sealing orders, nonetheless, Defendants could not satisfy the applicable standards.

Initially, Defendants' motion fails to distinguish between two different types of information which is apparently at issue here: (1) the *actual* discipline documents of Linde and Martinez, which Defendants produced without a protective order, Merin Decl. Ex. 6; and (2) the *summaries* of some of the discipline documents, which appear in public Court filings, ECF No. 34-2 at 22–28; *see also Garcia v. County of Sacramento*, No. 2:23-cv-00899-DAD-KJN, ECF No. 17 at 21–29 (E.D. Cal. Dec. 8, 2023); *Bencomo v. County of Sacramento*, No. 2:23-cv-00440-DAD-JDP, ECF No. 22-2 at 22–30 (E.D. Cal. Dec. 27, 2023). Confusingly, Defendants' motion appears to treat these different types of information as the same, without distinction—yet, they only reference the "good cause" standard in their argument. Thus, it is unclear whether Defendants seek a protective order over the discipline documents which have been produced, a sealing order over the summaries contained in documents which have been filed, or both. In an abundance of caution, Plaintiffs address both standards but note Defendants' failure to carry the burden under either standard.

15

### a.      There Is No "Good Cause" For A Protective Order

Generally, a three-step test applies to demonstrate "good cause" under Rule 26(c). *Archbishop*, 661 F.3d at 424–25. Defendants cannot—and have not attempted to—satisfy the test's requirements.

Step One (Particularized Harm): "The party opposing disclosure has the burden of proving 'good cause,' which requires a showing that specific prejudice or harm will result if the protective order is not granted." *Archbishop*, 661 F.3d at 424 (internal citation omitted). "The moving party must present a factual showing of a particular and specific need for the protective order." *Welsh v. City & County of San Francisco*, 887 F. Supp. 1293, 1297 (N.D. Cal. 1995). Generally, a document-by-document analysis is necessary to establish "good cause" for imposition of a protective order. *See, e.g.*, *Kaur v. City of Lodi*, 2015 U.S. Dist. LEXIS 2739, at *21–22 (E.D. Cal. Jan. 9, 2015); *Bangert v. County of Placer*, 2019 U.S. Dist. LEXIS 14287, at *12 (E.D. Cal. Jan. 25, 2019); *Estate of Neil v. County of Colusa*, 2020 U.S. Dist. LEXIS 168892, at *5 (E.D. Cal. Sep. 14, 2020).

Defendants argue that "the discipline records pertain to highly confidential, immaterial, scurrilous, and inflammatory matters that do not involve facts bearing sufficient resemblance to the fact pattern at issue here to be pertinent, nor show an essential or important relationship between the two bearing on the subject matter of the litigation."[5] But "[t]hese arguments are entirely non-specific" and "fail to state what information is contained in each category of information…" *Kaur*, 2015 U.S. Dist. LEXIS 2739, at *21–22. Substantively, "[Defendants] point to no specific harms that would result from public dissemination." *Id*. at *24. Defendants' "embarrassment, incrimination, or exposure to further litigation" is not sufficient. *See Macias v. Cleaver*, 2016 U.S. Dist. LEXIS 85529, at *12 (E.D. Cal. June 30, 2016) (citation omitted).

Significantly, as discussed above, the documents have already been produced without a protective

---

[5] While Defendants' argument is immaterial to the good cause analysis, it is also legally erroneous because, "when the same officer repeatedly violates the constitutional rights of a municipality's residents, and the municipality is on notice of these violations and fails to properly discipline the officer, by definition the municipality is deliberately indifferent to the likelihood that the officer will continue to commit constitutional violations in the future." *Sanchez v. County of Sacramento*, 2021 U.S. Dist. LEXIS 105549, at *13 (E.D. Cal. June 3, 2021) (internal citation & alterations omitted), *recon. denied*, 2022 U.S. Dist. LEXIS 52782, at *14–18 (E.D. Cal. Mar. 22, 2022). Further, even if the incidents did not involve the same officer named as a party-defendant in the case, nonetheless, "general evidence of departmental treatment of complaints" is also relevant for purposes of municipal and supervisory liability. *See, e.g.*, *Velazquez v. City of Long Beach*, 793 F.3d 1010, 1027 (9th Cir. 2015).

order, rendering them "presumptively public." *Archbishop*, 661 F.3d at 424. "Once it is public, it necessarily remains public." *Gambale*, 377 F.3d at 144 n.11; *see, e.g.*, *I.F. v. City of Vallejo*, 2021 U.S. Dist. LEXIS 28746, at *8 n.4 & *65–70 (E.D. Cal. Feb. 16, 2021); *Ramirez v. Trans Union, LLC*, 2014 U.S. Dist. LEXIS 58752, at *8–10 (N.D. Cal. Apr. 28, 2014); *Halcomb v. City of Sacramento*, 2015 U.S. Dist. LEXIS 80787, at *6 (E.D. Cal. June 19, 2015); *see also Guerrero v. Wharton*, 2018 U.S. Dist. LEXIS 46319, at *3 (D. Nev. Mar. 21, 2018); *Perez v. City of Fresno*, 482 F. Supp. 3d 1037, 1044 (E.D. Cal. 2020) (denying protection where "much of the information … defendants seek to keep confidential is already available to the public."). In short, "[t]he genie is out of the bottle" and there is no "means to put the genie back." *Gambale*, 377 F.3d at 144.

Step Two (Private vs. Public Interests): "[I]f the court concludes that [] harm will result from disclosure of the discovery documents, then it must proceed to balance the public and private interests to decide whether [] a protective order is necessary." *Archbishop*, 661 F.3d at 424 & n.5 (citation omitted). Defendants cannot demonstrate that any harm "outweigh[s] the public interest in access." *See Estate of Neil*, 2020 U.S. Dist. LEXIS 168892, at *7. Specifically, courts have recognized a lack of "good cause" to subject the types of documents at issue here to a protective order. *See, e.g.*, *Macias*, 2016 U.S. Dist. LEXIS 85529, at *3 (internal affairs investigation documents involving an officer-defendant); *Estate of Neil*, 2020 U.S. Dist. LEXIS 168892, at *6–7 (internal affairs investigation reports); *Bangert*, 2019 U.S. Dist. LEXIS 14287 ("incident report" concerning use-of-force). This is particularly true in context of an officer-involved death action, where the public interest in learning about untrained, undisciplined officers is substantial. *See, e.g.*, *Perez*, 482 F. Supp. 3d at 1039; *Wiggins v. Burge*, 173 F.R.D. 226, 229–30 (N.D. Ill. 1997). "These documents were created as a result of official action by the [Sacramento County Sheriff's Department] to investigate the official conduct of one of its officers. None of the Internal Investigation Documents involve personal actions unrelated to official functions, decisions and duties of the officers." *Macias v*, 2016 U.S. Dist. LEXIS 85529, at *13. "The public has a strong interest in transparency into the internal review process itself, including the ultimate findings, in order to assess whether existing procedures for overseeing law enforcement—in this case, [peace] officers—are fair and adequate." *Reynolds v. Huddleston*, 2023 U.S. Dist. LEXIS 123058, at *7 (C.D. Cal. July 3, 2023); *see also Greer v. County of San Diego*, 2023 U.S. Dist. LEXIS 118943, at *17-18 (S.D. Cal. July 11, 2023) ("Information

17

about the County's possible mistreatment of [persons] is inherently a matter of significant public interest: County residents not only support these operations with their taxpayer dollars but may be subject to such treatment [themselves]."). Thus, "[m]isconduct by individual officers, incompetent internal investigations, or questionable supervisory practices must be exposed if they exist." *Welsh*, 887 F. Supp. at 1302.

<u>Step Three (Redaction)</u>: "[E]ven when the factors in th[e] two-part test weigh in favor of protecting the discovery material (*i.e.*, where the court determines that disclosure of information may result in 'particularized harm,' and the private interest in protecting the discovery material outweighs the public interest in disclosure), a court must still consider whether redacting portions of the discovery material will nevertheless allow disclosure." *Archbishop*, 661 F.3d at 425. In this case, the records are *already* redacted, reflecting Defendants' understanding that the documents are—and should be—subject to public disclosure, except for the redacted information.

### b.    There Are No "Compelling Reasons" For A Sealing Order

A "compelling reasons" standard applies to allegations made in pleadings which are more than tangentially related to the underlying claims in the case. *See Ctr. for Auto Safety v. Chrysler Grp., LLC*, 809 F.3d 1092, 1099 (9th Cir. 2016). Specifically, "there is little doubt that the [m]otion to [a]mend is directly related to the underlying claims in this case." *See Macias*, 2016 U.S. Dist. LEXIS 85529, at *9; *Estate of Neil*, 2020 U.S. Dist. LEXIS 168892, at *4. But Defendants fail to acknowledge or analyze the "compelling reasons" standard applicable to Plaintiffs' allegations contained in the proposed First Amended Complaint. *See* ECF No. 34-2 at 22–28. Instead, Defendants seek the impossible: "Defendants respectfully request that the Court remove all related information from the CM/ECF Court docketing system contained in paragraphs 180(a), (b), (d), and (g) of Plaintiffs' proposed FAC." But that is not how it works. "Once the cat is out of the bag, the ball game is over." *See*, *e.g.*, *Gambale*, 377 F.3d at 144 n.11 (citation omitted); *Franklin v. City of Chicago*, 2020 U.S. Dist. LEXIS 11097, at *15–16 (N.D. Ill. Jan. 23, 2020) ("[T]he cat is already out of the bag. There is nothing especially scandalous about repeating material in the public domain.").

Substantively, Defendants cannot satisfy the higher-threshold "compelling reasons" standard for the same reasons they cannot satisfy the lower-threshold "good cause" standard—*i.e.*, there is no harm caused by disclosure; the public interests in disclosure outweigh the private interests in non-disclosure; and

18

the documents have already been redacted. *See supra*.

**5.      Plaintiffs Are Entitled To Fees In Opposition**

As demonstrated above, Defendants' argument is—and always was—entirely without merit. Plaintiffs explained to Defendants why that was so, prior to the filing of this motion. *See* Merin Decl. Ex. 7 at 1–2. But Defendants chose to pursue it anyway. Now, they must pay Plaintiffs' expenses for advancing an unjustified position and wasting this Court and Plaintiffs' counsels' time.

Rule 37(a)(5)(B) "governs the award of attorney's fees to the party successfully resisting the discovery motion…" *Kaur v. City of Lodi*, 2015 U.S. Dist. LEXIS 69161, at *2 n.1 (E.D. Cal. May 19, 2015). "If the motion is denied, the court … must, after giving an opportunity to be heard, require the movant, the attorney filing the motion, or both to pay the party … who opposed the motion its reasonable expenses incurred in opposing the motion, including attorney's fees. But the court must not order this payment if the motion was substantially justified or other circumstances make an award of expenses unjust." Fed. R. Civ. P. 37(a)(5)(B).

Accordingly, Plaintiffs are entitled to reasonable expenses incurred in opposing the instant motion. Thus, Plaintiffs seek $5,225 in expenses for time spent preparing the its portion of the opposition in the joint statement. Merin Decl. ¶¶ 11–13.

Defendants argue that Plaintiffs are not entitled to "sanctions." But Plaintiffs do not seek sanctions. Rather, Plaintiffs seek expenses, which "should ordinarily be awarded unless a court finds that the losing party acted justifiably in carrying his point to court." *See* Fed. R. Civ. P. 37(a), 1970 Amendment Advisory Committee Notes. Defendants' position is not justified, where it directly contradicts the plain language and terms of the parties' SPO, as explained above.

Dated: December 27, 2023

Respectfully Submitted,

PORTER SCOTT

*/s/ Suli A. Mastorakos*

By: _____
      Carl L. Fessenden
      Suli A. Mastorakos

      Attorneys for Defendants
      COUNTY OF SACRAMENTO,
      SACRAMENTO COUNTY SHERIFF'S
      DEPARTMENT, and SCOTT JONES

19

Dated: December 27, 2023

Respectfully Submitted,
LAW OFFICE OF MARK E. MERIN

*/s/ Mark E. Merin*
(as authorized on December 27, 2023)
By: _____
Mark E. Merin
Paul H. Masuhara

Attorneys for Plaintiffs
ESTATE OF SHERRANO STINGLEY,
DYMIN STINGLEY, S.S.,
and ANNETTE HILBURN

20