UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| ESTATE OF SHERRANO STINGLEY, et al., <br><br> Plaintiffs, <br><br> v. <br><br> COUNTY OF SACRAMENTO, et al., <br><br> Defendants. | No. 2:23-cv-00255-TLN-AC <br><br> **ORDER** |

This matter is before the Court on Defendants County of Sacramento, Sacramento County Sheriff's Department, Scott Jones, Freddy Martinez, Rachell Villegas, Brittany Linde, and Brandon Swaim's (collectively, "Defendants") Motion to Dismiss and Motion to Strike. (ECF No. 48.) The Estate of Sherrano Stingley, Dymin Stingley, S.S., and Annette Hilburn (collectively, "Plaintiffs") filed an opposition. (ECF No. 55.) Defendants filed a reply. (ECF No. 59.) For the reasons set forth below, the Court GRANTS in part and DENIES in part Defendants' motion.

///
///
///
///

1

**I.      FACTUAL AND PROCEDURAL BACKGROUND**

This action arises from the arrest and subsequent death of Sherrano Stingley. (ECF No. 47 at 4–16.) The decedent was a 48-year-old Black man and disabled person who struggled with mental health issues, including diagnosed mental health conditions for which he was prescribed medications. (*Id.* at 4.) The decedent's mental disability sometimes caused him to become paranoid, easily confused, defensive, agitated, stressed, fearful, and anxious. (*Id.* at 5.) The decedent was known to act irrationally when exhibiting symptoms of his mental disability. (*Id.*)

On December 6, 2022, around 5:15 a.m., the decedent was experiencing symptoms of his mental disability, including confusion and paranoia. (*Id.*) The decedent was wandering the neighborhood near his daughter's residence. (*Id.*) He attempted to enter a vehicle that he mistakenly believed to belong to his daughter and attempted to enter the front door of a residence near his daughter's residence. (*Id.*) The decedent's daughter had previously told him he could sit in her car when he had mental health episodes. (*Id.*)

Around 5:30 a.m., a person inside the residence called the police. (*Id.*) Around 5:45 a.m., three Sacramento County Sheriff's deputies arrived at the scene. (*Id.*) The deputies encountered the decedent, and a physical struggled ensued. (*Id.*) Ultimately, the three deputies restrained the decedent on the ground and applied pressure to his back and neck. (*Id.* at 8–12.) The decedent became unconscious and stopped breathing. (*Id.* at 12.) Additional officers arrived on the scene and called the fire department. (*Id.* at 13–14.) On December 16, 2022, the decedent died from his injuries. (*Id.* at 16.)

Plaintiffs initiated this action on February 9, 2023. (ECF No. 1.) Plaintiffs filed the operative First Amended Complaint ("FAC") on April 10, 2024, alleging the following claims: (1) a 42 U.S.C. § 1983 ("§ 1983") claim for excessive force in violation of the Fourth Amendment; (2) a § 1983 claim for denial of medical care in violation of the Fourth Amendment; (3) violation of § 504 of the Rehabilitation Act; (4) violation of Title II of the Americans with Disabilities Act ("ADA"); (5) a § 1983 claim for interference with familial association in violation of the Fourteenth Amendment; (6) a § 1983 claim for interference with familial association in violation of the First Amendment; (7) excessive force in violation of Article I, § 13

of the California Constitution; (8) denial of medical care in violation of Article I, § 13 of the California Constitution; (9) violation of the Bane Act, California Civil Code § 52.1; (10) assault/battery; (11) intentional infliction of emotional distress; (12) negligence; and (13) wrongful death.  (ECF No. 47 at 37–53.)  Plaintiffs sue the following Defendants: (1) the deputies who were present on the scene — Freddy Martinez, Rachell Villegas, Brittany Linde, and Brandon Swaim; (2) Sheriff Scott Jones; (3) the Sacramento County Sheriff's Department; and (4) Sacramento County.  (*Id.* at 3–4.)  Defendants filed the instant motion to dismiss and strike on May 1, 2024.  (ECF No. 48.)

## II.   STANDARD OF LAW

A motion to dismiss for failure to state a claim upon which relief can be granted under Federal Rule of Civil Procedure ("Rule") 12(b)(6) tests the legal sufficiency of a complaint.  *Navarro v. Block*, 250 F.3d 729, 732 (9th Cir. 2001).  Rule 8(a) requires that a pleading contain "a short and plain statement of the claim showing that the pleader is entitled to relief."  Fed. R. Civ. P. 8(a); *see also Ashcroft v. Iqbal*, 556 U.S. 662, 677–78 (2009).  Under notice pleading in federal court, the complaint must "give the defendant fair notice of what the . . . claim is and the grounds upon which it rests."  *Bell Atlantic v. Twombly*, 550 U.S. 544, 555 (2007) (internal citation and quotations omitted).  "This simplified notice pleading standard relies on liberal discovery rules and summary judgment motions to define disputed facts and issues and to dispose of unmeritorious claims."  *Swierkiewicz v. Sorema N.A.*, 534 U.S. 506, 512 (2002).

On a motion to dismiss, the factual allegations of the complaint must be accepted as true.  *Cruz v. Beto*, 405 U.S. 319, 322 (1972).  A court must give the plaintiff the benefit of every reasonable inference to be drawn from the "well-pleaded" allegations of the complaint.  *Retail Clerks Int'l Ass'n v. Schermerhorn*, 373 U.S. 746, 753 n.6 (1963).  A plaintiff need not allege "'specific facts' beyond those necessary to state his claim and the grounds showing entitlement to relief."  *Twombly*, 550 U.S. at 570 (internal citation omitted).

Nevertheless, a court "need not assume the truth of legal conclusions cast in the form of factual allegations."  *U.S. ex rel. Chunie v. Ringrose*, 788 F.2d 638, 643 n.2 (9th Cir. 1986).  While Rule 8(a) does not require detailed factual allegations, "it demands more than an

3

unadorned, the defendant-unlawfully-harmed-me accusation." *Iqbal*, 556 U.S. at 678.  A pleading is insufficient if it offers mere "labels and conclusions" or "a formulaic recitation of the elements of a cause of action." *Twombly*, 550 U.S. at 555; *see also Iqbal*, 556 U.S. at 678 ("Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice.").  Thus, "[c]onclusory allegations of law and unwarranted inferences are insufficient to defeat a motion to dismiss" for failure to state a claim.  *Adams v. Johnson*, 355 F.3d 1179, 1183 (9th Cir. 2004) (citations omitted).  Moreover, it is inappropriate to assume the plaintiff "can prove facts that it has not alleged or that the defendants have violated the . . . laws in ways that have not been alleged." *Associated Gen. Contractors of Cal., Inc. v. Cal. State Council of Carpenters*, 459 U.S. 519, 526 (1983).

Ultimately, a court may not dismiss a complaint in which the plaintiff has alleged "enough facts to state a claim to relief that is plausible on its face." *Twombly*, 550 U.S. at 570.  "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 680.  While the plausibility requirement is not akin to a probability requirement, it demands more than "a sheer possibility that a defendant has acted unlawfully." *Id.* at 678.  This plausibility inquiry is "a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Id.* at 679.  Thus, only where a plaintiff fails to "nudge [his or her] claims . . . across the line from conceivable to plausible[,]" is the complaint properly dismissed. *Id.* at 680 (internal quotations omitted).

If a complaint fails to state a plausible claim, "'[a] district court should grant leave to amend even if no request to amend the pleading was made, unless it determines that the pleading could not possibly be cured by the allegation of other facts.'" *Lopez v. Smith*, 203 F.3d 1122, 1130 (9th Cir. 2000) (en banc) (quoting *Doe v. United States*, 58 F.3d 494, 497 (9th Cir. 1995)); *see also Gardner v. Martino*, 563 F.3d 981, 990 (9th Cir. 2009) (finding no abuse of discretion in denying leave to amend when amendment would be futile).  Although a district court should freely give leave to amend when justice so requires under Rule 15(a)(2), "the court's discretion to deny such leave is 'particularly broad' where the plaintiff has previously amended its complaint."

4

*Ecological Rights Found. v. Pac. Gas & Elec. Co.*, 713 F.3d 502, 520 (9th Cir. 2013) (quoting *Miller v. Yokohama Tire Corp.*, 358 F.3d 616, 622 (9th Cir. 2004)).

### III.     ANALYSIS

Defendants move to dismiss for the following reasons: (1) Plaintiffs fail to allege a plausible claim against Sheriff Jones; (2) Plaintiffs fail to allege a plausible *Monell* claim based on policy or custom; (3) Plaintiffs fail to allege plausible ADA and Rehabilitation Act claims; and (4) Claims Seven and Eight fail because Article I, § 13 of the California Constitution does not confer a private right of action.  (ECF No. 48.)  Defendants also move to strike multiple paragraphs from the FAC.  (*Id.*)  The Court will address Defendants' arguments in turn.

####       A.     Claims Against Sheriff Jones

Defendants argue Plaintiffs fail to allege facts to support a claim against Sheriff Jones in his individual capacity based on supervisory liability.  (ECF No. 48 at 16–17.)  Defendants further argue Plaintiffs' allegations as to Sheriff Jones are conclusory and redundant to claims against the County.  (*Id.* at 18.)  In opposition, Plaintiffs contend there are sufficient allegations against Sheriff Jones to state a supervisory liability claim.  (ECF No. 55 at 15–18.)

In § 1983 claims against supervisors in their individual capacity, "[a] supervisor may be liable if there exists either (1) his or her personal involvement in the constitutional deprivation, or (2) a sufficient causal connection between the supervisor's wrongful conduct and the constitutional violation."  *Hansen v. Black*, 885 F.2d 642, 646 (9th Cir. 1989).  The supervisor's participation could include his "own culpable action or inaction in the training, supervision, or control of his subordinates, . . . his acquiescence in the constitutional deprivations of which the complaint is made," or "conduct that showed a reckless or callous indifference to the rights of others."  *Larez v. City of L.A.*, 946 F.2d 630, 646 (9th Cir. 1991) (internal alterations omitted).  "The causal connection is established 'by setting in motion a series of acts by others or by knowingly refus[ing] to terminate a series of acts by others, which [the supervisor] knew or reasonably should have known would cause others to inflict a constitutional injury.'"  *Tennyson v. Cnty. of Sacramento*, No. 2:19-CV-00429-KJM-EFB, 2020 WL 4059568, at *3 (E.D. Cal. Jul. 20, 2020) (quoting *Rodriguez v. Cnty. of L.A.*, 891 F.3d 776, 798 (9th Cir. 2018)).

Plaintiffs cite over twenty paragraphs from the FAC that purportedly establish Sheriff Jones is liable as a supervisor. (ECF No. 55 at 16 (citing ECF No. 47 at ¶¶ 166–189).) Paragraphs 166 through 171 allege Sheriff Jones required Sacramento County Sheriff's Department personnel to create a press release and video about the incident that included information that was false, incomplete, and irrelevant. (ECF No. 47 at 166–171.) The remainder of the cited allegations describe Sheriff Jones's role in maintaining inadequate policies and customs that are the moving forces in the constitutional violation. (*Id.* at ¶¶ 172–189.) The Court finds these allegations are sufficient to survive Defendants' motion to dismiss. Taking all reasonable inferences in Plaintiffs' favor, in addition to the multiple allegations regarding Sheriff Jones's role in maintaining unconstitutional policies and customs, Sheriff Jones's alleged involvement with the false press release and video after the incident could be seen as ratification of the deputies' use of excessive force. *See Watkins v. City of Oakland*, 145 F.3d 1087, 1093 (9th Cir. 1998) (finding a police chief could be liable as a supervisor "where the plaintiff shows that the police chief was responsible for the 'constitutional deprivations because he condoned, ratified, and encouraged the excessive use of force'"); *see also Est. of Johnson v. Cnty. of Sacramento*, No. 2:23-CV-01304-KJM-JDP, 2024 WL 279137, at *4 (E.D. Cal. Jan. 25, 2024) ("While the complaint does not explicitly include the phrase 'supervisory liability,' plaintiffs have alleged Sheriff Cooper has been employed in a supervisory and policymaking capacity and has maintained the inadequate policies and customs that are the moving forces behind the alleged constitutional violation here.").

Accordingly, the Court DENIES Defendants' motion to dismiss claims against Sheriff Jones.

        B.    *Monell* Claims

It is well-established that municipalities cannot be held liable under § 1983 for unconstitutional torts of their employees based solely on a *respondeat superior* theory. *Monell v. Dep't of Soc. Servs. of City of N.Y.*, 436 U.S. 658, 693–94 (1978). Pursuant to *Monell*, a municipality is only liable under § 1983 when its own illegal acts are a moving force in the constitutional violation. *Id.* A plaintiff may assert *Monell* liability based on: (1) an official

policy; (2) a "longstanding practice or custom which constitutes the standard operating procedure of the local government entity"; (3) the act of an "official whose acts fairly represent official policy such that the challenged action constituted official policy"; or (4) where "an official with final policy-making authority 'delegated that authority to, or ratified the decision of, a subordinate.'" *Price v. Sery*, 513 F.3d 962, 966 (9th Cir. 2008) (citations omitted).

Defendants assert Plaintiffs fail to allege facts to support any theory of liability for their *Monell* claims.[1]  (ECF No. 48 at 19–23.)  In opposition, Plaintiffs argue they have alleged multiple unconstitutional policies and/or customs. (ECF No. 55 at 10.)  Specifically, Plaintiffs argue they are challenging Defendants' policies and training relating to use of a "Confined Space Control Hold Technique," which trains officers to move into a kneeling prone position on a suspect's back which the subject lies in a prone position. (*Id.* (citing ECF No. 47 at ¶ 174).) Plaintiffs further argue Defendants' poor training permitted multiple officers to apply pressure on a subject to apply handcuffs without regard to the subject's mental state or fitness and failed to prevent or minimize the risk of positional asphyxia. (*Id.* (citing ECF No. 47 at ¶ 175).) Plaintiffs cite a similar incident in 2019 where deputies' "use of excessive force against a handcuffed and prone subject who struggled to breathe and lost consciousness." (*Id.* (citing ECF No. 47 at ¶ 176).) Plaintiffs also allege various past incidents of excessive force by officers of the Sacramento County Sheriff's Department, including the deputies in the instant case. (*Id.* (citing ECF No. 47 at ¶¶ 180–181).)

"Absent a formal governmental policy, [the plaintiff] must show a 'longstanding practice or custom which constitutes the standard operating procedure of the local government entity.'" *Trevino v. Gates*, 99 F.3d 911, 918 (9th Cir. 1996) (citation omitted). "The custom must be so 'persistent and widespread' that it constitutes a 'permanent and well settled [ ] policy.'" *Id.* (citation omitted). "Liability for improper custom may not be predicated on isolated or sporadic incidents; it must be founded upon practices of sufficient duration, frequency and consistency that

---

[1] While Defendants' arguments appear to encompass several claims, because Defendants only develop their arguments as to excessive force, the Court only addresses that claim. (*See* ECF No. 48-1 at 16; ECF No. 55 at 8.)

the conduct has become a traditional method of carrying out policy." *Id.* "The line between 'isolated or sporadic incidents' and 'persistent widespread conduct' is not clearly delineated, although where more than a few incidents are alleged, the determination appears to require a fully-developed factual record." *Lemus v. Cnty. of Merced*, No. 1:15-CV-00359-MCE-EPG, 2016 WL 2930523, at *4 (E.D. Cal. May 19, 2016), *aff'd*, 711 F. App'x 859 (9th Cir. 2017).

In the instant case, Plaintiffs allege multiple prior instances of alleged misconduct by Sacramento County Sheriff's Department. For example, Plaintiffs cite an incident from 2019 where Sacramento County Sheriff's deputies placed a suspect into a prone position and tased him until he lost consciousness. (ECF No. 47 at ¶ 176.) Plaintiffs also cite three incidents where the named deputies in this case allegedly used excessive force by placing suspects into prone positions. (*Id.* at ¶¶ 180(c), (e), (f).) Although the prior incidents are not identical to the instant case, the Court finds the "factually pertinent" aspects of the cases are sufficiently similar to the instant case to survive Defendants' motion to dismiss. *See McCoy v. City of Vallejo*, No. 2:19-cv-01191-JAM-CKD, 2020 WL 374356, at *4 (E.D. Cal. Jan. 23, 2020). Moreover, Plaintiffs allege these incidents occurred due to a lack of training, and/or a policy or custom of using excessive force. (ECF No. 47 at ¶¶ 174, 175, 178, 179, 189.) The Court concludes Plaintiffs' allegations "are sufficient at this stage of the litigation to place defendants on notice of the nature of the claims against them and allow them to prepare an adequate defense." *Estate of Osuna v. Cnty. of Stanislaus*, 392 F. Supp. 3d 1162, 1175 (E.D. Cal. 2019).

Therefore, the Court DENIES Defendants' motion to dismiss Plaintiffs' *Monell* claims.

### C. ADA and Rehabilitation Act Claims

Title II of the ADA and the Rehabilitation Act "both prohibit discrimination on the basis of disability." *Lovell v. Chandler*, 303 F.3d 1039, 1052 (9th Cir. 2002)). The legal standards for the ADA and Rehabilitation Act are the same. *Coons v. Sec'y of U.S. Dep't of Treasury*, 383 F.3d 879, 884 (9th Cir. 2004); *E.R.K. ex rel. R.K. v. Hawaii Dep't of Educ.*, 728 F.3d 982, 992 (9th Cir. 2013) (noting that for a Rehabilitation Act claim, the plaintiff must also prove the relevant program receives federal financial assistance). As such, the Court analyzes Plaintiffs' ADA and Rehabilitation Act claims together.

1    Under both laws, Plaintiffs must establish the decedent: (1) had a disability; (2) was qualified to participate in or receive the benefit of a public entity's services, programs, or activities; (3) was denied those services, programs, or activities or otherwise discriminated against by the public entity; and (4) that denial or discrimination was by reason of his disability. *McGary v. City of Portland*, 386 F.3d 1259, 1265 (9th Cir. 2004).  The Ninth Circuit has interpreted the terms "services, programs, or activities" to encompass "anything a public entity does" — including arrests.  *Sheehan v. City & Cnty. of S.F*, 743 F.3d 1211, 1232 (9th Cir. 2014), *rev'd in part on unrelated grounds*, 135 S. Ct. 1765 (2015) (quoting *Barden v. City of Sacramento*, 292 F.3d 1073, 1076 (9th Cir. 2002)).  The *Sheehan* court recognized two types of claims stemming from arrests: (1) wrongful arrest, where police wrongly arrest someone with a disability because they misperceive the effects of that disability as criminal activity; and (2) reasonable accommodation, where police fail to reasonably accommodate the person's disability in the course of investigation or arrest, causing the person to suffer greater injury or indignity in that process than other arrestees.  *Id.*

Plaintiffs allege the second type of claim: that the deputies failed to reasonably accommodate the decedent's disability during his arrest.  (ECF No. 55 at 19.)  In moving to dismiss, Defendants argue Plaintiffs do not allege Defendants failed to accommodate any alleged disability.[2]  (ECF No. 48 at 24.)  More specifically, Defendants argue: there are no allegations suggesting the decedent's mental illness played any role in his death; there are no allegations suggesting the deputies knew or should have known of the decedent's mental health issues; Plaintiffs fail to show deputies had the time and opportunity to assess the situation and employ accommodations; and Plaintiffs do not describe how an accommodation could have been provided.  (*Id.* at 24–25.)

///

---

[2]   In a single sentence, Defendants state they dispute that Plaintiffs alleged sufficient facts demonstrating the decedent has a qualifying disability.  (ECF No. 48 at 24.)  However, Defendants fail to develop the argument and instead focus on the allegations about the deputies' failure to accommodate the decedent's disability.  Absent meaningful argument from Defendants, the Court does not address whether Plaintiffs adequately alleged a qualifying disability.

In opposition, Plaintiffs cite multiple allegations in the FAC.  (ECF No. 55 at 19.)  First, Plaintiffs cite allegations that Deputies Martinez, Villegas, and Linde knew or should have known the decedent was disabled or experiencing a mental health crisis and required a reasonable accommodation for his disability.  (*Id.* (citing ECF No. 47 at ¶ 63).)  Plaintiffs argue the decedent's mental illness should have been apparent to the deputies based on his abnormal appearance and behavior, including allegations that: his pants were around his ankles (ECF No. 47 at ¶ 37); he was without shoes (*id.* at ¶ 23); he became fearful when an officer pulled the hood of his sweater over his head and face and wrapped his arms around one of the deputy's legs (*id.* at ¶¶ 45–47); and he gasped the name of his daughter while being smothered by the officers (*id.* at ¶ 122).  (ECF No. 55 at 19.)  Plaintiffs also cite allegations that the deputies failed to reasonably accommodate the decedent's disability, which would have involved tactics such as approaching in a non-confrontational manner, without displaying or threatening the use of force; speaking to the decedent in a non-confrontational manner, with an appropriate tone of voice and without threatening the use of force; interacting in a nonconfrontational manner, including appropriate body language, de-escalation, and spacing techniques; and/or by not using unreasonable and excessive force against the decedent.  (*Id.* at 20 (citing ECF No. 47 at ¶¶ 204, 210.))

The reasonableness of accommodation under the circumstances is factual question.  *Vos v. City of Newport Beach*, 892 F.3d 1024, 1037 (9th Cir. 2018).  Based on the allegations cited by Plaintiffs, the Court concludes Plaintiffs allege sufficient facts establishing the deputies knew or should have known the decedent suffered from mental illness based on his appearance and behavior, and that the deputies had the time and opportunity to reasonably accommodate the decedent's disability in various ways other than using force.  Defendants contend Plaintiffs' allegations are insufficient, but Defendants do not provide any binding authority supporting their position that more is required at this early stage.

For these reasons, the Court DENIES Defendants' motion to dismiss the ADA and Rehabilitation Act claims.

///

///

D. Article I, § 13 Claims

Defendants argue Article I, § 13 of the California Constitution does not provide a private cause of action for damages. (ECF No. 48 at 25.) In opposition, Plaintiffs argue Defendants fail to sufficiently address the relevant test for determining whether a provision of the California Constitution provides for a private right of action. (ECF No. 55 at 21–24.) Plaintiffs request the Court utilize the framework articulated in *Katzberg v. Regents of Univ. of Cal.*, 29 Cal. 4th 300 (2002) to find a private cause of action for damages exists on the basis that English common law provided such a remedy. (*Id.*)

This Court has consistently held that Article 1, § 13 does not confer a private right of action for damages. *See Est. of Hennefer v. Yuba Cnty.*, No. 2:22-CV-00389-TLN-KJN, 2023 WL 4108077, at *7 (E.D. Cal. June 21, 2023); *Risse v. Porter*, No. 2:19-CV-00624-TLN-AC, 2020 WL 1433144, at *8 (E.D. Cal. Mar. 24, 2020); *Hin v. U.S. Dep't of Just. United States Marshals Serv.*, No. 2:21-CV-00393-TLN-JDP, 2022 WL 705617, at *5 (E.D. Cal. Mar. 9, 2022). Plaintiff fails to persuade the Court to reconsider its position at this time. Plaintiffs filed a notice of supplemental authority citing a case where a court in this district recently held that Article I, § 13 does confer a private right of damages. (ECF No. 68 (citing *Est. of Temple v. Placer Cnty. Sheriff's Off.*, No. 2:23-CV-01713-DAD-CKD, 2024 WL 3742920, at *1 (E.D. Cal. Aug. 9, 2024).) However, *Est. of Temple* is not binding on this Court. In the absence of authority from the California Supreme Court, California appellate courts, or the Ninth Circuit, the Court continues to hold there is no private right of action under Article 1, § 13. However, the Court notes it would welcome guidance from these courts on this issue. *See also Est. of Temple*, 2024 WL 3742920, at *10 n.6 (noting guidance on this issue would be appreciated).

Thus, the Court GRANTS Defendants' motion to dismiss Claims Seven and Eight without leave to amend. *See Theme Promotions, Inc. v. News Am. Mktg. FSI*, 546 F.3d 991, 1010 (9th Cir. 2008) ("[L]eave to amend will not be granted where an amendment would be futile.").

E. Motion to Strike

Lastly, Defendants argue the Court should strike the introduction section and paragraphs 176 and 180–185 in the FAC. (ECF No. 48-1 at 27.) Defendants take issue with the

introduction's references to news articles of police "killings" in 2022 and comparing the instant case to the death of George Floyd.  (*Id.* at 28.)  Defendants also take issue with paragraphs 176 and 180–185 because Defendants contend those paragraphs reference numerous events, lawsuits, settlements, news articles, and jury verdicts involving matters that have nothing to do with this case and some of the information alleged is subject to a protective order.  (*Id.* at 28–29.)

In opposition, Plaintiffs argue Defendants fail to meet their burden to show the material should be stricken.  (ECF No. 55 at 25.)  Plaintiffs contend the allegations describe Defendants' obvious deficiencies in prone restraint policies and the references to officer-involved deaths and George Floyd shows Defendants should have been on notice about the deficiencies in their policies and training regarding prone restraints.  (*Id.*)

Rule 12(f) provides that a court "may strike from a pleading . . . any redundant, immaterial, impertinent, or scandalous matter."  Fed. R. Civ. P. 12(f).  A court will only consider striking an allegation if it fits within one of these five categories.  *Yursik v. Inland Crop Dusters Inc.*, No. CV-F-11-01602-LJO-JLT, 2011 WL 5592888, at *3 (E.D. Cal. Nov. 16, 2011) (citing *Whittlestone, Inc. v. Handi-Craft Co.*, 618 F.3d 970, 973–74 (9th Cir. 2010)).  "[T]he function of a 12(f) motion to strike is to avoid the expenditure of time and money that must arise from litigating spurious issues by dispensing with those issues prior to trial."  *Sidney-Vinstein v. A.H. Robins Co.*, 697 F.2d 880, 885 (9th Cir. 1983).  However, Rule 12(f) motions are "generally regarded with disfavor because of the limited importance of pleading in federal practice, and because they are often used as a delaying tactic."  *Neilson v. Union Bank of Cal., N.A.*, 290 F. Supp. 2d 1101, 1152 (C.D. Cal. 2003).  "Ultimately, whether to grant a motion to strike lies within the sound discretion of the district court."  *Id.*

As already discussed above, the Court finds at least some of the incidents listed in paragraphs 176 and 180–185 could support a *Monell* claim as some the of the incidents involve use of prone restraints, including by the deputies named in this action.  Further, Defendants fail to persuade the Court that Plaintiffs' allegations about past lawsuits cannot support a *Monell* claim.  *See Bagos v. Vallejo*, No. 2:20-CV-00185-KJM-AC, 2020 WL 6043949, at *5 (E.D. Cal. Oct. 13, 2020) ("Prior incidents involving lawsuits alone, even those which do not result in a finding or

1  admission of wrongdoing, can be sufficient for *Monell* liability purposes in the face of a motion to
2  dismiss."). While the Court acknowledges some of the allegations may be less relevant than
3  others, Defendants do not cite a clear standard or meaningfully differentiate among the
4  allegations in the instant case. The Court declines to do this analysis for Defendants. *See Burrell*
5  *v. City of Vallejo*, No. 2:19-CV-01898-WBS-KJN, 2020 WL 1532293, at *2 (E.D. Cal. Mar. 31,
6  2020) ("Although defendants argue that the examples they seek to strike . . . are irrelevant
7  because they involve 'very different conduct' than the facts in this case, the motion does not
8  suggest that defendants would be prejudiced if the motion were denied."); *see also Est. of Manzo*
9  *v. Cnty. of San Diego*, No. 06CV0060 R, 2006 WL 8455277, at *3 (S.D. Cal. Nov. 14, 2006)
10 (denying a motion to strike because it cannot be "said at this stage of the litigation that"
11 allegations of two prior shootings by the sheriff's deputies "have no possible relationship to
12 plaintiffs' *Monell* claim").
13     Defendants also fail to persuade the Court that information subject to a protective order
14 should be stricken, especially considering that the FAC is partially redacted. (ECF No. 64.)
15 Lastly, Defendants fail to persuade the Court that allegations about officer-involved deaths and
16 the death of George Floyd are immaterial, impertinent, or scandalous, as Plaintiffs present
17 colorable argument as to how those allegations show Defendants were on notice that their prone
18 restraint policies were inadequate. *See Lobaton v. City of San Diego*, No. 3:15-CV-1416-GPC-
19 DHB, 2015 WL 7864186, at *3 (S.D. Cal. Dec. 2, 2015) ("[T]he Court finds that Defendants have
20 failed to establish that these portions of the amended complaint 'have no possible relation or
21 logical connection' to the subject matter of this case."). Moreover, "[a]ny doubt concerning the
22 import of the allegations to be stricken weighs in favor of denying the motion to strike." *Id.*
23     Accordingly, the Court DENIES Defendants' motion to strike.
24     **IV.   CONCLUSION**
25     For the foregoing reasons, the Court GRANTS in part and DENIES in part Defendants'
26 Motion to Dismiss and Strike (ECF No. 48) as follows:
27         1. The Court DENIES Defendants' motion to dismiss claims against Jones;
28         2. The Court DENIES Defendants' motion to dismiss the *Monell* claims;

    3. The Court DENIES Defendants' motion to dismiss the ADA and Rehabilitation Act claims;

    4. The Court GRANTS Defendants' motion to dismiss Claims Seven and Eight, brought pursuant to Article I, § 13 of the California constitution, without leave to amend; and

    5. The Court DENIES Defendants' motion to strike.

Defendants shall file an answer not later than twenty-one (21) days from the electronic filing date of this Order.

IT IS SO ORDERED.

Date: March 17, 2025

_____
TROY L. NUNLEY
CHIEF UNITED STATES DISTRICT JUDGE